Kevin C. McCann (SB# 120874)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
United States of America
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
Email:  kevinmccann@paulhastings.com

Robert M. Masters (Bar No. 435623)
(*pro hac vice* application pending)
Timothy P. Cremen (Bar No. 478705)
(*pro hac vice* application pending)
Bhaskar Kakarla (Bar No. 488976)
(*pro hac vice* application pending)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
Telephone:  (202) 551-1700
Facsimile:  (202) 551-1705
Email:  robertmasters@paulhastings.com
Email:  timothycremen@paulhastings.com
Email:  bhaskarkakarla@paulhastings.com

Attorneys for Defendant
AEROMECHANICAL SERVICES LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STAR NAVIGATION SYSTEMS GROUP LTD., <br><br> Plaintiff, <br><br> v. <br><br> AEROMECHANICAL SERVICES LTD., <br><br> Defendant. | CASE NO. C 07-4820 (MMC) <br><br> **AEROMECHANICAL SERVICES LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS AND SUPPORTING MEMORANDUM** <br><br> Date:   January 11, 2008 <br> Time:  9:00 am <br> Place:  Courtroom 7, 19th Floor <br> Honorable: Maxine M. Chesney |

1
## TABLE OF CONTENTS

2
                                                                                                **Page**

3  NOTICE OF MOTION ............................................................................................ 1

4  STATEMENT OF ISSUES TO BE DECIDED ...................................................... 1

5  I.   INTRODUCTION ........................................................................................ 1

6  II.  FACTS ......................................................................................................... 1

7       A.   Star Cannot Bring This Action Without the Patent Owners .................. 1

8       B.   Star Is Only A Licensee Of The '852 Patent ...................................... 2

9       C.   Canadian Litigation Questions Star's Rights In The '852 Patent ........... 3

10      D.   AMS Has No Substantive Contacts with California ............................ 4

11  III. ARGUMENT (DISMISSAL UNDER FED. R. CIV. P. 12(B)(7) AND 12(B)(1)) ........... 5

12      A.   Standard of Review ................................................................................ 5

13      B.   The Patent Owner Must Be Joined When A Licensee With Less Than "All
             Substantial Rights" In The Patent Brings Suit ........................................ 6

14
15      C.   Courts Look To The Rights Retained by the Licensor When Determining If
             A License Transfers Less Than "All Substantial Rights" In The Patent ........... 7

16      D.   Star Has Failed To Join The Patent Owners Who Are Necessary And
             Indispensable Parties To This Action ...................................................... 9
17
18           1.   Star Is Only A Licensee Under The '852 Patent ............................ 9

19           2.   AMS Is At Risk of Multiple Suits if the Patent Owners Are Not
                  Joined ............................................................................................ 11

20           3.   One Patent Owner, Mr. Vieira, Contends that Star Is No Longer an
                  Exclusive Licensee ...................................................................... 12
21
22      E.   The Court Should Dismiss this Case .................................................... 12

23  IV.  ARGUMENT (LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV.
         P. 12(B)(2)) ............................................................................................ 13

24      A.   Standard of Review ............................................................................ 13

25      B.   For This Forum To Have Personal Jurisdiction Over AMS, AMS Must
             Have Minimum Contacts Herein ...................................................... 13
26
27           1.   General Jurisdiction .................................................................. 14

28           2.   Specific Jurisdiction .................................................................. 14

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

**<u>TABLE OF CONTENTS</u>**

2
(continued

**Page**

3
    C.     AMS Does Not Have Minimum Contacts With California To Confer

4
         Personal Jurisdiction ............................................................................................ 15

5
V.     CONCLUSION ..................................................................................................... 18

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*AT&T v. Compagnie Bruxelles Lambert,*
    94 F.3d 586 (9th Cir. 1996)....................................................................... 13, 14, 17

5

*Akro Corp. v. Luker,*
    45 F.3d 1541 (Fed. Cir. 1995)............................................................................ 13

6

*Allen v. Wright,*
    468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) ................................... 5

7

8

*Americopters, LLC v. FAA,*
    441 F.3d 726 (9th Cir. 2006).............................................................................. 6

9

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.,*
    1 F.3d 848 (9th Cir. 1993).......................................................................... 14, 17

10

11

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.,*
    434 F.3d 1336 (Fed. Cir. 2006)..................................................................... 8, 10

12

*Bancroft & Masters v. Augusta National,*
    223 F.3d 1082 (9th Cir. 2000)..................................................................... 14, 16

13

14

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (U.S. 1985)............................................................................ 15, 17

15

*Citi Apts., Inc. v. Markel Insurance Co.,*
    2007 U.S. Dist. LEXIS 44469 (N.D. Cal. 2007)............................................... 3

16

17

*Crown Die & Tool Co. v. Nye Tool & Machine Works,*
    261 U.S. 24 (1923) ............................................................................................ 11

18

*Data Discount, Inc. v. Systems Tech. Associate, Inc.,*
    557 F.2d 1280 (9th Cir. 1977)........................................................................... 13

19

20

*De Forest v. Collins Wireless Telegraph Co.,*
    174 F. 821 (C.C.D.N.J. 1909) .......................................................................... 10

21

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001)........................................................... 13, 14, 16, 17

22

23

*Electronics For Imaging, Inc. v. Coyle,*
    340 F.3d 1344 (Fed. Cir. 2003)......................................................................... 14

24

*Etherington v. Hardee,*
    290 F.2d 28 (5th Cir. 1961)............................................................................... 10

25

26

*Ethicon, Inc. v. United States Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998)........................................................................... 6

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Helicopteros Nacionales de Colombia, S. A. v. Hall,*
    466 U.S. 408 (1984) ........................................................................... 15, 16

*International Gamco, Inc. v. Multimedia Games, Inc.,*
    2007 U.S. App. LEXIS 24099 (Fed. Cir. 2007) ................................. 7, 8, 10, 11

*International Nutrition Co. v. Horphag Research Ltd.,*
    257 F.3d 1324 (Fed. Cir. 2001) ...................................................... 6

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ...................................................................... 16

*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001) ...................................................... 10

*Keeton v. Hustler Magazine, Inc.,*
    465 U.S. 770 (1984) ...................................................................... 15

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 6, 12

*McNutt v. General Motors Acceptance Corp.,*
    298 U.S. 178 (1936) ...................................................................... 13

*McShan v. Sherrill,*
    283 F.2d 462 (9th Cir. 1960) ......................................................... 5

*Mentor H/S, Inc. v. Medical Device Alliance,*
    240 F.3d 1016 (Fed. Cir. 2001) ...................................................... 8, 9, 10

*Morrow v. Microsoft Corp.,*
    499 F.3d 1332 (Fed. Cir. 2007) ...................................................... 7, 9, 11

*Pennington Seed. Inc. v. Produce Exchange No. 299,*
    457 F.3d 1334 (Fed. Cir. 2006) ...................................................... 15, 16, 17

*Perkins v. Benguet Consolidated Mining Co.,*
    342 U.S. 437 (1952) ...................................................................... 15, 16

*Pope Manufacturing Co. v. Gormully & Jeffery Manufacturing Co.,*
    144 U.S. 248 (1892) ...................................................................... 10

*Prima Tek II, L.L.C. v. A-Roo Co.,*
    222 F.3d 1372 (Fed. Cir. 2000) ...................................................... 7, 11

*Propat International Corp. v. RPost US, Inc.,*
    473 F.3d 1187 (Fed. Cir. 2007) ...................................................... 8, 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

(continued)

2

**Page**

3

*Rano v. Sipa Press, Inc.,*
  987 F.2d 580 (9th Cir. 1993)..................................................................... 17

4

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
  148 F.3d 1355 (Fed. Cir. 1998)................................................................. 17

5

6

*Rite-Hite Corp v. Kelley Co.,*
  56 F.3d *1538 (Fed. Cir. 1995)* ......................................................... 6, 7, 11

7

*Schering Corp. v. Roussel-UCLAF SA,*
  104 F.3d 341 (Fed. Cir. 1997)..................................................................... 6

8

9

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004)................................................. 13, 14, 16, 17

10

*Shermoen v. U.S.,*
  982 F.2d 1312 (9th Cir. 1992)..................................................................... 5

11

12

*Sicom System v. Agilent Techs., Inc.,*
  427 F.3d 971 (Fed. Cir. 2005)................................................................... 10

13

*Takhar v. Kessler,*
  76 F.3d 995 (9th Cir.1996)........................................................................ 6

14

15

*Textile Productions, Inc. v. Mead Corp.,*
  134 F.3d 1481 (Fed. Cir. 1998)............................................................... 7, 9

16

*Travelers Health Association v. Virginia,*
  339 U.S. 643 (U.S. 1950)......................................................................... 15

17

18

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,*
  944 F.2d 870 (Fed. Cir. 1991)................................................................... 8

19

*Viam Corp. v. Iowa Export-Import Trading Co.,*
  84 F.3d 424 (Fed. Cir. 1996)................................................................... 15

20

21

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000)................................................................... 5

22

*World-Wide Volkswagen Corp. v. Woodson,*
  444 U.S. 286 (1980)........................................................................... 15, 16

23

24

**STATUTES**

25

35 U.S.C. § 100(d) ......................................................................................... 6

26

35 U.S.C. § 261 .............................................................................................. 6

27

35 U.S.C. § 262 .............................................................................................. 6

28

35 U.S.C. § 281 .............................................................................................. 6

1

## **TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

Fed. R. Civ. P. 12(b)(1).................................................................................. 1, 5, 13, 18

4

Fed. R. Civ. P. 12(b)(2)....................................................................................... 1, 13, 18

5

Fed. R. Civ. P. 12(b)(7)................................................................................... 1, 5, 13, 18

6

Fed. R. Civ. P. 19 ..................................................................................................... 5, 13

7

Cal. Civ. Proc. Code § 410.10............................................................................... 14, 15

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that on January 11, 2008, at 9:00 AM, or as soon thereafter as

4 the matter may be heard, in the United States District Court for the Northern District of

5 California, Courtroom 7, 19th Floor, 1301 Clay Street, Oakland, California, before the Honorable

6 Maxine M. Chesney, defendant Aeromechanical Services, Ltd ("AMS") will, and hereby does

7 move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (7) for an Order

8 dismissing plaintiff Star Navigation Systems Group Ltd.'s ("Star") complaint.  AMS brings this

9 motion pursuant to: (1) Federal Rule Civil Procedure 12(b)(7) because Star, which is only a

10 licensee, has failed to join the owners of the '852 Patent; (2) Federal Rule Civil Procedure

11 12(b)(1) because Star has not shown that it has standing to bring an infringement action with

12 respect to the patent-in-suit; and (3) Federal Rule Civil Procedure 12(b)(2) because this Court

13 cannot reasonably be said to have personal jurisdiction over AMS.  The motion is based upon this

14 notice, the accompanying memorandum of points and authorities, the Declaration of Darryl

15 Jacobs filed with this motion, and such other matters as we may call to the Court's attention at or

16 before the time of the hearing.

17

## STATEMENT OF ISSUES TO BE DECIDED

18          1.  Whether Star's complaint should be dismissed because Star has failed to join the

19 owners of the patent-in-suit.

20          2.  Whether Star's complaint should be dismissed because Star has not shown that it has

21 standing to bring an infringement action with respect to the patent-in-suit.

22          3.  Whether Star's complaint should be dismissed because this Court cannot reasonably be

23 said to have personal jurisdiction over AMS.

24

25

26

27

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1  Dated:  December 3, 2007          PAUL, HASTINGS, JANOFSKY & WALKER LLP

2
                                    By:_____/s/ Kevin C. McCann_____
3                                   Kevin C. McCann (SB# 120874)
                                    55 Second Street
4                                   Twenty-Fourth Floor
                                    San Francisco, CA 94105
5                                   United States of America
                                    Telephone: (415) 856-7000
6                                   Facsimile: (415) 856-7100
                                    Email:  kevinmccann@paulhastings.com
7
                                    Robert M. Masters (*pro hac vice* application pending)
8                                   Timothy P. Cremen (*pro hac vice* application pending)
                                    Bhaskar Kakarla (*pro hac vice* application pending)
9                                   875 15th St., N.W.
                                    Washington, DC 20005
10                                  Telephone:  (202) 551-1700
                                    Facsimile:  (202) 551-1705
11                                  Email:  robertmasters@paulhastings.com
                                    Email:  timothycremen@paulhastings.com
12                                  Email:  bhaskarkakarla@paulhastings.com

13                                  Attorneys for Defendant AMS

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.     INTRODUCTION

3

Star Navigation Systems Group Ltd. ("Star") should have never commenced this action

4

for patent infringement.  Star does not possess the necessary rights in the patent-in-suit, U.S.

5

Patent 7,113,852 ("the '852 Patent"), to bring suit in its name alone, and has not joined the true

6

co-owners of the patent as parties.  Each of the co-owners of the '852 Patent is a necessary and

7

indispensable party, and Star as the sole plaintiff lacks standing.  Moreover, without the owners

8

joined, the defendant Aeromechanical Services Ltd. ("AMS") risks multiple suits by the multiple

9

owners and potentially risks multiple liabilities.

10

Star has also failed to establish that this Court has personal jurisdiction over AMS.  AMS

11

has never conducted any business in the State of California and does not have the prerequisite

12

minimal contact with the State of California such that it should be dragged into this State to

13

defend this action.

14

Lastly, aside from the jurisdictional defects that are the subject of this motion, Star has

15

failed to conduct the necessary due diligence as to the merits of its claim of infringement.  Even a

16

brief inspection of the AMS products/services would readily show that AMS cannot infringe the

17

'852 Patent.

18

Accordingly, AMS respectfully moves to dismiss Star's complaint for two separate and

19

independent reasons:

20

(1)     under Fed. R. Civ. P. 12(b)(7) and/or 12(b)(1) because Star has not joined the

21

owners of the patent in this action, and does not otherwise have standing to sue in its name alone;

22

and

23

(2)     under Fed. R. Civ. P. 12(b)(2) because this Court does not have personal

24

jurisdiction over AMS.

25

### II.     FACTS

26

**A.     Star Cannot Bring This Action Without the Patent Owners**

27

Star commenced this action, as the sole plaintiff, on September 19, 2007, alleging one

28

count of patent infringement of the '852 Patent by AMS.  On its face, the '852 Patent names Viraf

1   S. Kapadia and Hilary Vieira as inventors, but provides for no assignment of the patent rights to

2   Star - or any other entity.  Cremen Dec., Ex. A.  Moreover, the records on file with the U.S.

3   Patent and Trademark Office concerning the '852 Patent reveal no recordation of any assignment

4   of rights to the '852 Patent by the two named inventors (Kapadia and Vieira).  Cremen Dec., ¶¶ 4

5   and 5, Ex. B.  Accordingly, to AMS's knowledge, the two named inventors remain the rightful

6   owners of all right, title and interest in the '852 Patent.  Yet, Star does not include the inventor-

7   owners as parties to this action.  *See* Complaint, D.I. 1.

8        Attempting to gloss over this failure, Star alleges that it is an exclusive licensee of the

9   '852 Patent.  D.I. 1, ¶4 ("[i]nventors Viraf S. Kapadia and Hilary Viera have entered into an

10  agreement providing Star Navigation an exclusive license to the '852 Patent").[1]  Outside of this

11  lone allegation, Star does not explain the details of this "exclusive license."  Star has neither

12  attached the "exclusive license" (or any other agreement granting rights to Star from the named

13  inventors) to the complaint, nor filed the "exclusive license" with the U.S. Patent and Trademark

14  Office.  Cremen Dec., ¶¶ 4 and 5, Ex. B.  Star also has not alleged that it has all substantial rights

15  to the '852 Patent or the exclusive rights to enforce the '852 Patent.  Thus, Star has failed to

16  explain in any way why it should be allowed to bring this action in its name alone.

17  **B.    Star Is Only A Licensee Of The '852 Patent**

18       AMS believes that the "exclusive license" referred to in Star's complaint is an April 22,

19  2002 license from Viraf Kapadia and Hilary Vieira ("License").[2]  Cremen Dec., ¶ 6, Ex. C.  This

20  License is limited.  First, the License permits Star only to "use, develop, produce, install,

21  implement, market, promote and sell" the purported invention of the '852 Patent for

22  "Transportation Applications."  Cremen Dec., Ex. C, Sec. 2.2(a).  There is no granting of rights

23  for non-"Transportation Applications" and thus Star's license is limited to a particular field of

24  use.  Star has no rights or license under the '852 Patent in areas outside of "Transportation

---

[1] Star also alleges in the complaint that the '852 Patent "was duly and legally issued to Viraf S. Kapadia and Hilary Viera [sic] and assigned to Star Navigation."  D.I. 1, ¶ 6.  But, this is plainly inconsistent with its express allegation of being "an exclusive licensee." *Id*. at ¶7.

[2] This License Agreement was filed in a European Patent Application corresponding to the '852 Patent.

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

Applications."

The License also reveals that Messrs. Kapadia and Vieira retained their ownership interests in the '852 Patent. Specifically, they retained, *inter alia*: (1) all non-"Transportation Application" uses of the '852 Patent (Cremen Dec., Ex. C, Secs. 2.2(a) and 2.6); (2) all proprietary interests in the '852 Patent (Cremen Dec., Ex. C, Sec. 5.8); (3) all reversionary rights (Cremen Dec., Ex. C, Sec. 9); and (4) a right to bring an infringement action with or without Star (Cremen Dec., Ex. C, Sec. 10). Also, Star is unable to "contest, directly or indirectly, the validity of the Licensors' ownership of the Licensed Property." Cremen Dec., Ex. C, Sec. 5.6.

Further, Messrs. Kapadia and Vieira maintained their right to terminate the agreement (Cremen Dec., Ex. C, Sec. 9.2(a)) on their own volition if Star fails to: (1) use its best efforts to "use, produce, install and implement the Licensed Property" (Cremen Dec., Ex. C, Sec. 5.1(a)); (2) permit inspections by Kapadia/Vieira (Cremen Dec., Ex. C, Sec. 5.1(b)); (3) warranty the quality and fitness of the Licensed property (Cremen Dec., Ex. C, Sec. 5.1(c)); (4) adhere to quality standards set forth by Kapadia/Vieira (Cremen Dec., Ex. C, Sec. 5.1(d)); and (5) "use its best efforts to market and promote the Licensed Property" and set its prices and terms of credit at commercially reasonable and competitive levels (Cremen Dec., Ex. C, Sec. 5.3).

## C.    <u>Canadian Litigation Questions Star's Rights In The '852 Patent</u>

There is also an on-going breach of contract case pending in the Ontario Superior Court of Justice ("Canadian Action") brought by Hilary Vieira (one of the named inventors, and owners, of the '852 Patent) against Star.[3] In the Canadian Action, Mr. Vieira contends that Star no longer has an exclusive license under the '852 Patent and is asking the Canadian Court to set aside the April 22, 2002 License Agreement. Cremen Dec., ¶ 7, Ex. D.[4] Mr. Vieira contends the April 22, 2002 License Agreement was terminated on or about March 6, 2007. Cremen Dec., Ex. D, ¶ 27.

---

[3] Filed on May 3, 2007, shortly after Mr. Vieira's employment with Star ended.

[4] This Court may also take judicial notice of this pleading under Fed. R. Civ. P. 201(b)(2). *See Citi Apts., Inc. v. Markel Ins. Co.*, 2007 U.S. Dist. LEXIS 44469, *21 (N.D. Cal. 2007) ("[t]he Court may take judicial notice of a document filed in another court, not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and filing").

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1    Thus, the Canadian action, at a minimum, further calls into question Star's legal standing to bring

2    suit in this Court.  If Mr. Vieira's contentions are found to be correct, Star does not hold <u>any</u>

3    license to the '852 Patent.

4    **D.      AMS Has No Substantive Contacts with California**

5           AMS is a Canadian corporation, with its principal place of business (and only offices) in

6    Calgary, Alberta, Canada.  Jacobs Decl., ¶ 3.  AMS provides an airplane performance monitoring

7    system, named AFIRS/UPTIME, operated from Calgary and Toronto, Canada.[5]  Jacobs Decl., ¶

8    4.  Almost all of AMS's 16 clients are outside of the United States.  Jacobs Decl., ¶ 6.  AMS has

9    two U.S. clients, neither of which is located in California:  Aloha Airlines in Hawaii and North

10   American Airlines in New York.  Jacobs Decl., ¶ 7.

11          Star alleges that "AMS is doing business and has committed acts of infringement within

12   this judicial district[]" (D.I. 1, ¶ 4), but it does not back up this assertion with any facts – because

13   there are none.  AMS does not conduct, and has not conducted, business in the State of California.

14   AMS does not have an office in California.  Jacobs Decl., ¶ 8.  AMS is not, and has never been,

15   licensed or registered to do business in California.  Jacobs Decl., ¶ 9.  AMS does not pay any tax

16   to California.  Jacobs Decl., ¶ 10.  AMS does not employ anyone in California.  Jacobs Decl., ¶

17   11.  AMS does not own property or maintain any bank accounts in California.  Jacobs Decl., ¶ 12.

18   AMS does not maintain any mailing address or telephone listing in California.  Jacobs Decl., ¶

19   13.

20          AMS has not entered into, or solicited entry into, any business or contract with a

21   California business.  Jacobs Decl., ¶ 14.  No AMS employee has traveled to California to do

22   business on behalf of AMS.  Jacobs Decl., ¶ 15.  AMS has not directed any business

23   communications into California.  Jacobs Decl., ¶ 16.  AMS's website does not allow direct

24   purchases.  Jacobs Decl., ¶ 17.  Neither of AMS's U.S. clients, Aloha Airlines and North

25   American Airlines, is based in California.  Jacobs Decl., ¶ 18.

26

27   [5] AMS leases server space in separate buildings in Calgary and Toronto, Canada, but does not
     have offices there.  Jacobs Decl., ¶ 5.

28

1    AMS does not manufacture goods or distribute products in California.  Jacobs Decl., ¶ 19.

2    AMS leases its AFIRS/UPTIME monitoring system to two U.S. clients, and neither of these

3    transactions took place in California.  Jacobs Decl., ¶ 20.  AMS does not therefore sell physical

4    products, and necessarily cannot place products in the stream of commerce that might end up in

5    California.

6    Lastly, the AFIRS/UPTIME system monitors airplane performance conditions (wherever

7    the airplane might be), and communicates results via satellite and internet to AMS's servers in

8    Canada.  Jacobs Decl., ¶ 21.  Thus, much of the functionality of AMS is inherently provided

9    outside of the U.S.

10    **III.    ARGUMENT (DISMISSAL UNDER FED. R. CIV. P. 12(b)(7) AND 12(b)(1)**

11    **A.    <u>Standard of Review</u>**

12    Under Rule 12(b)(7), a party may bring a motion to dismiss for "failure to join a party

13    under Rule 19."  Fed. R. Civ. P. 12(b)(7).  Rule 19 governs what parties are considered necessary

14    to the dispute (Fed. R. Civ. P. 19(a)), and mandates dismissal of actions if that necessary (or

15    "indispensable") party cannot be joined (Fed. R. Civ. P. 19(b)).  A Rule 12(b)(7) motion will be

16    granted if the court determines that joinder of the party is not possible, and that the party is, in

17    fact, "indispensable." *Shermoen v. U.S.*, 982 F.2d 1312, 1317 (9th Cir. 1992).  This Court may

18    consider facts outside the complaint when considering motions under Rule 12(b)(7).  *McShan v.*

19    *Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

20    Additionally, Article III of the Constitution requires that litigants have standing to invoke

21    the federal court's power. *Allen v. Wright*, 468 U.S. 737, 750-51, 104 S. Ct. 3315, 82 L. Ed. 2d

22    556 (1984) ("In essence the question of standing is whether the litigant is entitled to have the

23    court decide the merits of the dispute or of particular issues").  Lack of Article III standing

24    constitutes a defect in subject matter jurisdiction.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

25    2000).  A motion challenging standing is properly presented under Federal Rule of Civil

26    Procedure 12(b)(1).  *See id.*  When a party moves pursuant to Rule 12(b)(1) to dismiss for lack of

27    standing, the "plaintiff has the burden of establishing the elements required for standing." *Takhar*

28    *v. Kessler*, 76 F.3d 995, 1000 (9th Cir.1996).  This Court may consider facts outside the

1    complaint when considering motions under Rule 12(b)(1).  *Americopters, LLC v. FAA*, 441 F.3d

2    726, 732 (9th Cir. 2006).

3    **B.      The Patent Owner Must Be Joined When A Licensee With Less Than**

4    **          "All Substantial Rights" In The Patent Brings Suit**

5              Whether a plaintiff has standing to assert the jurisdiction of a federal court is a question of

6    federal law "to be determined as of the commencement of suit."  *Lujan v. Defenders of Wildlife*,

7    504 U.S. 555, 570 n. 5 (1992).  In an action for patent infringement, the plaintiff must hold title to

8    the patent in suit because only the "patentee shall have remedy by civil action for infringement of

9    his patent."  35 U.S.C. § 281 (emphasis added).[6]

10             When a patent issues, absent an assignment, each person listed as an inventor owns the

11   patent separately from the other.  35 U.S.C. § 262.[7]  When a patent has multiple owners, courts

12   generally require all co-owners of the patent to be joined as plaintiffs in a patent infringement

13   suit.  *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001).  One

14   co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join

15   voluntarily.  *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998);

16   *Schering Corp. v. Roussel-UCLAF SA,* 104 F.3d 341, 345 (Fed. Cir. 1997).

17             An assignment of a patent can occur only when "the entire patent, an undivided part or

18   share of the entire patent, or all rights under the patent in a specified geographical region of the

19   United States" is conveyed.  *Rite-Hite Corp v. Kelley Co., 56 F.3d 1538, 1551 (Fed. Cir. 1995)*

20   (en banc).  *See also* 35 U.S.C. § 261.

21             Patent owners also may grant licenses to practice the claimed invention.  There are three

22   types of licenses: (1) a bare license; (2) an exclusive license; and (3) a license granting "all

23   substantial rights" to the patent.  *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-1341 (Fed.

24   Cir. 2007).  A bare license is simply a license to make, use or sell the claimed invention.  A bare

25   licensee has no right to exclude others from doing the same, and thus "has no legally recognized

26   _____

     [6]  The term "patentee" includes successors in title.  35 U.S.C. § 100(d).
27   [7]  For example, if two inventors are listed on a patent, then each one may grant licenses to the
     patent independently of the other, absent an agreement to the contrary.

28

1   interest that entitles it to bring or join an infringement action." *Abbott Labs v. Diamedix Corp.*,

2   47 F.3d 1128, 1131 (Fed. Cir. 1995).

3        An exclusive licensee receives more rights than a bare licensee, but fewer than an

4   assignee.  An example of an exclusive licensee is a licensee who receives the exclusive right to

5   practice an invention within a given limited territory.  *Rite-Hite*, 56 F.3d at 1552.  As the grantee

6   of exclusionary rights, an exclusive licensee is injured by any party that makes, uses, sells, offers

7   to sell, or imports the patented invention.  *Morrow*, 499 F.3d at 1339.  However, "these

8   exclusionary rights 'must be enforced through or in the name of the owner of the patent,' and the

9   patentee who transferred these exclusionary interests is usually joined to satisfy prudential

10  standing concerns."  *Id.* at 1340 (citations omitted).

11       A license that grants "all substantial rights" in the patent to another is effectively an

12  assignment, thus allowing the licensee to sue in its name only.  *Int'l Gamco, Inc. v. Multimedia*

13  *Games, Inc.*, 2007 U.S. App. LEXIS 24099, *7 (Fed. Cir. 2007).  If not an owner of the patent,

14  only licensees with "all substantial rights" can bring suit in their own name because of the

15  substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single

16  act of infringement.  *Int'l Gamco,* 2007 U.S. App. LEXIS 24099 at *14.  The Federal Circuit has

17  defined "all substantial rights" as those rights sufficient for the licensee or assignee to be "deemed

18  the effective 'patentee' under 35 U.S.C. § 281."  *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d

19  1372, 1377 (Fed. Cir. 2000).  But, an exclusive licensee that has been conferred less than "all

20  substantial rights" in a patent has "standing to sue third parties only as a co-plaintiff with the

21  patentee."  *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).

22  **C.    Courts Look To The Rights Retained by the Licensor When Determining If A**
        **<u>License Transfers Less Than "All Substantial Rights" In The Patent</u>**

23

24       To determine whether a provision in an agreement constitutes a transfer of all substantial

25  rights (*i.e.*, an assignment) or a license, one must ascertain the intention of the parties and

26  examine the substance of what was granted.  *Vaupel Textilmaschinen KG v. Meccanica Euro*

27  *Italia S.P.A.*, 944 F.2d 870, 873 (Fed. Cir. 1991).  One should look at not only what was granted,

28  but also what was retained by the grantor.  *Vaupel*, 944 F.2d at 875.  Simply because a license

1    grant may be "exclusive" in some manner, does not mean that "all substantial rights" have been

2    granted or that the licensee has the right to bring suit in its own name.

3        In *Int'l Gamco v. Multimedia Games*, the Federal Circuit held that an agreement that gave

4    the licensee the right to license, make, use, sell and sublicense, but only within New York and

5    only in a specific field of use (*i.e.*, game systems) (see *Int'l Gamco* at *5) did not transfer all

6    substantial rights in the patent, because the license was only to a "field of use" and left the

7    defendant open to suits by the owner in other fields.  *Int'l Gamco, Inc.,* 2007 U.S. App. LEXIS

8    24099 at *18.

9        In *Aspex Eyewear v. Miracle Optics*, the court held that a five year agreement to (1) make,

10    use, and sell products; (2) sue for infringement; and (3) sublicense was not a transfer of all

11    substantial rights, because the limited five year term.  *Aspex Eyewear, Inc. v. Miracle Optics,*

12    *Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006).

13        In *Propat Int'l v. RPost US*, the court held that an agreement that gave the licensor: (1) the

14    express indication that it is, and will continue to be, the owner of the patent; (2) the responsibility

15    to maintain the patents; (3) an equity interest in the proceeds of licensing and litigation activities;

16    (4) a right to notice of licensing and litigation decisions and the right to reasonably veto; and (5)

17    the ability to bar the licensee from sublicensing; and (6) the right to terminate the license if the

18    licensee fails to meet certain specified benchmarks in its efforts to exploit the patent, was not a

19    transfer of all substantial rights.  *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1191-1192

20    (Fed. Cir. 2007).

21        In *Mentor H/S v. Medical Device Alliance*, the court held that an agreement that gave the

22    licensor: (1) the ability to develop and manufacture products (for sale only to Mentor) and

23    supervise and control Mentor's product development; (2) the responsibility to pay the

24    maintenance fees for the patent; and (3) the obligation to sue parties for infringement (the licensee

25    could only sue if the licensor does not), was not a transfer of all substantial rights.  *Mentor H/S,*

26    *Inc. v. Med. Device Alliance*, 240 F.3d 1016, 1018 (Fed. Cir. 2001).

27

28

**D.    Star Has Failed To Join The Patent Owners Who Are Necessary And Indispensable Parties To This Action**

### 1.    Star Is Only A Licensee Under The '852 Patent

Messrs. Kapadia and Vieira, as co-owners of the '852 Patent, are necessary and indispensable parties that must be joined or else the case must be dismissed.  Star is a mere licensee of the '852 Patent and does not have "all substantial rights" in the '852 Patent.  Star therefore lacks standing to sue alleged infringers in its own name and without joining as co-plaintiffs the patent owners (Kapadia and Vieira).

In its complaint, Star alleges that it is an "exclusive licensee."  However, even if Star is an "exclusive licensee," that alone does not confer standing on Star to bring this action in its own name.  The issue is not whether the license is "exclusive" in some manner but whether that license has granted "all substantial rights" to Star.  Here, the license, to the extent it even remains in force, does not grant Star all substantial rights in the patent.  *Morrow*, 499 F.3d at 1340.  Accordingly, because Star has not joined the patent owners, this case should be immediately dismissed.  *Textile Prods.,* 134 F.3d at 1484 (The plaintiff "asserts that it is an exclusive licensee – not an assignee – yet it seeks to bring an infringement action in its own name.  Normally, this alone would be sufficient grounds to dismiss [plaintiffs] infringement claim.").

Even if the License between Star and the inventors does remain intact, Star does not hold substantial rights in the patent, and it does not even attempt to allege that it does.  The reason for this is that Messrs. Kapadia and Vieira maintained <u>significant</u> interests in the '852 Patent.

For example, Messrs. Kapadia and Vieira retained all non-"Transportation Application" uses of the '852 Patent (Cremen Dec., Ex. C, Secs. 2.2(a) and 2.6).  This reservation requires that the license be construed as a "field of use license."  Such "field of use" licenses have been held to be a transfer of less than all substantial rights.  *See Int'l Gamco,* 2007 U.S. App. LEXIS 24099 at *10-15 (explaining that a license limited to a particular industry conveys rights only to a <u>subset</u> of the patented subject matter, and for that reason, require the joinder of the patent owners).[8]  See

---

[8] Discussing *Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*, 144 U.S. 248 (1892), *Etherington v.*
(continued)

also *Aspex Eyewear* 434 F.3d at 1342 (holding that a license limited to a fixed term of years failed to transfer all substantial rights).

Messrs. Kapadia and Vieira also retained the right to bring an infringement action with or without Star (Cremen Dec., Ex. C, Sec. 10). The reservation demonstrates that this license is less than an assignment of rights or ownership. *See Mentor H/S,* 240 F.3d at 1018 (holding that the licensor's ability to sue parties for infringement was a factor in finding that there was not a transfer of all substantial rights). *See also Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (holding that all substantial rights were not transferred because, while the license granted the right to "make, use and sell" the invention, it did not transfer the sole right to sue other parties for infringement).[9] Moreover, Star makes no mention of this reservation of rights in the Complaint, and there has been an utter failure by Star to demonstrate that one or both of the two co-inventors have refused to bring an infringement action.

Messrs. Kapadia and Vieira also retained the right to terminate the License under Section 9.2(a) if Star fails to: (1) use its best efforts to "use, produce, install and implement the Licensed Property" (Cremen Dec., Ex. C, Sec. 5.1(a)); (2) permit inspections by the owners (Cremen Dec., Ex. C, Sec. 5.1(b)); (3) warranty the quality and fitness of the Licensed property (Cremen Dec., Ex. C, Sec. 5.1(c)); (4) adhere to the quality standards of the owners (Cremen Dec., Ex. C, Sec. 5.1(d)); (5) "use its best efforts to market and promote the Licensed Property" and set its prices and terms of credit at commercially reasonable and competitive levels (Cremen Dec., Ex. C, Sec. 5.3). These requirements also require that the license agreement be read as less than an assignment. *See Propat*, 473 F.3d at 1191 (holding that the right to terminate the license if the licensee fails to meet certain specified benchmarks was a factor in finding that there was not a transfer of all substantial rights).

(continued)
*Hardee*, 290 F.2d 28 (5th Cir. 1961) and *De Forest v. Collins Wireless Tel. Co.*, 174 F. 821 (C.C.D.N.J. 1909)).

[9] *See also Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971, 977 (Fed. Cir. 2005).

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1    Further, Messrs. Kapadia and Vieira retained all proprietary interests in the '852 Patent

2  (Cremen Dec., Ex. C, Sec. 5.8), and the License specifies that Star is also unable to "contest,

3  directly or indirectly, the validity of the Licensors' ownership of the Licensed Property" (Cremen

4  Dec., Ex. C, Sec. 5.6).  These requirements dictate that the License be read as less than an

5  assignment.  *See Propat*, 473 F.3d at 1191 (holding that the express indication of the licensors

6  ownership was a factor in finding that there was not a transfer of all substantial rights).

7    Because Messrs. Kapadia and Vieira have retained substantial rights to the '852 Patent,

8  Star cannot be considered an assignee, as Star did not receive any of: (1) the entire '852 patent;

9  (2) an undivided share of the '852 Patent; or (3) all rights under the '852 Patent in a specific

10  geographical area.  See *Rite-Hite Corp*, 56 F.3d at 1551.  Nor can Star be considered an effective

11  assignee through transfer of "all substantial rights" to the '852 Patent because Star cannot be

12  considered the "effective patentee."  *See Prima Tek II*, 222 F.3d at 1377.

13    At most, Star is a licensee of the '852 Patent, and as such Star must join the patent owners

14  before bringing suit (*Morrow*, 499 F.3d at 1340) or else the case should be dimissed.

15    **2.    AMS Is At Risk of Multiple Suits if the Patent Owners Are Not Joined.**

16    If the patent owners are not joined, AMS faces the risk of multiple suits.  As recognized

17  by the Supreme Court, allowing a licensee, even one with exclusive rights to the patent for a

18  particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and

19  multiple liabilities against an alleged infringer for a single act of infringement.  *Crown Die &*

20  *Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 38 (1923).  AMS should not be placed in

21  situation where it is faced with the risk of multiple recoveries by multiple plaintiffs.  *Int'l Gamco*,

22  2007 U.S. App. LEXIS 24099 at *11.

23    The present posture of this case poses this very problem.  AMS is faced with being sued

24  multiple times separately by Star and each of the inventors, unless the Court requires joinder of

25  the inventors.  AMS should not be faced with this predicament, but instead should be entitled to

26  respond to the merits of the allegations of infringement of the '852 Patent in one action - where

27  all of the entities with an ownership interest or other appropriate rights in the '852 Patent are

28  joined as parties.  Absent joinder of the two inventors, the Court should dismiss this case.

1

2

 **3.  One Patent Owner, Mr. Vieira, Contends that Star Is No Longer an Exclusive Licensee.**

3  The current Canadian Action in which Mr. Vieira has alleged that the April 22, 2002

4 License Agreement has been terminated poses additional serious questions as to whether Star has

5 <u>any</u> standing to bring suit – even if the patent owners are joined.  The resolution of the Canadian

6 Action may very well determine that Star no longer has any interest in the '852 Patent, and

7 therefore no right to bring suit thereon.  Thus, the outcome of the Canadian Action is highly

8 relevant to these proceedings.

9  Moreover, the mere fact that the Canadian Action is pending shows the deficiencies in

10 Star's complaint.  To assert standing for patent infringement, Star has the burden of showing that

11 it held enforceable title to the patent <u>at the inception of this lawsuit</u>.  *Lujan*, 504 U.S. at 570.  Star

12 bases its claim to title on an "exclusive license."  But, Mr. Vieira has alleged that that license

13 terminated in March 2007 - several months before this action was commenced in September

14 2007.  Star has not explained how it retains any rights under the "exclusive license," or even that

15 the license is still in force – despite being on notice of Mr. Vieira's position well before filing this

16 lawsuit.

17 **E. <u>The Court Should Dismiss this Case</u>**

18  Even if the License remains in force, Messrs. Kapadia and Vieira maintain significant

19 ownership interests in the '852 Patent, and therefore must be joined as necessary and

20 indispensable parties for this litigation to proceed.  Star has likely decided not to join the co-

21 inventors because it knows at least Mr. Vieira would not do so.  Because Star has not joined them,

22 and apparently cannot join both, this action should be dismissed under Fed. R. Civ. P. 12(b)(7).[10]

23  Further, in the face of Mr. Vieira's allegation that the License to Star terminated in March

24 2007, Star has not shown that the License remains in effect.  Star has therefore failed to show that

25

26

27 [10] It appears that Star will not be able to correct the joinder issue, due to the pending Canadian Action.  Accordingly, Fed. R. Civ. P. 19(b) dictates this action be dismissed.

28

1    it has retained <u>any</u> rights to bring an action for infringement of the '852 Patent.  Because it has

2    not, this action should be dismissed under Fed. R. Civ. P. 12(b)(1).

3    **IV.    ARGUMENT (LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P.**

4    **12(b)(2))**

5    **A.    <u>Standard of Review</u>**

6         Federal Rule of Civil Procedure 12(b)(2) provides a district court with the ability to

7    dismiss an action for lack of personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,

8    557 F.2d 1280, 1285 (9th Cir. 1977).  When the defendant moves to dismiss under Rule 12(b)(2),

9    the plaintiff bears the burden of proving personal jurisdiction, and cannot rest on the bare

10   allegations of the complaint.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

11   Cir. 2004).  This Court is not confined to the facts contained in the complaint when considering

12   motions under Rule 12(b)(2).  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

13   Dismissal is required where the plaintiff cannot present competent proof supporting jurisdiction.

14   *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *AT&T v. Compagnie*

15   *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("[a]s the party seeking to invoke federal

16   jurisdiction, [plaintiff] has the burden of establishing its existence").

17   **B.    For This Forum To Have Personal Jurisdiction Over AMS,**

18   **<u>AMS Must Have Minimum Contacts Herein</u>**

19        Federal Circuit law governs personal jurisdiction determinations in patent cases. *Akro*

20   *Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).  When, as here, the defendant is a non-

21   resident of the forum, the determination of whether personal jurisdiction exists over the defendant

22   requires an analysis of whether: (1) "a forum state's long-arm statute permits service of process;"

23   and (2) "the assertion of jurisdiction would be inconsistent with due process."  *Electronics For*

24   *Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).  Because California's long arm

25   statute[11] is co-extensive with the outer limits of due process under the state and federal

26   _____

27   [11] *See Cal. Civ. Proc. Code § 410.10* ("A court of this state may exercise jurisdiction on any basis
     not inconsistent with the Constitution of this state or of the United States").

28

-13-                AEROMECHANICAL SERVICES LTD.'S
                                                                          NOT. OF MOTION & MOTION TO DISMISS;
                                                                          MPA IN SUPPORT OF MOTION TO DISMISS

1    constitutions, the jurisdiction analysis in California narrows to one inquiry - whether jurisdiction

2    comports with due process. *Elecs. for Imaging, Inc.*, 340 F.3d at 1350.

3        Courts may exercise general or specific jurisdiction. A finding of general jurisdiction

4    permits a defendant to be haled into the courts of the forum state for any cause of action, even if it

5    is unrelated to the defendant's activities with the forum. *Schwarzenegger*, 374 F.3d at 801.

6    Specific jurisdiction permits a court to adjudicate only claims that arise out of the defendant's

7    contact with the forum. *AT&T*, 94 F.3d at 588.

8        **1.    General Jurisdiction**

9        To establish general jurisdiction, Star must demonstrate that AMS's contacts with the

10   forum are "substantial, continuous and systematic" (*Doe*, 248 F.3d at 923), or that its contacts

11   "'approximate physical presence' in the forum state" (*Schwarzenegger*, 374 F.3d at 801). "This

12   is an exacting standard, as it should be, because a finding of general jurisdiction permits a

13   defendant to be haled into court in the forum state to answer for any of its activities anywhere in

14   the world." *Schwarzenegger*, 374 F.3d at 801. For this reason, the Ninth Circuit "regularly []

15   decline[s] to find general jurisdiction even where the contacts were quite extensive." *Amoco*

16   *Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993). For example,

17   even the entry into sales contracts with California choice-of-law provisions, retention of services

18   of a California direct-mail marketing company, retention of California consultants, and

19   maintenance of a Web site available to California residents, "fall[s] well short of [] 'continuous

20   and systematic' contacts."[12] *Schwarzenegger*, 374 F.3d at 801.

21       **2.    Specific Jurisdiction**

22       In contrast, to show specific jurisdiction (*i.e.*, jurisdiction directly relating to the matter

23

24   _____

     [12] Courts have considered several factors when determining whether a defendant's contacts are
25   "continuous and systematic," including whether the defendant: (1) is incorporated or authorized
     to do business; (2) maintains its principal place of business, or offices, property, or employees;
     (3) makes sales or serves the markets; (4) has designated an agent for service of process; (5)
26   maintains corporate files; (6) holds director's meetings; (7) maintains accounts; or (8) makes key
     business decisions, in the forum. *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th
27   Cir. 2000); *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416 (1984); and
     *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 445 (1952).

28

being litigated) Star must satisfactorily show that: (1) AMS has purposefully availed itself of the privileges of conducting activities in California; (2) Star's claim arises out of or results from AMS's activities in California; and (3) the exercise of jurisdiction over AMS is reasonable. *Doe*, 248 F.3d at 923; *Pennington Seed. Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006).

Regarding the first two prongs, a defendant that has only random, fortuitous, or attenuated contacts with a particular forum cannot be considered to have purposely availed itself of the privileges of that forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980). But, where the defendant has deliberately engaged in significant activities within a State (*Keeton*, 465 U.S. at 781), or has created continuing obligations between himself and residents of the forum (*Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (U.S. 1950)), it has availed itself of the privilege of conducting business there, and it is not unreasonable to require him to submit to the burdens of litigation there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (U.S. 1985).

Regarding the third prong, the reasonableness of jurisdiction is determined by balancing several factors, namely: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996); *Burger King Corp,* 471 U.S. at 477. However, the factors considered in the analysis of reasonableness are not sufficient alone to vest the court with jurisdiction over a non-resident defendant when the minimum contacts analysis weighs against the exercise of jurisdiction. *World-Wide Volkswagen* , 444 U.S. at 294.

**C.    AMS Does Not Have Minimum Contacts With California
        To Confer Personal Jurisdiction**

Exercising jurisdiction over AMS in this case would contravene the requirements of due process. AMS does not have the "minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co.*

1    *v. Washington*, 326 U.S. 310, 316 (1945).

2         AMS has done nothing to purposefully avail itself of the benefits and privileges of doing

3    business in California.  AMS has no employees in California, maintains no facilities there, has

4    never owned or leased any property in California, and possesses no assets there.  Jacobs Decl., ¶

5    3-5 and 8-13.  Further, AMS has conducted no marketing activities directed to California, and has

6    not sold or offered for sale its AFIRS/UPTIME monitoring system in California. Jacobs Decl., ¶

7    14-17, 19.  Indeed, most of AMS's sales and most of the function of its monitoring system occurs

8    outside of the U.S.  Jacobs Decl., ¶ 6, 7, 18, 20, 21.

9         Thus, general personal jurisdiction cannot be reasonably applied, as AMS does not have

10   "substantial, continuous and systematic" contacts (*Doe*, 248 F.3d at 923) with California that

11   would "approximate physical presence" therein (*Schwarzenegger*, 374 F.3d at 801).  None of the

12   factors listed in *Perkins*, *Bancroft* or *Helicopteros* weigh in favor of general personal jurisdiction

13   here.[13]

14        Nor can specific personal jurisdiction be applied against AMS in view of the requirements

15   set forth in *Pennington Seed*.  Here, AMS: (1) did not "purposefully direct[] its activities at

16   residents of [California];" (2) did not perform "activities in the forum state" relating to Star's

17   claim; or (3) cannot have personal jurisdiction applied against it in a manner that is "reasonable

18   and fair."  *See Pennington Seed,* 457 F.3d at 1344.

19        AMS did not avail itself of the benefits and privileges of California law by purposefully

20   directing activities at California, because it neither performed "some type of affirmative conduct

21   which allows or promotes the transaction of business" in California (*Doe*, 248 F.3d at 924), nor

22   had a "purposeful direction" expressly aimed at California.  *Schwarzenegger*, 374 F.3d at 803.

23   AMS did not (and does not) direct <u>any</u> business activity toward California.  Thus, any contact that

---

[13] Namely, AMS: (1) is not incorporated or otherwise authorized to do business in California; (2)
does not maintain its principal place of business, or any offices, property, or employees in
California; (3) does not make sales or serve California's markets; (4) has not designated a
California agent for service of process; (5) does not maintain corporate files in California; (6)
does not hold director's meetings in California; (7) does not maintain accounts in California; (8)
does not make key business decisions in California. See *Bancroft*, 223 F.3d at 1086; *Helicopteros
Nacionales*, 466 U.S. at 416 (1984); and *Perkins*, 342 U.S. at 438, 445.

1   AMS might have had with California (if any) can only be categorized as "random, fortuitous, or

2   attenuated," which is not sufficient to show minimum contacts.  *AT&T*, 94 F.3d at 590.

3       Nor can Star allege that personal jurisdiction somehow attaches to AMS due to any of its

4   customer's actions in California – such as Aloha's flying in and out of California.  As the Federal

5   Circuit has observed, "doing business with a company that does business in [the forum state] is

6   not the same as doing business in [the forum state]."  *Red Wing Shoe Co., Inc. v. Hockerson-*

7   *Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).  AMS does not do business in

8   California.

9       Moreover, even if it could be shown that AMS has "minimum contacts" with California,

10  the bare existence or these contacts "is not sufficient to allow a court to exercise personal

11  jurisdiction over a defendant."  *Doe*, 248 F.3d at 925.  Jurisdiction is still improper if it would be

12  unreasonable because the burdens on the defendant outweigh the plaintiffs interest in the forum

13  and the state's interest in resolving disputes arising within the forum.  *Burger King*, 471 U.S. at

14  477.  An analysis of such reasonableness requires a balancing of seven factors:

15          [(1)] the extent of purposeful interjection[;(2)] the burden on the
            defendant to defend the suit in the chosen forum[;(3)] the extent of
16          conflict with the sovereignty of the defendant's state[;(4)] the forum
            state's interest in the dispute; [(5)] the most efficient forum for
17          judicial resolution of the dispute; [(6)] the importance of the chosen
            forum to the plaintiff's interest in convenient and effective relief;
18          [and (7)] and the existence of an alternative forum.

19  *Amoco Egypt Oil Co.*, 1 F.3d at 852.  The jurisdictional barrier is "higher" for foreign defendants

20  than for citizens from a sister state.  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

21      Here, the burden is high on AMS, as it is being asked to defend an action in a state where

22  it does no business, and has no contacts.  It also cannot be said that California has any particular

23  interest in this litigation, because neither party is from California, AMS has not directed any of its

24  business activities toward California, and there has been no allegation that any substantial portion

25  of the allegedly infringing activities occurred in California.

26      This forum is also inconvenient and inefficient for both parties.  Both Star and AMS are

27  Canadian companies.  D.I. 1, ¶¶ 1 and 2.  AMS has no presence in California, and it is doubtful

28  that Star does either.  While this judicial district is known for providing structured and well-

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1    managed patent-related proceedings, there is no reason to believe that another district where AMS

2    does have a presence could not provide a fair and competent proceeding.  Indeed, there is no

3    reason Star could not obtain relief in such a forum.

4        After review of all the evidence, it appears that Star has chosen the Northern District of

5    California for tactical, rather than substantive, reasons.  Star's tactical maneuvering should not

6    outweigh the unfairness and burden inherent in forcing AMS, a foreign company that has not

7    purposefully directed any activities to California, to defend itself here.

8                              **V.     CONCLUSION**

9        In view of the foregoing, AMS respectfully requests that this Court dismiss the current

10   action under one or more of: (1) Fed. R. Civ. P. 12(b)(7) because Star, which is only a licensee,

11   has failed to join the owners of the '852 Patent; (2) Fed. R. Civ. P. 12(b)(1) because Star has not

12   shown that it has standing to bring an infringement action with respect to the '852 Patent; and (3)

13   Fed. R. Civ. P. 12(b)(2) because this Court cannot reasonably be said to have personal jurisdiction

14   over AMS.

15   Dated:  December 3, 2007            PAUL, HASTINGS, JANOFSKY & WALKER LLP

16

17                                     By:  _____/s/ Kevin C. McCann_____
                                        Kevin C. McCann (SB# 120874)
                                        55 Second Street
18                                      Twenty-Fourth Floor
                                        San Francisco, CA 94105
19                                      United States of America
                                        Telephone: (415) 856-7000
20                                      Facsimile: (415) 856-7100
                                        Email: kevinmccann@paulhastings.com
21
                                        Robert M. Masters (*pro hac vice* application pending)
22                                      Timothy P. Cremen (*pro hac vice* application pending)
                                        Bhaskar Kakarla (*pro hac vice* application pending)
23                                      875 15th St., N.W.
                                        Washington, DC 20005
24                                      Telephone:  (202) 551-1700
                                        Facsimile:  (202) 551-1705
25                                      Email: robertmasters@paulhastings.com
                                        Email: timothycremen@paulhastings.com
26                                      Email: bhaskarkakarla@paulhastings.com

27                                      Attorneys for Defendant AMS

700030 / 28946

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS