**EXHIBIT D**

Court File No. CV07-1406-00

## ONTARIO
## SUPERIOR COURT OF JUSTICE

BETWEEN:

HILARY VIEIRA

Plaintiff

- and -

...IGATION SYSTEMS GROUP LTD., PETER VERBEEK and VIRAF KAPADIA

Defendants

## STATEMENT OF CLAIM

TO THE DEFENDANTS:

A LEGAL PROCEEDING HAS BEEN COMMENCED AGAINST YOU by the Plaintiff. The claim made against you is set out in the following pages.

IF YOU WISH TO DEFEND THIS PROCEEDING, you or an Ontario lawyer acting for you must prepare a Statement of Defence in Form 18A prescribed by the Rules of Civil Procedure, serve it on the Plaintiff's lawyer or, where the Plaintiff does not have a lawyer, serve it on the Plaintiff, and file it, with proof of service, in this court office, WITHIN TWENTY DAYS after this Statement of Claim is served on you, if you are served in Ontario.

If you are served in another province or territory or Canada or in the United States of America, the period for serving and filing your Statement of Defence is forty days. If you are served outside Canada and the United States of America, the period is sixty days.

Instead of serving and filing a Statement of Defence, you may serve and file a Notice of Intent to Defend in Form 18B prescribed by the Rules of Civil Procedure. This will entitle you to ten more days within which to serve and file your Statement of Defence.

IF YOU FAIL TO DEFEND THIS PROCEEDING, JUDGMENT MAY BE GIVEN AGAINST YOU IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU. IF YOU WISH TO DEFEND THIS PROCEEDING BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.

IF YOU PAY THE PLAINTIFF'S CLAIM, and $500.00 for costs, within the time for serving and filing your Statement of Defence, you may move to have this proceeding dismissed by the court. If you believe the amount claimed for costs is excessive, you may pay the Plaintiff's claim and $400.00 for costs and have the costs assessed by the court.

Date: May 3, 2007         Issued by: _____

Address of the court:

7755 Hurontario Street
Brampton, Ontario
L6W 4T6

TO:   STAR NAVIGATION SYSTEMS GROUP LTD.
      300 – 2970 Lakeshore Boulevard West
      Toronto, Ontario
      M8V 1J7

      Tel: (416) 252-2889
      Fax: (416) 252-3963

AND TO:   PETER VERBEEK
          c/o Verbeek & Verbeek
          Barristers & Solicitors
          12 – 1020 Matheson Boulevard East
          Mississauga, Ontario
          L4W 4J9

          Tel: (905) 602-6000
          Fax: (905) 602-5000

2

AND TO:    VIRAF KAPADIA
c/o Star Navigation Systems Group Ltd.
300 – 2970 Lakeshore Boulevard West
Toronto, Ontario
M8V 1J7

Tel: (416) 252-2889
Fax: (416) 252-3963

## CLAIM

1.  The Plaintiff claims against the Defendant, Star Navigations Systems Inc. ("Star"):

    (a) damages in the amount of $720,000 in unpaid wages;

    (b) damages in the amount of $1,200,000 for breach of contract;

    (c) punitive and/or aggravated damages in the sum of $250,000 as a result of the egregious and highhanded conduct in its treatment of the Plaintiff;

    (d) an extension of the severance period called for in the parties' employment contract, as a result of the egregious and highhanded conduct in its treatment of the Plaintiff;

    (e) a declaration that paragraphs 8 and 9 of the contract of employment entered into between the parties are null and void and of no effect;

    (f) an order pursuant to section 248(3) of the *Ontario Business Corporations Act*, R.S.O. 1990, c.B.16 (OBCA) restraining Star, or its agents from harassing, molesting or annoying the Plaintiff or his family;

    (g) an order pursuant to section 248(3)(b) of the OBCA appointing a receiver to manage the affairs of Star;

    (h) an order pursuant to section 248(3)(f) of the OBCA requiring Star, if necessary, to purchase the shares of Star owned by the Plaintiff;

    (i) an order pursuant to section 248(3)(h), if necessary, setting aside the Licence Agreement entered into between Viraf Kapadia and the Plaintiff of the first part and Star of the second part on or about April 22, 2002;

4

(j) an order pursuant to section 248(3)(i) compensating the Plaintiff for lost wages and breach of contract in the amounts of $720,000 and $1,200,000 respectively;

(k) an order pursuant to sections 248(3)(l) and 207 of the OBCA requiring that the corporation be wound up;

(l) an order restraining Star or its agents from harassing, molesting or annoying the Plaintiff and his immediate family;

(m) pre-judgment and post judgment interest pursuant to the *Courts of Justice Act*, R.S.O. 1990, c.C.43;

(n) costs of this proceeding on a substantial indemnity basis;

(o) such further and other relief as this Honourable Court may deem just.

2. The Plaintiff claims against the Defendants, Peter Verbeek ("Verbeek") and Viraf Kapadia ("Kapadia"), personally:

(a) punitive and/or aggravated damages in the sum of $250,000 as a result of the egregious and highhanded conduct of the said Defendants, in their treatment of the Plaintiff from July, 2006 to the present;

(b) pre-judgment and post judgment interest pursuant to the *Courts of Justice Act*, R.S.O. 1990, c.C.43;

(c) costs of this proceeding on a substantial indemnity basis;

(d) such further and other relief as this Honourable Court may deem just.

5

3.  The Plaintiff, Hilary Vieira ("Vieira") is an individual residing in the City of Mississauga, Ontario.

4.  The Defendant, Star, is a corporation duly incorporated pursuant to the laws of Ontario and carrying on business in the development of early warning systems and instant monitoring systems for aircraft.

5.  The Defendant, Verbeek, is an individual residing in the City of Mississauga, Ontario.

6.  The Defendant, Kapadia, is an individual residing in the City of Mississauga, Ontario.

*Employment with Star*

7.  On or about June 1, 2000, Star hired Vieira, as its President and Chief Technical Officer ("CTO"). He also became a director at that time. Vieira's hiring took place contemporaneously with the commencement of Star's operations.

8.  Vieira's principal functions were to manage the company, manage the issuance of public shares and supervise the development of the fundamental prototype of the product Star wished to develop and market.

6

9. Vieira's salary was set initially at $5,500 per month. In addition, he was issued 4,238,000 common shares in Star. Vieira's salary was to increase to a minimum of $168,000 annually once Star became listed on a North American Exchange.

10. In or about June, 2002, as result of Star becoming a publicly traded company on the Toronto Stock Exchange, the parties entered into an amending agreement.

11. Approximately 6 months following the commencement of Star's operations, it hired an operations officer who assumed most management responsibilities of Vieira. Following the issue of publicly traded stock, Kapadia, who was at all material times Star's CEO took over marketing, sales, and finance roles. Vieira thereafter was responsible primarily for technical aspects of Star's business.

12. Vieira continued in his role as President of the corporation without incident until June, 2006. His responsibilities were principally the management of the company's technical development, both software and hardware.

13. On or about November 1, 2005, the parties entered into a further amending employment contract, which provided, amongst other things that:
    (a) Vieira could not resign and could not be removed without board approval;

7

    (b)    Vieira's compensation was to be $20,000 monthly, along with a bonus of 2,000,000 common shares and further stock options, as well as provision of a motor vehicle;

    (c)    In the event of termination, Vieira would be entitled to 5 (five) years salary.

14.    The said contract came into force on January 1, 2006.

*Breach of Employment Contract & Constructive Dismissal*

15.    Star has never paid all of Vieira's salary. From June, 2000 to June, 2006, Star paid a portion of Vieira's salary, in part because there were insufficient funds available to pay him, and in part because of requirements of the Toronto Stock Exchange, which requirements were temporary in nature. Commencing in July, 2006, Star ceased paying Vieira's salary altogether. No reason was cited for the refusal to pay his salary other than the company had insufficient assets.

16.    Star owes Vieira $600,000 in unpaid wages from June, 2000 to June, 2006 and a further $120,000 from July, 2006 to December, 2006.

17.    In August, 2006, Vieira traveled to the Middle East for 2 weeks on business. When he returned, he found that his office had been moved. The new office was unacceptable for several reasons:

8

    (a)    It was located on an unoccupied floor of the building, separate from all of the offices of all other employees of Star;

    (b)    It was neither heated nor air conditioned;

    (c)    It had no telephone or internet access;

    (d)    Vieira's filing cabinets had been moved into an office to which he was given no access.

18.    Through the fall of 2006, the following additional events, amongst others, took place:

    (a)    Vieira's access to Star's computer servers was restricted;

    (b)    Vieira was restricted from contacting potential clients;

    (c)    Staff who had previously reported to Vieira, were advised to report directly to the Chief Operating Officer (an accountant by profession); and

    (d)    On or about December 19, 2006 a memo was sent to all employees announcing the hiring of a new Chief Technical Officer: no notice had been given to Vieira that his position was being replaced.

19.    Through the fall of 2006, Vieira was physically and emotionally intimidated by Verbeek and Kapadia and his ability to continue to do his job effectively was seriously impaired by the actions of Star, Verbeek and Kapadia.

9

20. Vieira was asked in September, 2006 by Verbeek to resign, but in a meeting with Kapadia, Verbeek and another director, he was advised that Star would not honour the severance clause contained in his employment contract if he did so.

21. Star ceased paying for Vieira's motor vehicle as of December, 2006. The said motor vehicle is leased in Vieira's name and he has been forced to make all lease payments since January, 2007.

22. On or about January 4, 2007, Star purported to dismiss Vieira for cause.

23. Contrary to the provisions of Vieira's employment contract,

    (a) No meeting of the board was held to discuss the said dismissal;

    (b) No board approval was granted in relation thereto; and

    (c) No notice was given to Vieira of his dismissal.

24. Star breached the employment contract by constructively dismissing Vieira well before January 4, 2007 by refusing to pay him, making the workplace intolerable, creating conditions which made it impossible for him to perform his functions, and by hiring a replacement for him while he was still in the employ of Star.

*Punitive and Aggravated Damages & Personal Liability of Verbeek and Kapadia*

25. Since January 4, 2007, Star has engaged in a campaign intended to smear Vieira's reputation and prevent him from obtaining employment elsewhere or from pursuing any other business opportunities. Verbeek and Kapadia, personally, and on behalf of Star, have intentionally and with malicious intent engaged in a variety of actions intended to smear Vieira's reputation and prevent him from obtaining employment or from pursuing business opportunities by, amongst other things:

    (a) Writing to prospective business contacts, alleging that Vieira was dismissed for cause and is in breach of a fiduciary and other duties to Star;

    (b) Filing two private informations with the criminal courts, accusing Vieira of theft and fraud;

    (c) Harassing and annoying his family by telephoning his home several times daily and following them as they go about their daily routines;

    (d) Launching three separate frivolous and vexatious civil suits, claiming repayment of debts that were repaid in 2003.

*Ontario Business Corporations Act Remedies*

26. Vieira and Kapadia are the joint owners of a system and method for transportation vehicle monitoring, feedback and control for which they have been granted a patent. On or about

11

April 22, 2002, Vieira and Kapadia entered into a Licence Agreement with Star, granting Star exclusive rights to the said patent while the Agreement remained in force and effect.

27. On or about February 6, 2007, Vieira gave notice to Star, pursuant to section 9 of the Agreement that Star was in breach of the terms of the Agreement and unless said breach was remedied within 30 days, the Agreement would be terminated. Star did not remedy the breach with the result that the Agreement terminated on or about March 6, 2007.

28. Notwithstanding the termination of the Agreement, Star continues to advise potential licencees of the patent that the Agreement is in full force and effect, that it retains exclusive rights over the patent and that Vieira is in violation of the Agreement, thereby significantly compromising Vieira's abilities to use the patent which he owns or to pursue business opportunities open to him.

29. During his tenure with Star, Vieira guaranteed both a credit card and a line of credit for Star's benefit. The credit card was used by Vieira and by Star for business related expenses and had a limit of $5,000. The credit line was used exclusively by Star. Star has refused to make payments on the credit card, forcing Vieira to make payments to avoid damage to his personal credit. The line of credit, while being paid down remains a liability of approximately $25,000.

30. The actions of Star in terminating Vieira and its actions since termination as set out herein are oppressive and unfairly prejudicial to Vieira.

31. Vieira proposes that this action be tried at Brampton.

Date: _____

McCLELLAND LAW
A Professional Corporation
Lawyers
202 Main Street North
Brampton, Ontario
L6V 1P1

Frances M. Wood
Law Society No. 41088F
Tel.   905-793-3026
Fax   905-793-2446

Solicitors for the Plaintiff

13

| HILARY VIEIRA | and | STAR NAVIGATION et al |
|---|---|---|
| Plaintiff | | Defendants |

Court File No. QN-07-1406

**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at BRAMPTON

**STATEMENT OF CLAIM**

**McCLELLAND LAW**
A Professional Corporation
Lawyers
202 Main Street North
Brampton, Ontario
L6V 1P1

**FRANCES M. WOOD**
LSUC #41088F
Tel: (905) 793-3026
Fax: (905) 793-2446

Solicitors for the Plaintiff