1  Kevin C. McCann (SB# 120874)
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
2  55 Second Street
   Twenty-Fourth Floor
3  San Francisco, CA 94105
   United States of America
4  Telephone: (415) 856-7000
   Facsimile: (415) 856-7100
5  Email: kevinmccann@paulhastings.com

6  Robert M. Masters (admitted *pro hac vice*)
   Timothy P. Cremen (admitted *pro hac vice*)
7  Bhaskar Kakarla (admitted *pro hac vice*)
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
8  875 15th St., N.W.
   Washington, DC 20005
9  Telephone: (202) 551-1700
   Facsimile: (202) 551-1705
10 Email: robertmasters@paulhastings.com
   Email: timothycremen@paulhastings.com
11 Email: bhaskarkakarla@paulhastings.com

12 Attorneys for Defendant
   AEROMECHANICAL SERVICES LTD.
13

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16                SAN FRANCISCO DIVISION

17

18 STAR NAVIGATION SYSTEMS GROUP        CASE NO. C 07-4820 (MMC)
   LTD.,
19                                      **AEROMECHANICAL SERVICES LTD.'S**
                Plaintiff,              **NOTICE OF MOTION AND MOTION TO**
20                                      **DISMISS AND SUPPORTING**
                                        **MEMORANDUM**
21      v.

22 AEROMECHANICAL SERVICES LTD.,        Date:  January 25, 2008
                                        Time:  9:00 am
23              Defendant.              Place: Courtroom 7, 19th Floor
                                        Honorable: Maxine M. Chesney
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................... 1

I.      INTRODUCTION ............................................................................................ 1

II.     FACTS ............................................................................................................. 2

        A.      Star Cannot Bring This Action Without the Patent Owners .................. 3

        B.      Star Is Only A Licensee Of The '852 Patent ....................................... 3

        C.      Canadian Litigation Questions Star's Rights In The '852 Patent .......... 4

        D.      AMS Has No Substantive Contacts with California .............................. 4

        E.      Star Amended Its Complaint To Delay Responding To
                AMS's Motion To Dismiss ................................................................... 6

III.    ARGUMENT (DISMISSAL UNDER FED. R. CIV. P. 12(B)(7) AND 12(B)(1)) ............ 7

        A.      Standard of Review ............................................................................. 7

        B.      The Patent Owner Must Be Joined When A Licensee With Less Than "All
                Substantial Rights" In The Patent Brings Suit ...................................... 8

        C.      Courts Look To The Rights Retained by the Licensor When Determining If
                A License Transfers Less Than "All Substantial Rights" In The Patent ............. 10

        D.      Star Has Failed To Join The Patent Owners Who Are Necessary And
                Indispensable Parties To This Action .................................................. 11

                1.      Star Is Only A Licensee Under The '852 Patent....................... 11

                2.      AMS Is At Risk of Multiple Suits if the Patent Owners Are Not
                        Joined ....................................................................................... 13

                3.      One Patent Owner, Mr. Vieira, Contends that Star Is No Longer an
                        Exclusive Licensee ................................................................... 14

        E.      The Court Should Dismiss this Case .................................................... 12

IV.     ARGUMENT (LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV.
        P. 12(B)(2)) .................................................................................................... 14

        A.      Standard of Review ........................................................................... 15

        B.      For This Forum To Have Personal Jurisdiction Over AMS, AMS Must
                Have Minimum Contacts Herein ........................................................ 15

                1.      General Jurisdiction ................................................................. 16

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS
(continued

**Page**

    2.    Specific Jurisdiction ................................................................... 17

C.    AMS Does Not Have Minimum Contacts With California To Confer Personal Jurisdiction ............................................................................... 18

V.    THE COURT SHOULD AWARD AMS ITS ATTORNEYS' FEES ............................. 20

VI.    CONCLUSION ............................................................................................ 21

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4    *Abbott Labs v. Diamedix Corp.,*
5        47 F.3d 1128, 1131 (Fed. Cir. 1995)................................................................................. 9

     *AT&T v. Compagnie Bruxelles Lambert,*
6        94 F.3d 586 (9th Cir. 1996)...................................................................................... 15, 19

7    *Akro Corp. v. Luker,*
         45 F.3d 1541 (Fed. Cir. 1995)...................................................................................... 15
8
     *Allen v. Wright,*
9        468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) .................................................. 7

10   *Americopters, LLC v. FAA,*
         441 F.3d 726 (9th Cir. 2006)............................................................................................. 8
11
     *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.,*
12       1 F.3d 848 (9th Cir. 1993)......................................................................................... 16, 19

13   *Aspex Eyewear, Inc. v. Miracle Optics, Inc.,*
         434 F.3d 1336 (Fed. Cir. 2006) ................................................................................. 10, 12
14
     *Bancroft & Masters v. Augusta National,*
15       223 F.3d 1082 (9th Cir. 2000)................................................................................... 17, 18

16   *Burger King Corp. v. Rudzewicz,*
         471 U.S. 462 (U.S. 1985)........................................................................................... 17, 19
17
     *Citi Apts., Inc. v. Markel Insurance Co.,*
18       2007 U.S. Dist. LEXIS 44469 (N.D. Cal. 2007)............................................................... 4

19   *Crown Die & Tool Co. v. Nye Tool & Machine Works,*
         261 U.S. 24 (1923) ........................................................................................................ 13
20
     *Data Discount, Inc. v. Systems Tech. Associate, Inc.,*
21       557 F.2d 1280 (9th Cir. 1977)....................................................................................... 15

22   *De Forest v. Collins Wireless Telegraph Co.,*
         174 F. 821 (C.C.D.N.J. 1909) ...................................................................................... 12
23
     *Doe v. Unocal Corp.,*
24       248 F.3d 915 (9th Cir. 2001).............................................................. 15, 16, 17, 18, 19

25   *Electronics For Imaging, Inc. v. Coyle,*
         340 F.3d 1344 (Fed. Cir. 2003).................................................................................... 16
26
     *Etherington v. Hardee,*
27       290 F.2d 28 (5th Cir. 1961)........................................................................................... 12

28

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

4

*Ethicon, Inc. v. United States Surgical Corp.*,
    135 F.3d 1456 (Fed. Cir. 1998) ............................................................................... 8

5

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
    466 U.S. 408 (1984) ...................................................................................... 17, 18

6

7

*International Gamco, Inc. v. Multimedia Games, Inc.*,
    2007 U.S. App. LEXIS 24099 (Fed. Cir. 2007) ............................... 9, 10, 12, 13

8

*International Nutrition Co. v. Horphag Research Ltd.*,
    257 F.3d 1324 (Fed. Cir. 2001) ............................................................................. 8

9

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................ 18

10

*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001) ........................................................................... 12

11

12

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ............................................................................................ 17

13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 8, 14

14

15

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ............................................................................................ 15

16

*McShan v. Sherrill*,
    283 F.2d 462 (9th Cir. 1960) ................................................................................. 7

17

18

*Mentor H/S, Inc. v. Medical Device Alliance*,
    240 F.3d 1016 (Fed. Cir. 2001) ............................................................... 10, 11, 12

19

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) ............................................................... 9, 11, 13

20

21

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282, 1318 (Fed. Cir. 2005) ................................................................... 7

22

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151, 1160 (9th Cir. 2006) ................................................................... 20

23

24

*Pennington Seed. Inc. v. Produce Exchange No. 299*,
    457 F.3d 1334 (Fed. Cir. 2006) ............................................................... 17, 18, 19

25

*Perkins v. Benguet Consolidated Mining Co.*,
    342 U.S. 437 (1952) ...................................................................................... 17, 18

26

27

*Pope Manufacturing Co. v. Gormully & Jeffery Manufacturing Co.*,
    144 U.S. 248 (1892) ............................................................................................ 12

28

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Prima Tek II, L.L.C. v. A-Roo Co.,*
    222 F.3d 1372 (Fed. Cir. 2000)..................................................................... 9, 13

4

*Propat International Corp. v. RPost US, Inc.,*
    473 F.3d 1187 (Fed. Cir. 2007)..................................................................... 10, 13

5

*Rano v. Sipa Press, Inc.,*
6
    987 F.2d 580 (9th Cir. 1993)........................................................................ 20

7

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998)..................................................................... 19

8

*Rite-Hite Corp v. Kelley Co.,*
9
    56 F.3d 1538 (Fed. Cir. 1995) ...................................................................... 9, 13

10

*Schering Corp. v. Roussel-UCLAF SA,*
    104 F.3d 341 (Fed. Cir. 1997)....................................................................... 8

11

*Schwarzenegger v. Fred Martin Motor Co.,*
12
    374 F.3d 797 (9th Cir. 2004)........................................................................ 15, 16, 18, 19

13

*Shermoen v. U.S.,*
    982 F.2d 1312 (9th Cir. 1992)....................................................................... 7

14

*Sicom System v. Agilent Techs., Inc.,*
15
    427 F.3d 971 (Fed. Cir. 2005)....................................................................... 12

16

*Takhar v. Kessler,*
    76 F.3d 995 (9th Cir.1996)........................................................................... 8

17

*Textile Productions, Inc. v. Mead Corp.,*
18
    134 F.3d 1481 (Fed. Cir. 1998)..................................................................... 9, 11

19

*Travelers Health Association v. Virginia,*
    339 U.S. 643 (U.S. 1950)............................................................................. 17

20

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,*
21
    944 F.2d 870 (Fed. Cir. 1991)....................................................................... 10

22

*Viam Corp. v. Iowa Export-Import Trading Co.,*
    84 F.3d 424 (Fed. Cir. 1996)......................................................................... 17

23

*White v. Lee,*
24
    227 F.3d 1214 (9th Cir. 2000)....................................................................... 8

25

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) ................................................................................... 17, 18

26

## STATUTES

27

35 U.S.C. § 100(d) .................................................................................... 8

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

# TABLE OF AUTHORITIES
(continued)

2

**Page**

3  35 U.S.C. § 261 .................................................................................................................... 9

4  35 U.S.C. § 262 .................................................................................................................... 8

5  35 U.S.C. § 281 .................................................................................................................... 8

6  Fed. R. Civ. P. 12(b)(1) .............................................................................................. 1, 8, 15, 21

7  Fed. R. Civ. P. 12(b)(2) .................................................................................................. 1, 15, 21

8  Fed. R. Civ. P. 12(b)(7) .............................................................................................. 1, 7, 15, 21

9  Fed. R. Civ. P. 19 ........................................................................................................... 7, 15

10 Cal. Civ. Proc. Code § 410.10 ............................................................................................ 16

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-4820 (MMC)

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3        PLEASE TAKE NOTICE that on January 25, 2008, at 9:00 AM, or as soon thereafter as

4   the matter may be heard, in the United States District Court for the Northern District of

5   California, Courtroom 7, 19th Floor, 450 Golden Gate Ave., San Francisco, California, before the

6   Honorable Maxine M. Chesney, defendant Aeromechanical Services, Ltd ("AMS") will, and

7   hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1), (2) and (7)

8   for an Order dismissing plaintiff Star Navigation Systems Group Ltd.'s ("Star") First Amended

9   Complaint (D.I. 28).  AMS brings this motion pursuant to: (1) Federal Rule Civil Procedure

10  12(b)(7) because Star, which is only a licensee, has failed to join the owners of the '852 Patent;

11  (2) Federal Rule Civil Procedure 12(b)(1) because Star has not shown that it has standing to bring

12  an infringement action with respect to the patent-in-suit; and (3) Federal Rule Civil Procedure

13  12(b)(2) because this Court cannot reasonably be said to have personal jurisdiction over AMS.

14  AMS also requests that the Court award AMS its reasonable attorney fees caused by Star's failure

15  to respond to AMS's first motion to dismiss (D.I. 18) by filing of the First Amended Complaint

16  for the purpose of delay and forcing AMS to file a second motion.  The motion is based upon this

17  notice, the accompanying memorandum of points and authorities, the Declaration of Darryl

18  Jacobs filed with this motion, and such other matters as we may call to the Court's attention at or

19  before the time of the hearing.

20

## STATEMENT OF ISSUES TO BE DECIDED

21        1.  Whether Star's complaint should be dismissed because Star has failed to join the

22  owners of the patent-in-suit.

23        2.  Whether Star's complaint should be dismissed because Star has not shown that it has

24  standing to bring an infringement action with respect to the patent-in-suit.

25        3.  Whether Star's complaint should be dismissed because this Court cannot reasonably be

26  said to have personal jurisdiction over AMS.

27

28

1    4. Whether AMS should be awarded reasonable attorney fees because Star filed the First

2    Amended Complaint rather than responding to AMS's first motion to dismiss.

3

4    Dated:  December 21, 2007          PAUL, HASTINGS, JANOFSKY & WALKER LLP

5                                      By:_____/s/ Kevin C. McCann_____
                                       Kevin C. McCann (SB# 120874)
6                                      55 Second Street
                                       Twenty-Fourth Floor
7                                      San Francisco, CA 94105
                                       United States of America
8                                      Telephone: (415) 856-7000
                                       Facsimile: (415) 856-7100
9                                      Email:  kevinmccann@paulhastings.com

10                                     Robert M. Masters (admitted *pro hac vice*)
                                       Timothy P. Cremen (admitted *pro hac vice*)
11                                     Bhaskar Kakarla (admitted *pro hac vice*)
                                       875 15th St., N.W.
12                                     Washington, DC 20005
                                       Telephone:  (202) 551-1700
13                                     Facsimile:  (202) 551-1705
                                       Email:  robertmasters@paulhastings.com
14                                     Email:  timothycremen@paulhastings.com
                                       Email:  bhaskarkakarla@paulhastings.com
15
                                       Attorneys for Defendant AMS
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION

3       Star Navigation Systems Group Ltd. ("Star") should have never commenced this action

4   for patent infringement.  Star does not possess the necessary rights in the patent-in-suit, U.S.

5   Patent 7,113,852 ("the '852 Patent"), to bring suit in its name alone, and has not joined the true

6   co-owners of the patent as parties.  Each of the co-owners of the '852 Patent is a necessary and

7   indispensable party, and Star as the sole plaintiff lacks standing.  Moreover, without the owners

8   joined, the defendant Aeromechanical Services Ltd. ("AMS") risks multiple suits by the multiple

9   owners and potentially risks multiple liabilities.

10      Star has also failed to establish that this Court has personal jurisdiction over AMS.  AMS

11  has never conducted any business in the State of California and does not have the prerequisite

12  minimal contact with the State of California such that it should be dragged into this State to

13  defend this action.

14      Accordingly, AMS respectfully moves to dismiss Star's complaint for two separate and

15  independent reasons:

16      (1)    under Fed. R. Civ. P. 12(b)(7) and/or 12(b)(1) because Star has not joined the

17  owners of the patent in this action, and does not otherwise have standing to sue in its name alone;

18  and

19      (2)    under Fed. R. Civ. P. 12(b)(2) because this Court does not have personal

20  jurisdiction over AMS.

21      In addition, AMS has engaged in dilatory tactics by filing the First Amended Complaint

22  (D.I. 28).  Thus, AMS seeks an award of reasonable attorney fees for reviewing and responding to

23  the First Amended Complaint and having to file a second motion to dismiss.

24      Lastly, aside from the standing and jurisdictional defects that are the subject of this

25  motion, Star has failed to conduct the necessary due diligence as to the merits of its claim of

26  infringement, as even a brief inspection of the AMS's systems would readily show that AMS

27  cannot infringe the '852 Patent.  Star has amended its complaint once to attempt to cure the

28

1   deficiencies but it remains that because of AMS's substantial activities outside of the United

2   States, Star cannot prove infringement.  Accordingly, AMS reserves its right to pursue fees and

3   costs associated with Star's insistence to pursue these baseless claims of infringement.

4                                    **II.    FACTS**

5   A.    **Star Cannot Bring This Action Without the Patent Owners**

6          Star commenced this action, as the sole plaintiff, on September 19, 2007, alleging one

7   count of patent infringement of the '852 Patent by AMS.  On its face, the '852 Patent names Viraf

8   S. Kapadia and Hilary Vieira as inventors, but provides for no assignment of the patent rights to

9   Star - or any other entity.  Cremen Dec., Ex. A.  Moreover, the records on file with the U.S.

10  Patent and Trademark Office concerning the '852 Patent reveal no recordation of any assignment

11  of rights to the '852 Patent by the two named inventors (Kapadia and Vieira).  Cremen Dec., ¶¶ 4

12  and 5, Ex. B.  Accordingly, to AMS's knowledge, the two named inventors remain the rightful

13  owners of all right, title and interest in the '852 Patent.  Yet, Star does not include the inventor-

14  owners as parties to this action.  *See* Complaint, D.I. 1.

15         Attempting to gloss over this failure, Star alleges that it is an exclusive licensee of the

16  '852 Patent.  D.I. 1, ¶4 ("[i]nventors Viraf S. Kapadia and Hilary Viera have entered into an

17  agreement providing Star Navigation an exclusive license to the '852 Patent").[1]  Outside of this

18  lone allegation, Star does not explain the details of this "exclusive license."  Star has neither

19  attached the "exclusive license" (or any other agreement granting rights to Star from the named

20  inventors) to the complaint, nor filed the "exclusive license" with the U.S. Patent and Trademark

21  Office.  Cremen Dec., ¶¶ 4 and 5, Ex. B.  Star also has not alleged that it has all substantial rights

22  to the '852 Patent or the exclusive rights to enforce the '852 Patent.  Thus, Star has failed to

23  explain in any way why it should be allowed to bring this action in its name alone.  In its First

24  Amended Complaint, Star has failed to cure any of these deficiencies.

25  _____

26  [1] Star alleges in the complaint that the '852 Patent "was duly and legally issued to Viraf S.
    Kapadia and Hilary Viera [sic] and assigned to Star Navigation."  D.I. 1, ¶ 6.  But, this is plainly
    inconsistent with its express allegation of being "an exclusive licensee." *Id.* at ¶7.  Further,
27  despite being alerted to this facial inconsistency by AMS's first Motion to Dismiss (D.I. 18, fn 1),
    Star chose not to correct it in its First Amended Complaint (D.I. 28).

28

1

**B.      Star Is Only A Licensee Of The '852 Patent**

2          AMS believes that the "exclusive license" referred to in Star's complaint is an April 22,

3   2002 license from Viraf Kapadia and Hilary Vieira ("License").[2]   Cremen Dec., ¶ 6, Ex. C.  This

4   License is limited.  First, the License permits Star only to "use, develop, produce, install,

5   implement, market, promote and sell" the purported invention of the '852 Patent for

6   "Transportation Applications."  Cremen Dec., Ex. C, Sec. 2.2(a).  There is no granting of rights

7   for non-"Transportation Applications" and thus Star's license is limited to a particular field of

8   use.  Star has no rights or license under the '852 Patent in areas outside of "Transportation

9   Applications."

10         The License also reveals that Messrs. Kapadia and Vieira retained their ownership

11  interests in the '852 Patent.  Specifically, they retained, *inter alia*: (1) all non-"Transportation

12  Application" uses of the '852 Patent (Cremen Dec., Ex. C, Secs. 2.2(a) and 2.6); (2) all

13  proprietary interests in the '852 Patent (Cremen Dec., Ex. C, Sec. 5.8); (3) all reversionary rights

14  (Cremen Dec., Ex. C, Sec. 9); and (4) a right to bring an infringement action with or without Star

15  (Cremen Dec., Ex. C, Sec. 10).  Also, Star is unable to "contest, directly or indirectly, the validity

16  of the Licensors' ownership of the Licensed Property."  Cremen Dec., Ex. C, Sec. 5.6.

17         Further, Messrs. Kapadia and Vieira maintained their right to terminate the agreement

18  (Cremen Dec., Ex. C, Sec. 9.2(a)) on their own volition if Star fails to: (1) use its best efforts to

19  "use, produce, install and implement the Licensed Property" (Cremen Dec., Ex. C, Sec. 5.1(a));

20  (2) permit inspections by Kapadia/Vieira (Cremen Dec., Ex. C, Sec. 5.1(b)); (3) warranty the

21  quality and fitness of the Licensed property (Cremen Dec., Ex. C, Sec. 5.1(c)); (4) adhere to

22  quality standards set forth by Kapadia/Vieira (Cremen Dec., Ex. C, Sec. 5.1(d)); and (5) "use its

23  best efforts to market and promote the Licensed Property" and set its prices and terms of credit at

24  commercially reasonable and competitive levels (Cremen Dec., Ex. C, Sec. 5.3).

25

26

27  _____
[2] This License Agreement was filed in a European Patent Application corresponding to the '852
Patent.

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

**C.      Canadian Litigation Questions Star's Rights In The '852 Patent**

2       There is also an on-going breach of contract case pending in the Ontario Superior Court of

3  Justice ("Canadian Action") brought by Hilary Vieira (one of the named inventors, and owners,

4  of the '852 Patent) against Star.[3]  In the Canadian Action, Mr. Vieira contends that Star no longer

5  has an exclusive license under the '852 Patent and is asking the Canadian Court to set aside the

6  April 22, 2002 License Agreement.  Cremen Dec., ¶ 7, Ex. D.[4]  Mr. Vieira contends the April 22,

7  2002 License Agreement was terminated on or about March 6, 2007.  Cremen Dec., Ex. D, ¶ 27.

8  Thus, the Canadian action, at a minimum, further calls into question Star's legal standing to bring

9  suit in this Court.  If Mr. Vieira's contentions are found to be correct, Star does not hold any

10  license to the '852 Patent.

11

**D.      AMS Has No Substantive Contacts with California**

12       AMS is a Canadian corporation, with its principal place of business (and only offices) in

13  Calgary, Alberta, Canada.  Jacobs Decl., ¶ 3.  AMS provides an airplane performance monitoring

14  system, named AFIRS/UPTIME, operated from Calgary and Toronto, Canada.[5]  Jacobs Decl., ¶

15  4.  AFIRS units monitor airplane performance (wherever the airplane might be), and

16  communicate via satellite to UPTIME servers in Canada, which in turn store, analyze, and

17  summarize the data.  Jacobs Decl., ¶ 5.  Thus, much of the functionality of AMS's system is

18  inherently provided outside of the United States.

19       Almost all of AMS's 16 clients are outside of the United States.  Jacobs Decl., ¶ 7.  AMS

20  has two U.S. clients, neither of which is located in California:  Aloha Airlines in Hawaii and

21  North American Airlines in New York.  Jacobs Decl., ¶ 8.

22       Star alleges that "AMS is doing business and has committed acts of infringement within

23

24  [3] Filed on May 3, 2007, shortly after Mr. Vieira's employment with Star ended.

25  [4]  This Court may also take judicial notice of this pleading under Fed. R. Civ. P. 201(b)(2).  *See Citi Apts., Inc. v. Markel Ins. Co.*, 2007 U.S. Dist. LEXIS 44469, *21 (N.D. Cal. 2007) ("[t]he

26  Court may take judicial notice of a document filed in another court, not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and filing").

27  [5] AMS leases server space in separate buildings in Calgary and Toronto, Canada, but does not have offices there.  Jacobs Decl., ¶ 5.

28

Case No. C 07-4820 (MMC)

1    this judicial district[]" (D.I. 1, ¶ 4), but it does not back up this assertion with any facts – because

2    there are none.  AMS does not conduct, and has not conducted, business in the State of California.

3    AMS does not have an office in California.  Jacobs Decl., ¶ 9.  AMS is not, and has never been,

4    licensed or registered to do business in California.  Jacobs Decl., ¶ 10.  AMS does not pay any tax

5    to California.  Jacobs Decl., ¶ 11.  AMS has no employees, sales representatives, vendors,

6    contractors, partners, service providers or associates in California.  Jacobs Decl., ¶ 12.  AMS does

7    not own property or other assets, or maintain any bank accounts, in California.  Jacobs Decl., ¶

8    13.  AMS does not maintain any mailing address or telephone listing in California.  Jacobs Decl.,

9    ¶ 14.

10    AMS has not entered into, or solicited entry into, any business or contract with a

11    California customer.  Jacobs Decl., ¶ 15.  No AMS employee, sales representative, vendor,

12    contractor, partner, service provider or associate has traveled to California to do business with

13    customers on behalf of AMS.  Jacobs Decl., ¶ 16.  AMS has not directed any customer

14    communications into or out of California.  Jacobs Decl., ¶ 17.  AMS has not solicited business or

15    customers in California via advertising, presentations, or sales pitches.  Jacobs Decl., ¶ 18.

16    AMS's website does not allow direct purchases.  Jacobs Decl., ¶ 19.  Neither of AMS's U.S.

17    clients, Aloha Airlines and North American Airlines, is based in California.  Jacobs Decl., ¶ 20.

18    AMS has conducted no research, testing, or development regarding its systems in

19    California.  Jacobs Decl., ¶ 21.  AMS has not provided any service, repairs or support of its

20    systems in California.  Jacobs Decl., ¶ 22.  AMS has not provided services or support to

21    customers in California.  Jacobs Decl., ¶ 23.  AMS has no ground-based equipment, monitors,

22    transmitters, receivers, computers, base-stations, facilities, distribution centers, or offices in

23    California.  Jacobs Decl., ¶ 24.  All of AMS's FAA-related testing and certification took place

24    outside of California.  Jacobs Decl., ¶ 25.

25    AMS does not manufacture goods or distribute products in California.  Jacobs Decl., ¶ 26.

26    AMS leases its AFIRS/UPTIME monitoring system to two U.S. clients, and neither of these

27    transactions took place in California.  Jacobs Decl., ¶ 27.  AMS does not therefore sell physical

28    products, and necessarily cannot place products in the stream of commerce that might end up in

1  California.

2  **E.**      **Star Amended Its Complaint To Delay Responding To AMS's Motion To Dismiss**

3            On December 3, 2007, AMS moved to dismiss ("first motion") Star's original complaint

4  for the same reasons on which this Motion is based.  After reviewing AMS's first motion, Star

5  called on the eleventh hour seeking broad discovery ostensibly directed to personal jurisdiction

6  and AMS's contacts with the State of California - apparently recognizing it had no factual basis to

7  allege personal jurisdiction in this Court.  In reality, Star's discovery was directed to all phases of

8  AMS's business, and far beyond the limited issue of whether this Court has personal jurisdiction

9  over AMS.

10           Accordingly, AMS largely resisted Star's unreasonable discovery demands on grounds of

11  burden and relevancy.  Because Star failed to make out *any* reasonable basis for personal

12  jurisdiction upon which to base its complaint, Star is not entitled to discovery on this issue.

13  Nonetheless, to speed resolution of this nuisance-based lawsuit, AMS agreed to produce a

14  corporate witness for a deposition on the very day requested by Star to answer questions

15  concerning personal jurisdiction. AMS *also* agreed to revise the hearing date to accommodate

16  Star to take this deposition and to file its opposition.  **But, Star then inexplicably refused to go**

17  **forward with discovery!**

18           Star then refused to oppose AMS's first motion.  Instead, Star amended its Complaint for

19  reasons wholly unrelated to AMS's Motion To Dismiss.[6]  But, this amended Complaint fails to

20  correct any of the inherent problems with Star's suit.  Star did not amend its complaint to join the

21  co-owners who are necessary and indispensable parties to this action; Star did not amend its

22  complaint to allege facts sufficient to show it has standing to sue, and Star did not amend its

23  complaint to allege facts that would attempt to show AMS is subject to personal jurisdiction in

24  this State.  Rather, Star amended its complaint simply to delay responding to AMS's first motion.

25  _____

26  [6]   At a minimum, Star should have filed its opposition and explained why it had standing to sue
    and why this Court has personal jurisdiction.  If additional discovery would be of assistance, Star

27  could have then asked the Court to grant such a request. However, Star has no basis to bring suit
    in this Court.

28

1    Star also amended the complaint because Star realized, after being told by AMS, that it

2    could not prove infringement because AMS's activities are largely and substantially outside of the

3    United States.  Star therefore withdrew two claims of infringement – pertaining to all of the

4    method claims in the '852 patent – and now attempts to add one claim (Claim 23) as a last ditch

5    effort to breathe life into this case.[7]  But, on the merits, this makes no difference because major

6    components of AMS's system is physically located in Canada, not within the territory of the

7    United States.  Moreover, Star alleged that "the asserted claims of the original suit and now the

8    first amended complaint were not and are not limited to the method claims." Cremen Dec., Ex. H.

9    Star therefore tacitly admits that there is no legal difference between the original Complaint and

10   First Amended Complaint, and on this basis the only reason to amend was to delay responding to

11   AMS's motion to dismiss.

12       Accordingly, AMS moves to dismiss Star's Amended Complaint.

13   **III.    ARGUMENT (DISMISSAL UNDER FED. R. CIV. P. 12(b)(7) AND 12(b)(1))**

14   **A.    <u>Standard of Review</u>**

15       Under Rule 12(b)(7), a party may bring a motion to dismiss for "failure to join a party

16   under Rule 19." Fed. R. Civ. P. 12(b)(7).  Rule 19 governs what parties are considered necessary

17   to the dispute (Fed. R. Civ. P. 19(a)), and mandates dismissal of actions if that necessary (or

18   "indispensable") party cannot be joined (Fed. R. Civ. P. 19(b)).  A Rule 12(b)(7) motion will be

19   granted if the court determines that joinder of the party is not possible, and that the party is, in

20   fact, "indispensable." *Shermoen v. U.S.*, 982 F.2d 1312, 1317 (9th Cir. 1992).  This Court may

21   consider facts outside the complaint when considering motions under Rule 12(b)(7).  *McShan v.*

22   *Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

23       Additionally, Article III of the Constitution requires that litigants have standing to invoke

24   the federal court's power. *Allen v. Wright*, 468 U.S. 737, 750-51, 104 S. Ct. 3315, 82 L. Ed. 2d

25   _____

26   [7] This amendment is Star's attempt to overcome the fact that AMS cannot infringe method claims
     1 and 22 under *NTP, Inc. v. Research in Motion, Ltd.,* 418 F.3d 1282, 1318 (Fed. Cir. 2005),
     because a significant portion of the AFIRS/UPTIME system is resident in Canada.  But, Star's

27   amendment fairs no better, because *NTP v. Research in Motion* applies equally to the "system"
     claims (23-76) of the '852 Patent like the "method" claims (1-22).

28

-7-

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1    556 (1984) ("In essence the question of standing is whether the litigant is entitled to have the

2    court decide the merits of the dispute or of particular issues").  Lack of Article III standing

3    constitutes a defect in subject matter jurisdiction.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.

4    2000).  A motion challenging standing is properly presented under Federal Rule of Civil

5    Procedure 12(b)(1).  *See id*.  When a party moves pursuant to Rule 12(b)(1) to dismiss for lack of

6    standing, the "plaintiff has the burden of establishing the elements required for standing." *Takhar*

7    *v. Kessler*, 76 F.3d 995, 1000 (9th Cir.1996).  This Court may consider facts outside the

8    complaint when considering motions under Rule 12(b)(1).  *Americopters, LLC v. FAA*, 441 F.3d

9    726, 732 (9th Cir. 2006).

10    **B.    The Patent Owner Must Be Joined When A Licensee With Less Than**
       **"All Substantial Rights" In The Patent Brings Suit**

11

12    Whether a plaintiff has standing to assert the jurisdiction of a federal court is a question of

13    federal law "to be determined as of the commencement of suit." *Lujan v. Defenders of Wildlife*,

14    504 U.S. 555, 570 n. 5 (1992).  In an action for patent infringement, the plaintiff must hold title to

15    the patent in suit because only the "patentee shall have remedy by civil action for infringement of

16    his patent." 35 U.S.C. § 281 (emphasis added).[8]

17    When a patent issues, absent an assignment, each person listed as an inventor owns the

18    patent separately from the other.  35 U.S.C. § 262.[9]  When a patent has multiple owners, courts

19    generally require all co-owners of the patent to be joined as plaintiffs in a patent infringement

20    suit.  *Int'l Nutrition Co. v. Horphag Research Ltd*., 257 F.3d 1324, 1331 (Fed. Cir. 2001).  One

21    co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join

22    voluntarily.  *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998);

23    *Schering Corp. v. Roussel-UCLAF SA,* 104 F.3d 341, 345 (Fed. Cir. 1997).

24    An assignment of a patent can occur only when "the entire patent, an undivided part or

25    share of the entire patent, or all rights under the patent in a specified geographical region of the

26    _____

27    [8]   The term "patentee" includes successors in title.  35 U.S.C. § 100(d).
      [9]   For example, if two inventors are listed on a patent, then each one may grant licenses to the
      patent independently of the other, absent an agreement to the contrary.

28

                                                -8-              AEROMECHANICAL SERVICES LTD.'S
      Case No. C 07-4820 (MMC)                                   NOT. OF MOTION & MOTION TO DISMISS;
                                                                 MPA IN SUPPORT OF MOTION TO DISMISS

United States" is conveyed. *Rite-Hite Corp v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995) (en banc). *See also* 35 U.S.C. § 261.

Patent owners also may grant licenses to practice the claimed invention. There are three types of licenses: (1) a bare license; (2) an exclusive license; and (3) a license granting "all substantial rights" to the patent. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-1341 (Fed. Cir. 2007). A bare license is simply a license to make, use or sell the claimed invention. A bare licensee has no right to exclude others from doing the same, and thus "has no legally recognized interest that entitles it to bring or join an infringement action." *Abbott Labs v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed. Cir. 1995).

An exclusive licensee receives more rights than a bare licensee, but fewer than an assignee. An example of an exclusive licensee is a licensee who receives the exclusive right to practice an invention within a given limited territory. *Rite-Hite*, 56 F.3d at 1552. As the grantee of exclusionary rights, an exclusive licensee is injured by any party that makes, uses, sells, offers to sell, or imports the patented invention. *Morrow*, 499 F.3d at 1339. However, "these exclusionary rights 'must be enforced through or in the name of the owner of the patent,' and the patentee who transferred these exclusionary interests is usually joined to satisfy prudential standing concerns." *Id*. at 1340 (citations omitted).

A license that grants "all substantial rights" in the patent to another is effectively an assignment, thus allowing the licensee to sue in its name only. *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 2007 U.S. App. LEXIS 24099, *7 (Fed. Cir. 2007). If not an owner of the patent, only licensees with "all substantial rights" can bring suit in their own name because of the substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement. *Int'l Gamco,* 2007 U.S. App. LEXIS 24099 at *14. The Federal Circuit has defined "all substantial rights" as those rights sufficient for the licensee or assignee to be "deemed the effective 'patentee' under 35 U.S.C. § 281." *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). But, an exclusive licensee that has been conferred less than "all substantial rights" in a patent has "standing to sue third parties only as a co-plaintiff with the patentee." *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).

-9-

Case No. C 07-4820 (MMC)                    AEROMECHANICAL SERVICES LTD.'S
                                            NOT. OF MOTION & MOTION TO DISMISS;
                                            MPA IN SUPPORT OF MOTION TO DISMISS

C.    **Courts Look To The Rights Retained by the Licensor When Determining If A License Transfers Less Than "All Substantial Rights" In The Patent**

To determine whether a provision in an agreement constitutes a transfer of all substantial rights (*i.e.*, an assignment) or a license, one must ascertain the intention of the parties and examine the substance of what was granted. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 873 (Fed. Cir. 1991). One should look at not only what was granted, but also what was retained by the grantor. *Vaupel*, 944 F.2d at 875. Simply because a license grant may be "exclusive" in some manner, does not mean that "all substantial rights" have been granted or that the licensee has the right to bring suit in its own name.

In *Int'l Gamco v. Multimedia Games*, the Federal Circuit held that an agreement that gave the licensee the right to license, make, use, sell and sublicense, but only within New York and only in a specific field of use (*i.e.*, game systems) (see *Int'l Gamco* at *5) did not transfer all substantial rights in the patent, because the license was only to a "field of use" and left the defendant open to suits by the owner in other fields. *Int'l Gamco, Inc.,* 2007 U.S. App. LEXIS 24099 at *18.

In *Aspex Eyewear v. Miracle Optics*, the court held that a five year agreement to (1) make, use, and sell products; (2) sue for infringement; and (3) sublicense was not a transfer of all substantial rights, because of the limited five year term. *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006).

In *Propat Int'l v. RPost US*, the court held that an agreement that gave the licensor: (1) the express indication that it is, and will continue to be, the owner of the patent; (2) the responsibility to maintain the patents; (3) an equity interest in the proceeds of licensing and litigation activities; (4) a right to notice of licensing and litigation decisions and the right to reasonably veto; and (5) the ability to bar the licensee from sublicensing; and (6) the right to terminate the license if the licensee fails to meet certain specified benchmarks in its efforts to exploit the patent, was not a transfer of all substantial rights. *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1191-1192 (Fed. Cir. 2007).

In *Mentor H/S v. Medical Device Alliance*, the court held that an agreement that gave the

1   licensor: (1) the ability to develop and manufacture products (for sale only to Mentor) and

2   supervise and control Mentor's product development; (2) the responsibility to pay the

3   maintenance fees for the patent; and (3) the obligation to sue parties for infringement (the licensee

4   could only sue if the licensor does not), was not a transfer of all substantial rights.  *Mentor H/S,*

5   *Inc. v. Med. Device Alliance*, 240 F.3d 1016, 1018 (Fed. Cir. 2001).

6   **D.      Star Has Failed To Join The Patent Owners Who Are Necessary And Indispensable**

7   **Parties To This Action**

8            **1.      Star Is Only A Licensee Under The '852 Patent**

9            Messrs. Kapadia and Vieira, as co-owners of the '852 Patent, are necessary and

10  indispensable parties that must be joined or else the case must be dismissed.  Star is a mere

11  licensee of the '852 Patent and does not have "all substantial rights" in the '852 Patent.  Star

12  therefore lacks standing to sue alleged infringers in its own name and without joining as co-

13  plaintiffs the patent owners (Kapadia and Vieira).

14           In its complaint, Star alleges that it is an "exclusive licensee."  However, even if Star is an

15  "exclusive licensee," that alone does not confer standing on Star to bring this action in its own

16  name.  The issue is not whether the license is "exclusive" in some manner but whether that

17  license has granted "all substantial rights" to Star.  Here, the license, to the extent it even remains

18  in force, does not grant Star all substantial rights in the patent.  *Morrow*, 499 F.3d at 1340.

19  Accordingly, because Star has not joined the patent owners, this case should be immediately

20  dismissed.  *Textile Prods.*, 134 F.3d at 1484 (The plaintiff "asserts that it is an exclusive licensee

21  – not an assignee – yet it seeks to bring an infringement action in its own name.  Normally, this

22  alone would be sufficient grounds to dismiss [plaintiffs] infringement claim.").

23           Even if the License between Star and the inventors does remain intact, Star does not hold

24  substantial rights in the patent, and it does not even attempt to allege that it does.  The reason for

25  this is that Messrs. Kapadia and Vieira maintained <u>significant</u> interests in the '852 Patent.

26           For example, Messrs. Kapadia and Vieira retained all non-"Transportation Application"

27  uses of the '852 Patent (Cremen Dec., Ex. C, Secs. 2.2(a) and 2.6).  This reservation requires that

28

-11-

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1  the license be construed as a "field of use license." Such "field of use" licenses have been held to

2  be a transfer of less than all substantial rights. *See Int'l Gamco,* 2007 U.S. App. LEXIS 24099 at

3  *10-15 (explaining that a license limited to a particular industry conveys rights only to a <u>subset</u> of

4  the patented subject matter, and for that reason, require the joinder of the patent owners).[10]  See

5  also *Aspex Eyewear* 434 F.3d at 1342 (holding that a license limited to a fixed term of years failed

6  to transfer all substantial rights).

7       Messrs. Kapadia and Vieira also retained the right to bring an infringement action with or

8  without Star (Cremen Dec., Ex. C, Sec. 10).  The reservation demonstrates that this license is less

9  than an assignment of rights or ownership. *See Mentor H/S,* 240 F.3d at 1018 (holding that the

10  licensor's ability to sue parties for infringement was a factor in finding that there was not a

11  transfer of all substantial rights). *See also Intellectual Property Development, Inc. v. TCI*

12  *Cablevision of California, Inc.*, 248 F.3d 1333, 1345 (Fed. Cir. 2001) (holding that all substantial

13  rights were not transferred because, while the license granted the right to "make, use and sell" the

14  invention, it did not transfer the <u>sole</u> right to sue other parties for infringement).[11]  Moreover, Star

15  makes no mention of this reservation of rights in the Complaint, and there has been an utter

16  failure by Star to demonstrate that one or both of the two co-inventors have refused to bring an

17  infringement action.

18       Messrs. Kapadia and Vieira also retained the right to terminate the License under Section

19  9.2(a) if Star fails to: (1) use its best efforts to "use, produce, install and implement the Licensed

20  Property" (Cremen Dec., Ex. C, Sec. 5.1(a)); (2) permit inspections by the owners (Cremen Dec.,

21  Ex. C, Sec. 5.1(b)); (3) warranty the quality and fitness of the Licensed property (Cremen Dec.,

22  Ex. C, Sec. 5.1(c)); (4) adhere to the quality standards of the owners (Cremen Dec., Ex. C, Sec.

23  5.1(d)); (5) "use its best efforts to market and promote the Licensed Property" and set its prices

24  and terms of credit at commercially reasonable and competitive levels (Cremen Dec., Ex. C, Sec.

25

26  [10] Discussing *Pope Mfg. Co. v. Gormully & Jeffery Mfg. Co.*, 144 U.S. 248 (1892), *Etherington v. Hardee*, 290 F.2d 28 (5th Cir. 1961) and *De Forest v. Collins Wireless Tel. Co.*, 174 F. 821

27  (C.C.D.N.J. 1909)).

   [11] *See also Sicom Sys. v. Agilent Techs., Inc.*, 427 F.3d 971, 977 (Fed. Cir. 2005).

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

5.3).  These requirements also require that the license agreement be read as less than an

assignment.  *See Propat*, 473 F.3d at 1191 (holding that the right to terminate the license if the

licensee fails to meet certain specified benchmarks was a factor in finding that there was not a

transfer of all substantial rights).

      Further, Messrs. Kapadia and Vieira retained all proprietary interests in the '852 Patent

(Cremen Dec., Ex. C, Sec. 5.8), and the License specifies that Star is also unable to "contest,

directly or indirectly, the validity of the Licensors' ownership of the Licensed Property" (Cremen

Dec., Ex. C, Sec. 5.6).  These requirements dictate that the License be read as less than an

assignment.  *See Propat*, 473 F.3d at 1191 (holding that the express indication of the licensors

ownership was a factor in finding that there was not a transfer of all substantial rights).

      Because Messrs. Kapadia and Vieira have retained substantial rights to the '852 Patent,

Star cannot be considered an assignee, as Star did not receive any of: (1) the entire '852 patent;

(2) an undivided share of the '852 Patent; or (3) <u>all rights</u> under the '852 Patent in a specific

geographical area.  See *Rite-Hite Corp*, 56 F.3d at 1551.  Nor can Star be considered an effective

assignee through transfer of "all substantial rights" to the '852 Patent because Star cannot be

considered the "effective patentee."  *See Prima Tek II*, 222 F.3d at 1377.

      At most, Star is a <u>licensee</u> of the '852 Patent, and as such <u>Star must join the patent owners</u>

<u>before bringing suit</u> (*Morrow*, 499 F.3d at 1340) or else the case should be dimissed.

      **2.**      **AMS Is At Risk of Multiple Suits if the Patent Owners Are Not Joined.**

      If the patent owners are not joined, AMS faces the risk of multiple suits.  As recognized

by the Supreme Court, allowing a licensee, even one with exclusive rights to the patent for a

particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and

multiple liabilities against an alleged infringer for a single act of infringement.  *Crown Die &*

*Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 38 (1923).  AMS should not be placed in

situation where it is faced with the risk of multiple recoveries by multiple plaintiffs.  *Int'l Gamco,*

2007 U.S. App. LEXIS 24099 at *11.

      The present posture of this case poses this very problem.  AMS is faced with being sued

multiple times separately by Star and each of the inventors, unless the Court requires joinder of

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1    the inventors, because nothing in the License prevents Kapadia and/or Vieira from suing AMS for

2    infringement separately from the instant dispute with Star.  AMS should not be faced with this

3    predicament, but instead should be entitled to respond to the merits of the allegations of

4    infringement of the '852 Patent in one action - where all of the entities with an ownership interest

5    or other appropriate rights in the '852 Patent are joined as parties.  Absent joinder of the two

6    inventors, the Court should dismiss this case.

7
8       **3.  One Patent Owner, Mr. Vieira, Contends that Star Is No Longer an Exclusive Licensee.**

9       The current Canadian Action in which Mr. Vieira has alleged that the April 22, 2002

10   License Agreement has been terminated poses additional serious questions as to whether Star has

11   <u>any</u> standing to bring suit – even if the patent owners are joined.  The resolution of the Canadian

12   Action may very well determine that Star no longer has any interest in the '852 Patent, and

13   therefore no right to bring suit thereon.  Thus, the outcome of the Canadian Action is highly

14   relevant to these proceedings.

15      Moreover, the mere fact that the Canadian Action is pending shows the deficiencies in

16   Star's complaint.  To assert standing for patent infringement, Star has the burden of showing that

17   it held enforceable title to the patent <u>at the inception of this lawsuit</u>.  *Lujan*, 504 U.S. at 570.  Star

18   bases its claim to title on an "exclusive license."  But, Mr. Vieira has alleged that that license

19   terminated in March 2007 - several months before this action was commenced in September

20   2007.  Star has not explained how it retains any rights under the "exclusive license," or even that

21   the license is still in force – despite being on notice of Mr. Vieira's position well before filing this

22   lawsuit.

23   **E.  The Court Should Dismiss this Case**

24      Even if the License remains in force, Messrs. Kapadia and Vieira maintain significant

25   ownership interests in the '852 Patent, and therefore must be joined as necessary and

26   indispensable parties for this litigation to proceed.  Star has likely decided not to join the co-

27
28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1   inventors because it knows at least Mr. Vieira would not do so.  Because Star has not joined them,

2   and apparently cannot join both, this action should be dismissed under Fed. R. Civ. P. 12(b)(7).[12]

3         Further, in the face of Mr. Vieira's allegation that the License to Star terminated in March

4   2007, Star has not shown that the License remains in effect.  Star has therefore failed to show that

5   it has retained <u>any</u> rights to bring an action for infringement of the '852 Patent.  Because it has

6   not, this action should be dismissed under Fed. R. Civ. P. 12(b)(1).

7   **IV.    ARGUMENT (LACK OF PERSONAL JURISDICTION UNDER FED. R. CIV. P.**

8   **12(b)(2))**

9   **A.    <u>Standard of Review</u>**

10        Federal Rule of Civil Procedure 12(b)(2) provides a district court with the ability to

11  dismiss an action for lack of personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,

12  557 F.2d 1280, 1285 (9th Cir. 1977).  When the defendant moves to dismiss under Rule 12(b)(2),

13  the plaintiff bears the burden of proving personal jurisdiction, and cannot rest on the bare

14  allegations of the complaint.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

15  Cir. 2004).  This Court is not confined to the facts contained in the complaint when considering

16  motions under Rule 12(b)(2).  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

17  Dismissal is required where the plaintiff cannot present competent proof supporting jurisdiction.

18  *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *AT&T v. Compagnie*

19  *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("[a]s the party seeking to invoke federal

20  jurisdiction, [plaintiff] has the burden of establishing its existence").

21  **B.    For This Forum To Have Personal Jurisdiction Over AMS,**

22  **<u>AMS Must Have Minimum Contacts Herein</u>**

23        Federal Circuit law governs personal jurisdiction determinations in patent cases. *Akro*

24  *Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).  When, as here, the defendant is a non-

25  resident of the forum, the determination of whether personal jurisdiction exists over the defendant

26

27  [12] It appears that Star will not be able to correct the joinder issue, due to the pending Canadian
    Action.  Accordingly, Fed. R. Civ. P. 19(b) dictates this action be dismissed.

28

1    requires an analysis of whether: (1) "a forum state's long-arm statute permits service of process;"

2    and (2) "the assertion of jurisdiction would be inconsistent with due process." *Electronics For*

3    *Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Because California's long arm

4    statute[13] is co-extensive with the outer limits of due process under the state and federal

5    constitutions, the jurisdiction analysis in California narrows to one inquiry - whether jurisdiction

6    comports with due process. *Elecs. for Imaging, Inc.*, 340 F.3d at 1350.

7        Courts may exercise general or specific jurisdiction. A finding of general jurisdiction

8    permits a defendant to be haled into the courts of the forum state for any cause of action, even if it

9    is unrelated to the defendant's activities with the forum. *Schwarzenegger*, 374 F.3d at 801.

10   Specific jurisdiction permits a court to adjudicate only claims that arise out of the defendant's

11   contact with the forum. *AT&T*, 94 F.3d at 588.

12       **1.    General Jurisdiction**

13       To establish general jurisdiction, Star must demonstrate that AMS's contacts with the

14   forum are "substantial, continuous and systematic" (*Doe*, 248 F.3d at 923), or that its contacts

15   "'approximate physical presence' in the forum state" (*Schwarzenegger*, 374 F.3d at 801). "This

16   is an exacting standard, as it should be, because a finding of general jurisdiction permits a

17   defendant to be haled into court in the forum state to answer for any of its activities anywhere in

18   the world." *Schwarzenegger*, 374 F.3d at 801. For this reason, the Ninth Circuit "regularly []

19   decline[s] to find general jurisdiction even where the contacts were quite extensive." *Amoco*

20   *Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993). For example,

21   even the entry into sales contracts with California choice-of-law provisions, retention of services

22   of a California direct-mail marketing company, retention of California consultants, and

23   maintenance of a Web site available to California residents, "fall[s] well short of [] 'continuous

24   and systematic' contacts."[14] *Schwarzenegger*, 374 F.3d at 801.

---

25   [13] *See Cal. Civ. Proc. Code § 410.10* ("A court of this state may exercise jurisdiction on any basis

26   not inconsistent with the Constitution of this state or of the United States").

27   [14] Courts have considered several factors when determining whether a defendant's contacts are
     "continuous and systematic," including whether the defendant: (1) is incorporated or authorized
     to do business; (2) maintains its principal place of business, or offices, property, or employees;

28                                                                                      (continued)

### 2. Specific Jurisdiction

In contrast, to show specific jurisdiction (*i.e.*, jurisdiction directly relating to the matter being litigated) Star must satisfactorily show that: (1) AMS has purposefully availed itself of the privileges of conducting activities in California; (2) Star's claim arises out of or results from AMS's activities in California; and (3) the exercise of jurisdiction over AMS is reasonable. *Doe*, 248 F.3d at 923; *Pennington Seed. Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006).

Regarding the first two prongs, a defendant that has only random, fortuitous, or attenuated contacts with a particular forum cannot be considered to have purposely availed itself of the privileges of that forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980). But, where the defendant has deliberately engaged in significant activities within a State (*Keeton*, 465 U.S. at 781), or has created continuing obligations between himself and residents of the forum (*Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (U.S. 1950)), it has availed itself of the privilege of conducting business there, and it is not unreasonable to require him to submit to the burdens of litigation there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (U.S. 1985).

Regarding the third prong, the reasonableness of jurisdiction is determined by balancing several factors, namely: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the interest of the states in furthering their social policies." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir. 1996); *Burger King Corp,* 471 U.S. at 477. However, the factors considered in the analysis of reasonableness are not sufficient alone to vest the court with jurisdiction over a non-resident

---

(continued)
(3) makes sales or serves the markets; (4) has designated an agent for service of process; (5) maintains corporate files; (6) holds director's meetings; (7) maintains accounts; or (8) makes key business decisions, in the forum. *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416 (1984); and *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 445 (1952).

1    defendant when the minimum contacts analysis weighs against the exercise of jurisdiction.

2    *World-Wide Volkswagen*, 444 U.S. at 294.

3    **C.    AMS Does Not Have Minimum Contacts With California**
       **To Confer Personal Jurisdiction**
4

5        Exercising jurisdiction over AMS in this case would contravene the requirements of due

6    process.  AMS does not have the "minimum contacts with the forum such that the maintenance of

7    the suit does not offend traditional notions of fair play and substantial justice."  *See Int'l Shoe Co.*

8    *v. Washington*, 326 U.S. 310, 316 (1945).

9        AMS has done nothing to purposefully avail itself of the benefits and privileges of doing

10   business in California.  AMS has no employees in California, maintains no facilities there, has

11   never owned or leased any property in California, and possesses no assets there.  Jacobs Decl., ¶¶

12   3, 9-14 and 24.  Further, AMS has conducted no marketing activities directed to California, and

13   has not sold or offered for sale its AFIRS/UPTIME monitoring system, or otherwise supported

14   the system in California. Jacobs Decl., ¶¶ 15-19, 21-23.  Indeed, most of AMS's sales and most of

15   the function of its monitoring system occurs outside of the U.S.  Jacobs Decl., ¶¶ 4-8, 20 and 27.

16       Thus, general personal jurisdiction cannot be reasonably applied, as AMS does not have

17   "substantial, continuous and systematic" contacts (*Doe*, 248 F.3d at 923) with California that

18   would "approximate physical presence" therein (*Schwarzenegger*, 374 F.3d at 801).  None of the

19   factors listed in *Perkins*, *Bancroft* or *Helicopteros* weigh in favor of general personal jurisdiction

20   here.[15]

21       Nor can specific personal jurisdiction be applied against AMS in view of the requirements

22   set forth in *Pennington Seed*.  Here, AMS: (1) did not "purposefully direct[] its activities at

23   residents of [California];" (2) did not perform "activities in the forum state" relating to Star's

24   ─────────────────────────────

     [15] Namely, AMS: (1) is not incorporated or otherwise authorized to do business in California; (2)
25   does not maintain its principal place of business, or any offices, property, or employees in
     California; (3) does not make sales or serve California's markets; (4) has not designated a
26   California agent for service of process; (5) does not maintain corporate files in California; (6)
     does not hold director's meetings in California; (7) does not maintain accounts in California; (8)
27   does not make key business decisions in California. See *Bancroft*, 223 F.3d at 1086; *Helicopteros*
     *Nacionales*, 466 U.S. at 416 (1984); and *Perkins*, 342 U.S. at 438, 445.
28

1  claim; or (3) cannot have personal jurisdiction applied against it in a manner that is "reasonable

2  and fair." *See Pennington Seed,* 457 F.3d at 1344.

3      AMS did not avail itself of the benefits and privileges of California law by purposefully

4  directing activities at California, because it neither performed "some type of affirmative conduct

5  which allows or promotes the transaction of business" in California (*Doe*, 248 F.3d at 924), nor

6  had a "purposeful direction" expressly aimed at California. *Schwarzenegger*, 374 F.3d at 803.

7  AMS did not (and does not) direct <u>any</u> business activity toward California. Thus, any contact that

8  AMS might have had with California (if any) can only be categorized as "random, fortuitous, or

9  attenuated," which is not sufficient to show minimum contacts. *AT&T*, 94 F.3d at 590.

10      Nor can Star allege that personal jurisdiction somehow attaches to AMS due to any of its

11  customer's actions in California – such as Aloha's flying in and out of California. As the Federal

12  Circuit has observed, "doing business with a company that does business in [the forum state] is

13  not the same as doing business in [the forum state]." *Red Wing Shoe Co., Inc. v. Hockerson-*

14  *Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). AMS does not do business in

15  California. Star's attempts to demonstrate jurisdiction by latching on to the activity of Aloha

16  must fail, because Aloha is in control of where it flies, not AMS, and AMS cannot be argued to

17  be availing itself of California law by such attenuated circumstances.

18      Moreover, even if it could be shown that AMS has "minimum contacts" with California,

19  the bare existence or these contacts "is not sufficient to allow a court to exercise personal

20  jurisdiction over a defendant." *Doe*, 248 F.3d at 925. Jurisdiction is still improper if it would be

21  unreasonable because the burdens on the defendant outweigh the plaintiff's interest in the forum

22  and the state's interest in resolving disputes arising within the forum. *Burger King*, 471 U.S. at

23  477. An analysis of such reasonableness requires a balancing of seven factors:

24        [(1)] the extent of purposeful interjection[;(2)] the burden on the
      defendant to defend the suit in the chosen forum[;(3)] the extent of

25        conflict with the sovereignty of the defendant's state[;(4)] the forum
      state's interest in the dispute; [(5)] the most efficient forum for

26        judicial resolution of the dispute; [(6)] the importance of the chosen
      forum to the plaintiff's interest in convenient and effective relief;

27        [and (7)] and the existence of an alternative forum.

28  *Amoco Egypt Oil Co.*, 1 F.3d at 852. The jurisdictional barrier is "higher" for foreign defendants

1   than for citizens from a sister state.  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

2           Here, the burden is high on AMS, as it is being asked to defend an action in a state where

3   it does no business, and has no contacts.  It also cannot be said that California has any particular

4   interest in this litigation, because neither party is from California, AMS has not directed any of its

5   business activities toward California, and there has been no allegation that any substantial portion

6   of the allegedly infringing activities occurred in California.

7           This forum is also inconvenient and inefficient for both parties.  Both Star and AMS are

8   Canadian companies.  D.I. 1, ¶¶ 1 and 2.  AMS has no presence in California, and it is doubtful

9   that Star does either.  While this judicial district is known for providing structured and well-

10  managed patent-related proceedings, there is no reason to believe that another district where AMS

11  does have a presence could not provide a fair and competent proceeding.  Indeed, there is no

12  reason Star could not obtain relief in such a forum.

13          After review of all the evidence, it appears that Star has chosen the Northern District of

14  California for tactical, rather than substantive, reasons.  Star's tactical maneuvering should not

15  outweigh the unfairness and burden inherent in forcing AMS, a foreign company that has not

16  purposefully directed any activities to California, to defend itself here.  Star's request for

17  discovery from AMS on the issue of personal jurisdiction is an express concession that record

18  demonstrates no factual basis for this Court to exercise personal jurisdiction over AMS.[16]

19          **V.      THE COURT SHOULD AWARD AMS ITS ATTORNEYS' FEES**

20          There is no reason for Star to have filed the First Amended Complaint, other than to delay

21  having to respond to AMS's first motion, and to add cost and complexity to this litigation.  AMS

22  was thus forced to file this second Motion to Dismiss.  AMS requests that this Court award AMS

23  its attorney fees related to reviewing and responding to the First Amended Complaint, including

24

25  _____

    [16]  Star is not entitled to discovery on personal jurisdiction because,"[w]here a plaintiff's claim of
26  personal jurisdiction appears to be both attenuated and based on bare allegations in the face of
    specific denials made by the defendants, the Court need not permit even limited discovery."
27  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).  Such is the case here.

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1   all fees related to the preparation and filing of this Motion.  *See Moore v. Keegan Mgmt. Co. (In*

2   *re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 436 (9th Cir. 1996).

3                                VI.    CONCLUSION

4          In view of the foregoing, AMS respectfully requests that this Court dismiss the current

5   action under one or more of: (1) Fed. R. Civ. P. 12(b)(7) because Star, which is only a licensee,

6   has failed to join the owners of the '852 Patent; (2) Fed. R. Civ. P. 12(b)(1) because Star has not

7   shown that it has standing to bring an infringement action with respect to the '852 Patent; and (3)

8   Fed. R. Civ. P. 12(b)(2) because this Court cannot reasonably be said to have personal jurisdiction

9   over AMS.  Additionally, AMS requests that this Court award reasonable attorney fees to AMS

10  for reviewing and responding to the First Amended Complaint and for having to file a second

11  motion to dismiss.

12  Dated:  December 3, 2007              PAUL, HASTINGS, JANOFSKY & WALKER LLP

13
                                        By: _____
14                                      Kevin C. McCann (SB# 120874)
                                        55 Second Street
15                                      Twenty-Fourth Floor
                                        San Francisco, CA 94105
16                                      United States of America
                                        Telephone: (415) 856-7000
17                                      Facsimile: (415) 856-7100
                                        Email: kevinmccann@paulhastings.com
18
                                        Robert M. Masters (admitted *pro hac vice*)
19                                      Timothy P. Cremen (admitted *pro hac vice*)
                                        Bhaskar Kakarla (admitted *pro hac vice*)
20                                      875 15th St., N.W.
                                        Washington, DC 20005
21                                      Telephone:  (202) 551-1700
                                        Facsimile:  (202) 551-1705
22                                      Email: robertmasters@paulhastings.com
                                        Email: timothycremen@paulhastings.com
23                                      Email: bhaskarkakarla@paulhastings.com

24                                      Attorneys for Defendant AMS
    700030 / 28946
25

26

27

28

Case No. C 07-4820 (MMC)                                AEROMECHANICAL SERVICES LTD.'S
                                                        NOT. OF MOTION & MOTION TO DISMISS;
                                                        MPA IN SUPPORT OF MOTION TO DISMISS