DANIEL P. ALBERS (admitted *pro hac vice*)
JEFFREY A. RUPPEL (admitted *pro hac vice*)
BARNES & THORNBURG LLP
One N. Wacker Drive, Suite 4400
Chicago, IL 60606
Phone No.: (312) 357-1313
Fax No.: (312) 759-5646
Email: dalbers@btlaw.com
Email: jruppel@btlaw.com

CHRISTINE H. MCCARTHY (admitted *pro hac vice*)
BARNES & THORNBURG LLP
750 17th Street N.W., Suite 900
Washington, D.C. 20006-4675
Phone No.: (202) 289-1313
Fax No.: (202) 289-1330
Email: cmccarthy@btlaw.com

JEFFREY K. LEE, CA Bar No. 212465
KIMBERLY A. DONOVAN, CA Bar No. 160729
GCA LAW PARTNERS LLP
1891 Landings Drive
Mountain View, CA 94043
Phone No.: (650) 428-3900
Fax No.: (650) 428-3901
Email: jlee@gcalaw.com
Email: kdonovan@gcalaw.com

Attorneys for Plaintiff STAR NAVIGATION SYSTEMS GROUP LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| STAR NAVIGATION SYSTEMS GROUP LTD.,<br><br>Plaintiff,<br><br>v.<br><br>AEROMECHANICAL SERVICES LTD.,<br><br>Defendant. | Case No. C 07-4820 MMC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REQUEST FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**<br><br>Honorable Maxine M. Chesney<br>Date: January 11, 2008<br>Time: 9:00 a.m.<br>Place: Courtroom No. 7, 19th Floor |

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in
Opp'n to Motion to Dismiss

1

## TABLE OF CONTENTS

2

3                                                                                  Page No.

4      INTRODUCTION .................................................................................... 1

5      ISSUES TO BE DECIDED.......................................................................... 2

6      STATEMENT OF RELEVANT FACTS........................................................ 3

7              A.    Plaintiff Star and its Patented Technology ............................. 3

8                    1.    Star's Full and Exclusive Rights to The '852 Patent ................. 3

9                    2.    Star's Authority to Sue and Filing of the Instant ................. 3

10             B.    Defendant AeroMechanical Services and its Contacts to California .... 4

11                   1.    AMS' Publicly-Known Products and Support Services ......... 5

12                   2.    AMS' Publicly-Known Customers ........................................... 7

13                   3.    AMS' Potential California Customers ....................................... 9

14             C.    The Parties' Negotiations Regarding Jurisdictional Discovery
                     And Scheduling for Defendant's Motion to Dismiss ............................. 10
15
       ARGUMENT .......................................................................................... 10
16
               I.    STAR HAS STANDING TO SUE BY ITSELF BECAUSE THE
17                   INVENTORS GRANTED ALL SUBSTANTIAL RIGHTS
                     AND AMS' SO CALLED "FIELD OF USE' ENCOMPASSES
18                   THE FULL SCOPE OF THE PATENT'S RIGHTS ............................. 10

19                   A.    The patent owner must be joined only if the exclusive
                           license grants fewer than all substantial patent rights ............... 11
20
                     B.    Star, as the exclusive licensee of all substantial rights
21                         of the '852 Patent, has standing to sue for infringement by
                           itself ........................................................................................... 11
22
                     C.    Neither inventor is indispensable because both authorized
23                         Star to file this suit pursuant to the terms of the
                           license and declined to participate as individual
24                         party-plaintiffs .......................................................................... 14
25

26

27

28

OCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650) 428-3500
                    Case No.: C07-4820 (MMC)                        -i-

II.   PERSONAL JURISDICTION EXISTS DUE TO AMS' ACTIVE
      PRODUCT DISTRIBUTION TO REGISTERED CALIFORNIA
      BUSINESSES OPERATING DAILY AT NUMEROUS STATE
      AIRPORTS AND ONGOING COMMUNICATIONS
      NECESSARY FOR USE OF ITS ACCUSED SYSTEM WITHIN
      THE STATE ........................................................................................  15

III.  PLAINTIFF SHOULD BE GRANTED EXPEDITED
      JURISDICTIONAL DISCOVERY TO SUPPLEMENT THE RECORD
      ESTABLISHING DEFENDANT AMS' CONTACTS WITH
      CALIFORNIA ......................................................................................  17

      A.    Jurisdictional discovery will allow plaintiff to properly
            Address specific factual claims and evidence at issue here .......  18

      B.    Star is likely to discover additional evidence supporting
            Personal jurisdiction ................................................................  20

IV.   PENDING DEADLINES SHOULD BE ENLARGED AND
      CONTINUED TO ALLOW COMPLETION OF
      JURISDICTIONAL DISCOVERY AND SUBSEQUENT SUBMISSION
      OF BRIEFS ........................................................................................  20

CONCLUSION ..................................................................................................  21

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                          <u>Page No.</u>

*Akro Corp. v. Luker*,
    45 F.3d 1541 (Fed. Cir. 1995) ................................................................. 15

*Applied Interact, LLC. v. Vt. Teddy Bear Co.*,
    04 Civ. 8713, 2005 U.S. Dist. LEXIS 15016
    (S.D.N.Y. Sept. 6, 2005) ........................................................................ 11

*Asahi Metals Indus. Co. v. Superior Court*,
    480 U.S. 102 (1987) ............................................................................... 17

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
    434 F.3d 1336 (Fed. Cir. 2006) ............................................................... 13

*Beverly Hills Fan co. v. Royal Sovereign Corp.*,
    21 F.3d 1558 (Fed. Cir. 1994) ................................................................. 15

*Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*,
    444 F.3d 1356 (Fed. Cir. 2006) ............................................................... 15

*Commissariat a l'Energie Atomique, v. Chi Mei Optoelectronics Corp.*,
    395 F.3d 1315 (Fed. Cir. 2005) ............................................................... 17

*Elec. For Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003) ............................................................... 15

*Ethicon, Inc. v. United States Surgical Corp.*,
    135 F. 3d 1456 (Fed. Cir. 1998) .............................................................. 13

*Helicopteros Nacionales de Colombia v. Hall*,
    466 U.S. 408 (1984) .......................................................................... 15, 16

*Intellectual Prop. Dev. Inc. v. TCI Cablevision of Cal., Inc.*,
    248 F. 3d 1333 (Fed. Cir. 2001) .......................................................... 11, 12

*Int'l Gamco, Inc.*,
    504 F.3d 1273 (Fed. Cir. 2007) ........................................................... 11, 13

*Int'l Nutrition Co. v. Horphag Research Ltd.*,
    257 F.3d 1324 (Fed. Cir. 2001) ............................................................... 13

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650) 428-3900

Case No.: C07-4820 (MMC)

iii

*International Shoe Co. v. Washington,*
 326 U.S. 310 (1945) ................................................................... 15

*InternetAd Sys., LLC v. Opodo Ltd.,*
 481 F. Supp. 2d 596 (N.D. Tex. 2007) .................................... 12

*Mentor H/S, Inc. v. Med Device Alliance,*
 240 F.3d 1016 (Fed. Cir. 2001) ................................................ 13

*Morrow v. Microsoft Corp.,*
 499 F.3d 1332 (Fed. Cir. 2007) ......................................... 11, 12

*Propat Int'l Corp. v. RPOst US, Inc.,*
 473 F.3d 1187 (Fed. Cir. 2007) ................................................ 13

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
 148 F.3d 1355 (Fed. Cir. 1998) ................................................ 19

*Rite-Hite Corp. v. Kelley Co.,*
 56 F.3d 1538 (Fed. Cir. 1995) .................................................. 13

*Schering Corp. v. Roussel-UCLAF SA,*
 104 F.3d 341 (Fed. Cir. 1997) .................................................. 13

*Shaffer v. Heitner,*
 433 U.S. 186 (1977) .................................................................. 16

*Trinitech Industries, Inc. v. Pedre Promotional Products, Inc.,*
 395 F.3d 1275 (Fed. Cir. 2005) ......................................... 15, 17

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.,*
 944 F.2d 870 (Fed. Cir. 1991) .................................................. 13

*Warner-Jenkinson Co. v. Hilton Davis Chem..,*
 520 U.S. 17 (1997) .................................................................... 12


<u>Code and Statutes</u>           <u>Page No.</u>

CAL. CIV. PROC. CODE § 410.10........................................................ 15

Fed. R. Civ. P. 12(b)(1) ..................................................................... 1

Fed. R. Civ. P. 12(b)(2) ................................................................. 1, 17

1 | Fed. R. Civ. P. 12(b)(7) ........................................................................ 1
2 | 35 U.S.C. §112 ..................................................................................... 12

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# INTRODUCTION

With its present Motion to Dismiss, Defendant Aeromechanical Services Ltd. ("AMS") tries to perform a jurisdictional sleight of hand to evade responsibility for infringement of Plaintiff Star Navigation Systems Group Ltd.'s ("Star's") transportation vehicle monitoring patent. Seeking dismissal of the First Amended Complaint, AMS offers factual arguments and evidence that present a record for this Court characterized by incomplete information and evidentiary gaps.

AMS first disputes Star's standing to sue, pursuant to Fed. R. Civ. P. 12(b)(1), based on its arguments that Plaintiff's exclusive license precludes this suit and covers a limited field of use. AMS ignores that the license agreement grants to Star all substantial rights in the '852 patent, including the right to bring the instant action without the licensor-inventors' participation. The so-called limitation in the license agreement with regard to "transportation applications" does not limit the license in any way. The '852 patent only covers "transportation applications" and no others, as defined by the claims of '852 patent.

AMS next argues that the two inventors are indispensable parties that must be joined as party-plaintiffs to prevent multiple lawsuits under Fed. R. Civ. P. 12(b)(7). Yet AMS ignores that both inventors authorized Star to file this suit pursuant to the terms of the license and declined to participate as individuals.

Finally, AMS claims that this Court cannot exercise personal jurisdiction over the company because it lacks any contact to California, requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(2). The information proffered by AMS is primarily non-public. It should be evaluated and responded to by Star after conducting jurisdictional discovery. Nevertheless, Star presents evidence below that personal jurisdiction exists, *inter alia*, due to AMS' (1) active product distribution to registered California businesses operating daily at numerous state airports and (2) regular, ongoing communications necessary for use of the accused system within the State.

AMS' motion should be denied in its entirety. To the extent this Court requires a more

- 1 -

1  complete evidentiary record to decide the issues, Star respectfully requests leave to conduct

2  limited jurisdictional discovery and to continue the hearing date, as proposed below.

3

4                              **ISSUES TO BE DECIDED**

5

6   1.  Whether exclusive licensee Star has standing to sue where the inventors granted all

7       substantial patent rights, including the right to enforce the patent and  a field of use that

8       encompasses all substantial rights to the patent-in-suit.

9   2.  Whether Star must amend its Complaint to add the inventors as parties where both

10      inventors granted Star all substantial patent rights under an exclusive license and then

11      authorized Star to file this suit when declining to participate as individual party-plaintiffs.

12

13  3.  Whether personal jurisdiction exists, *inter alia*, in light of AMS' active product

14      distribution to registered California businesses that operate daily at numerous state

15      airports and its regular, ongoing communications necessary for use of the accused system

16      within the State.

17

18  4.  Whether this Court should grant Plaintiff leave to conduct jurisdictional discovery and

19      continue the hearing on Defendant's Motion to Dismiss until jurisdictional discovery is

20      completed and the jurisdictional issues have been fully briefed where it will enable

21      Plaintiff to respond to evidence in Defendant's control and to supplement its allegations

22      to establish personal jurisdiction over Defendant.

23

24

25

26

27

28

                                      - 2 -

# STATEMENT OF RELEVANT FACTS

## A. Plaintiff Star and its Patented Technology

Plaintiff Star Navigation Sytems Group Ltd. ("Star") is a Canadian corporation, with its principal place of business in Toronto, Ontario Canada. First Amended Complaint ("Compl.") ¶ 1. On September 26, 2006, United States Patent No. 7,113,852 ("the '852 patent"), entitled "System and Method for Transportation Vehicle Monitoring, Feedback and Control" was duly and legally issued to Viraf S. Kapadia and Hilary Viera. Compl. ¶¶ 6, 7. A true and correct copy of the '852 patent is attached as Exhibit ("Exh.") 4 to the Declaration of Jeffrey K. Lee ("Lee Decl.") All claims of the '852 patent include a transportation vehicle as an element. *See* Lee Decl., Exh. 4.

### 1. Star's Full and Exclusive Rights to The '852 Patent

Viraf S. Kapadia and Hilary Viera ("the Licensors") granted Star an exclusive license of all substantial rights in the '852 patent under a License Agreement dated April 22, 2002 ("the license"). Compl. ¶¶ 6, 7. *See* Lee Decl., Exh. 2. The license covers the entire scope and all substantial rights contained in the '852 patent. The agreement grants Star rights to all transportation uses of the '852 patent, thus encompassing the full scope of the invention. *See* Lee Decl., Exh. 2. The license also grants Star the right to prosecute patent infringement actions in its own capacity as the exclusive licensee without the Licensors participations as party-plaintiffs. *See* Lee Decl., Exh. 2 at ¶¶ 10.1 and 10.2.

### 2. Star's Authority to Sue and Filing of the Instant Action

Specifically, paragraphs 10.1 and 10.2 of the license agreement expressly provide Star with the right to bring an action for infringement if the Licensors elect not to proceed with such proceedings. *See* Lee Decl., Exh. 2. Star Navigation advised Mr. Viera of the infringement by

- 3 -

AMS in a letter from Mr. Kapadia, dated March 8, 2007. *See* Lee Decl., Exh. 3. Mr. Viera, through his lawyer Frances M. Wood, authorized Star to sue AMS on its own behalf in a letter dated April 5, 2007. *See* Lee Decl., Exh. 4. The licensee is identified in a Canadian employment dispute brought by Mr. Viera in which Star counterclaimed on September 4, 2007 against Mr. Viera for breach of contract. *See* Lee Decl., Exh. 5 at ¶ 9 (Star's Canadian pleading).

On September 19, 2007, Star filed the present action, amending its complaint on December 18, 2007, to stop AMS's infringement of the '852 patent through importing, making, selling, using, operating, supporting, or offering to sell infringing devices and/or systems, including AMS's Automated Flight Information Reporting System model 200, ("AFIRS" or the "Infringing System"). Compl. ¶¶ 8-10. AMS is also inducing or contributing to infringement of the '852 patent by others by selling and/or offering to sell the Infringing System to third parties, with the intent to induce infringement. Compl. ¶¶ 8-10. Plaintiff alleges that "AMS is doing business and has committed acts of infringement, including those alleged herein, within the State of California and/or this judicial district, subjecting it to the jurisdiction of this Court and making venue proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400." Compl. ¶ 4.

### B. Defendant AeroMechanical Services and its Contacts to California

Defendant AMS is a Canadian corporation with its place of business in Calgary, Alberta Canada. Compl. ¶ 2. Public information shows that AMS operates at least one United States subsidiary, AeroMechanical Services USA, Inc. *See* Lee Decl., Exhs. 6 and 34. Others may exist.

- 4 -

1.  **AMS' Publicly-Known Products and Support Services**

AMS's public website confirms that, among other things, it offers for sale its AFIRS solution and provides storage, cabin cleaning, and safety solutions for the transportation industry. *See* Lee Decl., Exh. 7.

*The Infringing AFIRS product* - A significant use of AMS's AFIRS system is as a flight monitoring aid for commercial passenger airplanes, including those crossing the Pacific Ocean from Asia and beyond.  AMS publicly claims 25 airlines as current customers, contracted to use AFIRS in their airplanes. *See* Lee Decl., Exh. 8.   AMS's December 17, 2007 press release announced a new (unidentified) customer claimed that "The addition of this airline brings the number of aircraft under contract this year to 504. Those aircraft are owned by 16 different airlines.  These four additions increase the total aircraft under contract to 681 from 25 different carriers. There are currently 90 aircraft that are equipped with the afirs™ UpTime™ solution." *See* Lee Decl., Exh. 8.

*AMS' other products and services* – Established AMS products for the aviation industry specifically include cabin cleaning systems and under-floor stowage units.  *See* Lee Decl., Exhs. 7, 30, 31.

*Product Installation and Support Services* – AMS' website acknowledges its product support services, available anywhere in the world:  "At AMS, we pride ourselves on outstanding customer service, efficient installation, and exceptional technical support." Lee Decl., Exh. 9. AMS promises "efficient installation" of its product wherever and whenever sought by its customers, stating "[w]orking within the airlines' schedules, AMS provides on-site installation *anywhere in the world.*" *Id.*

- 5 -

*Necessary Communications Between AMS and Airplane Operators* – AMS supports its customers with a web-based "client interface" usable by customers anywhere – including California - and a remote access technician to aid them. *See* Lee Decl., Exh. 10 ("Our easy-to-use web-based *client interface* allows *airline staff* to produce reports and access data quickly and easily without relying on technical staff. Our UpTime servers are housed off-site and managed by IBM . . . . If necessary, AMS retains a remote-access technician available 24/7.").

Evidence indicates that ongoing communications through this "client interface" are necessary to use AFIRS. AFIRS servers obtain flight data and provide performance reports for airplane flight and maintenance crews needing immediate aviation system evaluations, including when at California airports. The system disclosed by AMS' own patent gathers and transmits information onboard the airplane. *See* Lee Decl., Exh. 10. Either manually (through human action) or automatically (through pre-programmed events such as  upon engine shutdown), flight data is formatted on the airplane and transmitted – including from the airplane at touchdown and takeoff locations – to AMS servers. *See* Lee Decl., Exh. 10 at Figure 6 (showing data report produced to client after touchdown). Data reports are then created by AMS servers and re-directed back to the on-site airplane operations personnel, airport maintenance crews, flight crews, and/or any person that must evaluate the airplane's system performance. *See* Lee Decl., Exh. 10 at 6:3-44 (describing transmission of client data to AMS and retransmission of report to flight personnel onboard the aircraft). Such information is contemplated for use in a "real-time" environment to evaluate aircraft performance and prepare the craft for its departing flight, when other transmissions occur between the client's crews and AMS. *See* Lee Decl., Exh. 36 at 3 (describing client interface upon aircraft takeoff). These communications appear to occur at

- 6 -

touchdown and/or takeoff wherever an AFIRS-equipped aircraft travels, including at the

California airports identified below.

### 2. AMS' Publicly-Known Customers

AMS targets sales to aviation original equipment manufacturers ("OEMs"), large and

small aviation operators (both military and private) and aviation craft maintenance companies,

among others. *See* Lee Decl., Exhs. 11; 32; 37 at 1; 33 at 1; 30 at 3-10; 31 at 4; and 39 (military

use of AFIRS by Raytheon of Long Beach, California).   Several presently-known AMS airline

customers and are registered as active California corporations that maintain operations centers

and/or flight routes into and out of the State's airports.  There exists no dispute that at least one

of AMS' products - its AFIRS system - enters California regularly when installed in airplanes of

these California-registered customers.  Public information indicates that AMS installs and

provides ongoing system support services to such customers wherever requested.  AMS's

solicitation, sales, installation and service of its AFIRS system may occur in California at any

location with any aviation customer.  Jurisdictional discovery is needed to determine the extent

and scope of such state contacts, including with the following.

*Aloha Airlines* - AMS' business within California includes sale of, installation and

ongoing service for its Infringing Product to Aloha Airlines for use on its fleet of commercial

airplanes. *See* Lee Decl., Exh. 35 at 2. Aloha is an active, registered California business. *See*

Lee Decl., Exh. 12.  Aloha presently sends its commercial airplanes across the Pacific Ocean in

and out of at least four California airports, including Sacramento, Oakland, San Diego, and John

Wayne (Orange County, California). *See* Lee Decl., Exhs. 13 at 3, 34 at 2.  As discussed above,

data transmissions to and from AMS by the flight personnel occur to generate AMS' report on

the plane's system performance after landing and/or before a departing flight involving these

- 7 -

state airports.  Moreover, AMS's installation and service of its AFIRS system may occur in California, including at any of the airports to which Aloha flies.  Jurisdictional discovery is needed to determine the extent and scope of such state contacts.

*China Eastern Airlines* - AMS' business within California further includes sale of, installation and service for its infringing product to China Eastern Airlines for use on its fleet of airplanes.  *See* Lee Decl., Exh. 14.  China Eastern is another active, registered California business. *See* Lee Decl., Exh. 15. China Eastern also sends its airplanes across the Pacific Ocean in and out of California, including LAX airport in Los Angeles. *See* Lee Decl., Exh. 16.  As discussed above, data transmissions to and from AMS by the flight personnel likely occur at these state airports.  Moreover, AMS's installation and service of its AFIRS system may occur in California at any of the airports to which China Eastern flies.  Jurisdictional discovery is also needed to determine the extent and scope of such state contacts.

*Meggitt Purchase and Installation of AMS' Systems in California* –  AMS maintains a strong relationship with Meggitt, comprised of active, registered California businesses with headquarters and/or operations in Simi Valley, California.  *See* Lee Decl., ¶ 23 and Exh. 19.  *See also* Lee Decl., Exhs. 30 at 6; 17; 18; 20; 36; 38 at 4.  Meggitt manufactures and sells aviation equipment, including (as advertised by AMS) systems incorporating the AFIRS solution. *See* Lee Decl., Exhs. 17, 18, 20.  A November 21, 2007 report highlighted AMS's relationship with Meggitt as "allowing AeroMechanical to work directly with OEM's (Original Equipment Manufacturers ex: Boeing, Airbus, etc) to have its products installed directly on the airframe and thus reduce installation time."  Lee Decl., Exh. 20.  The extent of AMS and/or OEM sales, installation, promotions and service of the Infringing System (and other AMS products) within California, including by Meggitt, is presently an issue for jurisdictional discovery.

- 8 -

### 3.  **AMS' Potential California Customers**

The November 21, 2007 market report identified the overall market potential for AMS' AFIRS solution as "immense" with respect to almost 40 thousand commercial and business aircraft in operation and 51 thousand when including turboprops."  *See* Lee Decl., Exh. 20. Apart from AMS' acknowledged large-scale commercial passenger airline customers, the company may solicit, promote, offer, sell, and/or support the Infringing System or its other products to many small, independent aviation craft (airplanes, helicopters, etc.) customers. Numerous large and small aviation craft operators, manufacturers and maintenance companies reside and operate in California, creating a significant customer base for AMS to solicit.  *See* Lee Decl., Exhs. 21, 40.

To aid in exploiting this market, AMS maintains a corporate website at www.amscanada.com offering its products and services.  The website is accessible to any customer or potential customer of AMS within California.

AMS' website promotes its AFIRS solution to small, commercial and business aircraft by recounting the Indian Air Force's use of the system on a worldwide flight in a "microlight" aircraft that included routes through California, including Stockton and Tracy.  *See* Lee Decl., Exh. 22.  Third-parties have also identified the system's use when installed on such small-scale aircraft.  *See* Lee Decl., Exhs. 23, 24, 37.

AMS' opportunities for contacts with California resident customers seem to arise on a regular basis. AMS appears to have attended recent conferences with numerous airline customers and/or potential customers in attendance, including commercial flight operators and airplane manufacturers (OEMs).  *See, e.g.,* Lee Decl., Exhs. 30 at 1; 25 at 6; 26 at 6.  The extent of AMS

- 9 -

1  contacts with such current or potential California customers may change by the day or week.

2  Those contacts would only be learned through discovery on the issue.

3
4  **C. The Parties' Negotiations Regarding Jurisdictional Discovery and Scheduling for Defendant's Motion to Dismiss.**

5  On December 10, 2007 lead trial counsel for Plaintiff contacted Defendant's counsel to

6
7  discuss an agreement to conduct jurisdictional discovery, and scheduling of Plaintiff's response

8  and continuation of the hearing on Defendant's Motion to Dismiss. *See* Lee Decl. at ¶ 31 and

9  Exh. 27.  Plaintiff also provided a Notice of Deposition and Requests for the Production of

10  Documents and Things directed to jurisdictional issues. *See* Lee Decl. at ¶ 31 and Exh. 27

11
12  (attaching discovery requests).  On December 13, 2007, hearing nothing, Plaintiff counsel

13  reiterated the request and the need for a timely response. *See* Lee Decl. at ¶ 32 and Exh. 28.  On

14  December 14, 2007, Defendant counsel offered only a single deponent for a short deposition and

15  sought to severely restrict the scope of discovery. *See* Lee Decl. at ¶ 33 and Exh. 29.  Plaintiff

16
17  filed its First Amended Complaint on December 18, 2007.

18  As of this filing, Defendant has not agreed to withdraw or continue the hearing on  its

19  Motion to Dismiss and has not agreed to the scope of discovery requested by Plaintiff.    If and

20  when the parties stipulate to jurisdictional discovery and associated deadlines, Plaintiff will so

21  advise the Court.

22
23  **ARGUMENT**

24  **I.  STAR HAS STANDING TO SUE BY ITSELF BECAUSE THE INVENTORS GRANTED ALL SUBSTANTIAL RIGHTS AND AMS' SO-CALLED "FIELD OF USE" ENCOMPASSES THE FULL SCOPE OF THE PATENT'S RIGHTS.**

25
26
27  Defendant challenges Star's standing to sue by maintaining that Licensors Kapadia and

28  Viera retained all "non-Transportation Applications" of the '852 patent and therefore granted

- 10 -

1   fewer than all substantial patent rights to Star. AMS contends that the Licensors must be

2   joined as parties to the litigation. However, AMS ignores that the '852 has no "non-

3   Transportation Applications" and that the Licensors authorized Star to sue by itself when they

4

5   elected not to proceed themselves.

6       **A. The patent owner must be joined only if the exclusive licensee grants fewer than
        all substantial patent rights.**

7

8       "Unquestionably, a patentee who holds all the exclusionary rights and suffers

9   constitutional injury in fact from infringement is one entitled to sue for infringement in its own

10  name." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339-1340 (Fed. Cir. 2007), *citing*

11  *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345 (Fed. Cir.

12

13  2001). However, "[a]n exclusive licensee has standing to sue in its own name, without joining

14  the patent holder, where "all substantial rights" in the patent are transferred." *Int'l Gamco, Inc. v.*

15  *Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007). The patent owner must be joined,

16  either voluntarily or involuntarily, only if the exclusive licensee grants fewer than all substantial

17  patent rights. *Intellectual Prop. Dev.*, 248 F.3d at 1347 (Fed. Cir. 2001). An exclusive licensee

18
19  with the unlimited right to make, use, sell, and sublicense the patents-in-suit, while the licensor

20  retains no such rights, has "all substantial rights." *Applied Interact, LLC v. Vt. Teddy Bear Co.*,

21  04 Civ. 8713, 2005 U.S. Dist. LEXIS 15016 (S. D.N.Y. Sept. 6, 2005).

22      **B. Star, as the exclusive licensee of all substantial rights of the '852 Patent, has
        standing to sue for infringement by itself.**

23

24      Star holds all substantial rights in the '852 patent. The '852 patent provides no

25  substantial rights that were not granted in the license. AMS claims that a "field of use" has been

26  defined in the license. However, even assuming, *arguendo*, that it is a field of use license, that

27
28  field of use covers the entire '852 patent.

- 11 -

1   The scope of any patent is limited by its claims. 35 USC § 112.   Infringement exists

2   only when the accused product, system, or process contains all elements in those claims, whether

3   identical or equivalent. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40

4

5   (1997).

6   Here, a necessary element contained in all independent claims of the '852 patent,

7   including asserted claim 23, states a transportation vehicle.  AMS' alleged infringement must

8   therefore be shown to involve some connection with a transportation vehicle or a transportation

9

10  application.  This common element makes, AMS' so-called non-transportation "limitation" of the

11  licensee no limitation whatsoever with regard to the '852 patent.

12  Although the agreement may limit non-patent rights – *e.g.,* Trademarks and Know-How -

13  transferred as part of that same license, it grants all substantial rights to Star under the '852

14  patent.  Statements in the license regarding use of best efforts, inspections, and quality standards

15  are not limitations on the substantial patent rights given to Star.  An exclusive licensee still holds

16

17  all substantial patent rights even when reasonable conditions are put in place to protect the

18  Licensor's financial interests under the contract.  *See  InternetAd Sys., LLC v. Opodo Ltd.*, 481 F.

19  Supp. 2d 596, 610 (N. D. Tex. 2007).

20  Moreover, AMS's reliance on its cited case law is misplaced under the conditions of the

21  present case.  Those cases involve circumstances involving limitations on the grantees' rights

22

23  that simply do not exist here. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1336 (Fed. Cir.

24  2007) (Plaintiff did not have an ownership interest in the patent at suit where another party held

25  the exclusive right to license and collect royalties.);  *Intellectual Prop. Dev., Inc. v. TCI*

26  *Cablevision of Cal., Inc.*, 248 F.3d 1333, 1337 (Fed. Cir. 2001) (Licensee had restrictions on its

27  right to sue for infringement including (1) the need to notify and consult with the licensor before

28

- 12 -

the initiation of any litigation, (2) the need to obtain the licensor's consent to any settlement the

licensee may enter into, (3) the need to obtain the licensor's consent to join the licensee in suit if

the licensor was a necessary party, and (4) the licensor's option to withdraw such consent at any

time.); *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1330 (Fed. Cir. 2001)

(Plaintiff owned at best only 50% of patent); *Ethicon, Inc. v. United States Surgical Corp. 135*

*F.3d 1456, 1472* (Fed. Cir. 1998); *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345

(Fed. Cir. 1997) (Plaintiff was only a co-owner with another party); *Rite-Hite Corp. v. Kelley*

*Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995) (License was for an exclusive sales territory); *Int'l*

*Gamco, Inc.*, 504 F.3d , 1273, 1279 (Fed. Cir. 2007) (License included both geographic and field

of use restrictions.); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870,

875 (Fed. Cir. 1991) (Licensor retained (1) veto right for sublicensing, (2) rights to patents in

other countries, (3) a reversionary right, and (4) a right to infringement damages); *Aspex*

*Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006) (five-year term

limit); *Propat Int'l Corp. v. RPOst US, Inc.*, 473 F.3d 1187, 1191-1192 (Fed. Cir. 2007)

(Licensor retained an (1) express indication it was the owner, (2) responsibility to maintain

patents, (3) equity interest in licensing and litigation, (4) ability to veto licensing and litigation

decisions, (5) ability to bar sublicensing, and (6) right to terminate if benchmarks are not met.);

*Mentor H/S, Inc. v. Med Device Alliance*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) (Licensor

retained the (1) right to manufacture products under the patent, (2) responsibility to maintain

patents, and (3) obligation to sue for infringement.). The Licensors of the '852 patent created

none of these situations. Unlike the licensees in the cases cited by Defendant, Star is now the

holder of all substantial rights.

- 13 -

Finally, AMS' contention that the existence of the Canadian case precludes Star's standing to sue by invalidating the license requires a significant leap of logic. That litigation addresses an ongoing employment dispute involving allegations that are unrelated this proceeding and are being contested by Star. Even if relevant, the allegations cited by AMS remain unproven and unaddressed by that court. No finding of license invalidity has been made there. Moreover, a variety of circumstances can arise in any litigation that would prevent that court from ever considering the allegations AMS relies upon for its invalidity argument.[2]

### C.   Neither inventor is indispensable because both authorized Star to file this suit pursuant to the terms of the license and declined to participate as individual party-plaintiffs.

Pursuant to the license agreement Messrs. Kapadia and Viera authorized Star to prosecute the present infringement action without their participation. As discussed above, paragraphs 10.1 and 10.2 of the license agreement provide Star with the right to bring an action for infringement if the Licensors elect not to enforce the patent themselves. *See* Lee Decl., Exh. 2. Star Navigation advised Mr. Viera of the infringement by AMS on March 8, 2007. *See* Lee Decl., Exh. 3. On April 5, 2007, Mr. Viera waived his right to sue and authorized Star to sue AMS on its own behalf. *See* Lee Decl., Exh. 4.

Neither party is indispensable because both have elected not to sue. There is therefore no danger to AMS of multiple patent infringement suits as its motion suggests. Neither inventor will bring suit without Star. To the extent that the Court believes one or both inventors should be parties, Star requests leave to amend its Complaint accordingly.

---

[2]   AMS presents no argument or request that this Court abstain or stay its proceedings in favor of that foreign tribunal's adjudication.

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Motion to Dismiss

**II. PERSONAL JURISDICTION EXISTS DUE TO AMS' ACTIVE PRODUCT DISTRIBUTION TO REGISTERED CALIFORNIA BUSINESSES OPERATING DAILY AT NUMEROUS STATE AIRPORTS AND ONGOING COMMUNICATIONS NECESSARY FOR USE OF ITS ACCUSED SYSTEM WITHIN THE STATE.**

A motion to dismiss for lack of personal jurisdiction is governed by Fed. R. Civ. P. 12(b)(2). District courts are bound by the law of the Federal Circuit on matters of personal jurisdiction involving patent claims. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994); *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). Where no jurisdictional discovery has occurred, a plaintiff need "'only to make a prima facie showing' of jurisdiction to defeat the motion to dismiss." *Trinitech Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005) (citations omitted). The district court "must construe all pleadings and affidavits in the light most favorable to the plaintiff." *Id.* at 1282-83 (citations omitted).

The parties agree that personal jurisdiction over AMS may be established under Constitutional standards.[3] The United States Constitution requires that a foreign defendant have such contacts with the forum state that maintaining the action would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Supreme Court set forth Constitutional standards for both general and specific jurisdiction in *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-15 (1984).

---

[3] California's long-arm statute extends jurisdiction of the state's courts to the limits of the state and federal constitutions. California Code of Civil Procedure § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

- 15 -

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Motion to Dismiss

Principles of general jurisdiction dictate that a party may be subject to suit on all claims in a

forum, wherever they arise, when that defendant has "continuous and systematic" contacts with

the forum state whether or not those contacts relate to the cause of action. *Helicopteros*, 466

U.S. at 414-15.  Specific jurisdiction is assessed by the "relationship among the defendants, the

forum and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Star has presented prima facie public evidence above supporting the exercise of specific

personal jurisdiction over AMS, including (1) that AMS' Infringing Systems enter the forum

regularly and at numerous entry points and that (2) AMS obtains and directs necessary

communications from and to resident California customers located at the State's many airports.

At a minimum, AMS actively distributes at least its AFIRS product to registered

California businesses Aloha and China Eastern Airlines that operate regular flights to and from

numerous state airports, including within this judicial district.   As described above, AMS

necessarily obtains and directs ongoing communications necessary for use of its system from and

into the airline flight and/or maintenance crews at airports when and where those customers land

and take-off.

AMS also appears to maintain a product installation and distribution relationship with

Meggitt, another California registered and resident customer, who maintains domestic operations

and/or headquarters in California.  Moreover, AMS admits on its website that it sells, installs,

services and supports its products for its transportation customers, including via the company's

web-based service accessible by customer personnel, "24/7" and "anywhere in the world."   At

least two such customers, Aloha and China Eastern Airlines, maintain operations and staff in

numerous California airports for their AFIRS-equipped airplanes.

- 16 -

### III. **PLAINTIFF SHOULD BE GRANTED EXPEDITED JURISDICTIONAL DISCOVERY TO SUPPLEMENT THE RECORD ESTABLISHING DEFENDANT AMS' CONTACTS WITH CALIFORNIA.**

Federal Circuit caselaw further governs jurisdictional and other discovery where substantive patent law is involved. *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) ("*Chi Mei*") (vacating judgment of dismissal and remanding for jurisdictional discovery and subsequent reconsideration based on that discovery). The Federal Circuit directs district courts entertaining patent claims to allow jurisdictional discovery as appropriate "where the existing record is 'inadequate' to support personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations through discovery." *Trinitech*, 395 F.3d at 1283 (citations omitted). A plaintiff makes a sufficient threshold showing to merit jurisdictional discovery when "factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity.'"[4] *Chi Mei*, 395 F.3d at 1323 (citation omitted).

---

[4] Requests for jurisdictional discovery may be made through an opposition to a Rule 12(b)(2) motion to dismiss and the issues placed in dispute by that motion. In *Chi Mei*, the Federal Circuit determined that the district court abused its discretion when it denied plaintiff's request for jurisdictional discovery as untimely when initially presented in an opposition to a Fed. R. Civ. P. 12(b)(2) motion, reiterated during oral argument and reasserted and briefed upon a motion for reconsideration. *Id.* at 1322-23, 1324 (discussing Third Circuit procedural law). There, the appellate court found that discovery was warranted to evaluate the extent that defendant, a LCD module manufacturer, had an "intent and purpose" to serve the Delaware market and placed its product into the forum's stream of commerce, including through marketing arrangements and its website use as a "channel [] for providing regular advice to its customers in the forum state." *Id.* at 1323-24 (allowing discovery so plaintiff could address Justice O'Connor's alternate version of a stream of commerce theory found in *Asahi Metals Indus. Co. v Superior Court*, 480 U.S. 102 (1987)).

- 17 -

**A. Jurisdictional discovery will allow plaintiff to properly address specific factual claims and evidence at issue here.**

In its Motion to Dismiss, AMS challenges this Court's exercise of personal jurisdiction based on numerous factual arguments, allegations and purported evidence presented for the first time. Although AMS contends that it has no contacts to or with California, through customers or otherwise, significant gaps and missing evidence characterize the record supporting personal jurisdiction over AMS. At a minimum AMS' evidence raises questions that must be addressed by jurisdictional discovery.

First, AMS appears to focus its general jurisdiction "no-contacts" argument on its sales of its Infringing System, which is relevant to specific jurisdiction, but does not provide details of its activities regarding its other products. *See e.g.,* AMS Supporting Memorandum ("AMS Mem.") at 16 (denying general jurisdiction by stating "AMS . . . has not sold or offered for *sale its AFIRS/UPTIME monitoring system* in California. Jacobs Decl. ¶¶ 14-17, 19. Indeed, most of AMS' sales and most of the function of *its monitoring system* occurs outside of the U.S. Jacobs Decl. ¶¶ 6, 7, 18, 20, 21. By ignoring other products and supporting activities, AMS creates a gap in the evidentiary record. Discovery is needed to address non-AFIRS business activities related to this forum, relevant to general jurisdiction.

Second, the Jacobs declaration and AMS motion focus primarily on the present operations of the company. Discovery on the historical business activities of AMS and any predecessors and its controlled subsidiaries is highly relevant to this Court's ultimate consideration of personal jurisdiction.

Third, AMS and the Jacobs declaration provide no mention of AMS' likely forum-related activities involving California-registered customers Meggitt and China Eastern Airlines, or any

- 18 -

other customers beyond Aloha (also California-registered).  Significant evidentiary gaps exist

regarding AMS' solicitation, services, installation and support of all of its products as they likely

relate to these and other California resident customers that should be addressed through

discovery.

Fourth, AMS raises further questions requiring discovery by relying on *Red Wing Shoe*

*Company v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998).  AMS argues that

contacts with California cannot exist despite AMS' customers' acknowledged business activities

in this forum.  AMS Mem. at 17.  It claims - without context - that *Red Wing* broadly dictates that

"doing business with a company that does business in Minnesota is not the same as doing

business in Minnesota" AMS Mem. at 17 (quoting *Red Wing*, 148 F.3d 1361).  That court found

that a defendant that sold no products and merely licensed others to manufacture and sell shoes

lacked contacts with Minnesota despite its licensees contacts there because "'the ***unilateral***

***activity*** of another party or third person' are not attributable to a defendant."  *Red Wing*, 148

F.3d 1361 (citation omitted, emphasis added).  Yet, the *Red Wing* court's rationale forces the

question in the present case:  What influence does AMS have regarding the purchase, use,

installation, service and support of its AFIRS and other products with respect to its California

resident customers and others operating within the State, including Aloha, China Eastern Airlines

and Meggitt?

Finally, the *Red Wing* court further stressed its consideration of contacts by a party that

maintained "continuing obligations" through a contractual relationship (there, an exclusive

license agreement) with a forum resident in the forum state.  *Red Wing*, 148 F.3d 1362 ("What

was critical was . . . contacts with that resident in the forum state.").  Accordingly, *Red Wing*

raises the issue of the extent of the contacts between AMS and its customers within California.

- 19 -

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Motion to Dismiss

For example, to what extent does AMS install, support service needs, or communicate with California-registered businesses Aloha and China Eastern (and other customers) through operational centers at California's airports?  The AMS papers and Jacobs declaration provide no details on such highly relevant questions.  Accordingly, jurisdictional discovery is necessary to resolve the issue for the Court.

### B.  Star is likely to discover additional evidence supporting personal jurisdiction.

Star presented above evidence above tending to show that AMS may actively solicit customers from a large, untapped aviation industry client base. Potential customers include California businesses and/or involve provision of products or services into the State.  Based on this evidence, Star is likely to discover additional evidence supporting either specific or general jurisdiction.

The public information establishing that AMS offers and provides products and services in California is not addressed by AMS in its motion papers or the Jacobs declaration.  Moreover, no specific information regarding AMS' non-public business activities and non-AFIRS related (activities that may support general jurisdiction) is available other than through discovery.  To the extent further evidence supporting jurisdiction over AMS may be needed, that should be obtained through jurisdictional discovery.

### IV.  PENDING DEADLINES SHOULD BE ENLARGED AND CONTINUED TO ALLOW COMPLETION OF JURISDICTIONAL DISCOVERY AND SUBSEQUENT SUBMISSION OF BRIEFS.

In light of the jurisdictional discovery sought, Plaintiff respectfully requests that the Court adopt an appropriate schedule to allow the completion of expedited jurisdictional discovery and a full briefing of the factual and legal issues presented by Defendant's Motion to Dismiss. Accordingly, Plaintiff requests that the Court adopt the following schedule:

- 20 -

A. ***Jurisdictional Discovery Period***: Star requests a sixty (60) day period for jurisdictional discovery.

B. ***Expedited Discovery Schedule***: Star requests that the Court order the following:

    (1) that AMS respond to Star's First Set of Requests for Production of Documents and Things within fourteen (14) days of its decision on the present motion;

    (2) that all future responses to written discovery requests be reduced from thirty (30) days to fourteen (14) days;

    (3) that third-party responses to any Subpoena Duces Tecum occur within seven (7) days; and

    (4) that all depositions take place on seven (7) days notice.

C. ***Briefing on Defendant's Motion to Dismiss***: Star requests that the Court provide it with an enlargement of time to respond to AMS' Motion to Dismiss up to and including twenty-one (21) days after the close of jurisdictional discovery and provide AMS up to and including fourteen (14) days to file a reply in support of its Motion to Dismiss.

D. ***Hearing Date on Defendant's Motion to Dismiss***: Star requests that a hearing date be scheduled shortly after the close of jurisdictional discovery and complete submission of all briefing on the Motion to Dismiss.

## **CONCLUSION**

For the foregoing reasons, Defendant AMS' Motion to Dismiss should be denied in is entirety. If the Court determines that the record is incomplete, then Plaintiff should be granted leave to supplement its allegations through jurisdictional discovery and deadlines should be imposed as proposed above.

- 21 -

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Motion to Dismiss

1    Dated:   December 21, 2007                    Respectfully submitted,

2

3                                                  Daniel P. Albers
                                                   Jeffrey A. Ruppel

4                                                  Christine H. McCarthy
                                                   BARNES & THORNBURG LLP

5
                                                   Jeffrey K. Lee, State Bar No. 212465

6                                                  Kimberly A. Donovan, State Bar No. 160729
                                                   GCA LAW PARTNERS LLP

7
                                                   By:     /s/ Jeffrey K. Lee                    .

8                                                          Attorneys for Plaintiff STAR NAVIGATION
                                                           SYSTEMS GROUP LTD.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Motion to Dismiss

1

2

**<u>CERTIFICATE OF SERVICE</u>**

3      The foregoing document and supporting papers have been filed with the Court this day

4   though the Court's Electronic Case Filing system, which will provide electronic notice and

5   service upon the parties listed below:

6
7
8
9
10
11

Kevin C. McCann
Paul, Hastings, Janofsky & Walker LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
E-mail: kevinmccann@paulhastings.com

12
13
14
15
16
17

Robert M. Masters
Timothy P. Cremen
Bhaskar Kakarla
Paul Hastings
875 15th Street, N.W.
Washington, DC 20005
Tel: (202) 551-1700
Fax: (202) 551-1705
E-mail: robertmasters@paulhastings.com, timothycremen@paulhastings.com,
bhaskarkakarla@paulhastings.com

18

19

20   Dated: December 21, 2007

21                          By:    /s/ Jeffrey K. Lee

22

23

24

25

26

27   437686v1

28

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in
Opp'n to Motion to Dismiss