Kevin C. McCann (SB# 120874)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
Email: kevinmccann@paulhastings.com

Robert M. Masters (admitted *pro hac vice*)
Timothy P. Cremen (admitted *pro hac vice*)
Bhaskar Kakarla (admitted *pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
Email: robertmasters@paulhastings.com
Email: timothycremen@paulhastings.com
Email: bhaskarkakarla@paulhastings.com

Attorneys for Defendant
AEROMECHANICAL SERVICES LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STAR NAVIGATION SYSTEMS GROUP LTD., <br><br> Plaintiff, <br><br> v. <br><br> AEROMECHANICAL SERVICES LTD., <br><br> Defendant. | CASE NO. C 07-4820 (MMC) <br><br> **AEROMECHANICAL SERVICES LTD.'S REPLY TO STAR NAVIGATION SYSTEMS GROUP LTD.'S OPPOSITION TO AEROMECHANICAL SERVICES LTD.'S MOTION TO DISMISS** <br><br> Date: January 25, 2008 <br> Time: 9:00 am <br> Place: Courtroom 7, 19th Floor <br> Honorable Maxine M. Chesney |

Case No. C 07-4820 (MMC)

AMS'S REPLY TO STAR'S OPPOSITION TO
AMS'S MOTION TO DISMISS

## TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................... 1

II. STAR HAS FAILED TO SHOW ANY REASON THAT ITS COMPLAINT SHOULD NOT BE DISMISSED UNDER FED. R. CIV. P. 12(B)(7) AND 12(B)(1) ...................... 1

    A. Star Has Less Than All Substantial Rights Because it has a "Field of Use" License ................................................................................................................... 2

    B. Star Has Less Than All Substantial Rights Because The Patent Owners Maintain Significant Interests .............................................................................. 3

    C. The "Release" By Mr. Vieira Is Suspect and Irrelevant ....................................... 5

    D. Canadian Action Dictates That The Complaint Be Dismissed ............................. 6

    E. Dismissal Is The Correct Action ........................................................................... 7

III. STAR HAS FAILED TO SHOW ANY REASON THAT ITS COMPLAINT SHOULD NOT BE DISMISSED UNDER FED. R. CIV. P. 12(B)(2)) ........................... 7

    A. AMS Has, At Most, Attenuated Contacts With California .................................. 8

    B. Aloha's Acts Cannot Be Attributed to AMS ........................................................ 9

    C. AMS Has Not Done Business With China Eastern Airlines in California .......... 10

    D. AMS Has Not Done Business With Meggitt In California ................................ 11

    E. AMS's Future Business Is Irrelevant To Personal Jurisdiction .......................... 11

    F. General Jurisdiction Matters Are Irrelevant Here ............................................... 12

    G. AMS Has No Past Acts in California .................................................................. 12

    H. AMS's "Subsidiaries" Have No California Contacts Either ............................... 12

    I. The Declaration of Mr. Jacobs is Credible and Accurate ................................... 12

    J. AMS Does Not Have Minimum Contacts With California ................................ 13

    K. It Is Unreasonable To Drag AMS Into California .............................................. 13

    L. Dimissal Is Appropriate, And Star Should Not Be Granted Discovery .............. 14

IV. COSTS ............................................................................................................................. 14

V. CONCLUSION ................................................................................................................. 15

# **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Abbott Labs v. Diamedix Corp.*,
   47 F.3d 1128 (Fed. Cir. 1995)................................................................................. 5, 7

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987) .................................................................................................. 10

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
   434 F.3d 1336 (Fed. Cir. 2006) ................................................................................. 5

*AT&T v. Compagnie Bruxelles Lambert*,
   94 F.3d 586 (9th Cir. 1996) ................................................................................. 8, 13

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*,
   1 F.3d 848 (9th Cir. 1993) ........................................................................................ 13

*Bancroft & Masters v. Augusta National*,
   223 F.3d 1082 (9th Cir. 2000) .................................................................................. 12

*BenQ Am. Corp. v. Forward Elecs. Co.*,
   2005 U.S. Dist. LEXIS 38648 (N.D. Cal. 2005) ..................................................... 14

*Boschetto v. Hansing*,
   2006 U.S. Dist. LEXIS 50807 (N.D. Cal. 2006) ..................................................... 14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) .................................................................................................. 13

*Crown Die & Tool Co. v. Nye Tool & Machine Works*,
   261 U.S. 24 (1923) ...................................................................................................... 6

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
   438 F.3d 1374 (Fed. Cir. 2006) ................................................................................. 2

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ......................................................................... 7, 12, 13

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
   466 U.S. 408 (1984) .................................................................................................. 12

*Huang v. Ferrero U.S.A., Inc.*,
   1999 U.S. Dist. LEXIS 5712 (N.D. Cal., 1999)....................................................... 14

*International Gamco, Inc. v. Multimedia Games, Inc.*,
   2007 U.S. App. LEXIS 24099 (Fed. Cir. 2007)................................................ 3, 4, 6

*InternetAd Sys. LLC v. Opodo Ltd.*,
   481 F.Supp. 2d 596, 610 (N.D. Tex. 2007).............................................................. 4

*Keeton v. Hustler Magazine, Inc.*,
   465 U.S. 770 (1984) .................................................................................................... 9

# TABLE OF AUTHORITIES
(continued)

**Page**

*Laub v. United States DOI,*
    342 F.3d 1080 (9th Cir. 2003) .................................................................................... 14

*Levy v. Norwich Union Ins. Soc'y,*
    1998 U.S. Dist. LEXIS 13524 (N.D. Cal., 1998) ........................................................ 14

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ...................................................................................................... 6

*Mars, Inc. v. H.J. Heinz Co.,*
    377 F.3d 1369 (Fed. Cir. 2004) .................................................................................... 9

*McNeilab, Inc. v. Scandipharm, Inc.,*
    1996 U.S. App. LEXIS 19073 (Fed. Cir. 1996) .......................................................... 4

*McNutt v. General Motors Acceptance Corp.,*
    298 U.S. 178 (1936) ...................................................................................................... 8

*Mentor H/S, Inc. v. Medical Device Alliance,*
    240 F.3d 1016 (Fed. Cir. 2001) .................................................................................... 5

*Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.),*
    78 F.3d 431 (9th Cir. 1996) ........................................................................................ 15

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006) .................................................................................... 14

*Pennington Seed. Inc. v. Produce Exchange No. 299,*
    457 F.3d 1334 (Fed. Cir. 2006) ............................................................................. 7, 12

*Perkins v. Benguet Consolidated Mining Co.,*
    342 U.S. 437 (1952) .................................................................................................... 12

*Propat International Corp. v. RPost US, Inc.,*
    473 F.3d 1187 (Fed. Cir. 2007) ............................................................................ 2, 4, 5

*Protrade Sports, Inc. v. Nextrade Holdings, Inc.,*
    2006 U.S. Dist. LEXIS 6631 (N.D. Cal. 2006) .......................................................... 14

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998) .................................................................................. 10

*Rite-Hite Corp v. Kelley Co.,*
    56 F.3d 1538 (Fed. Cir. 1995) ...................................................................................... 7

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) .................................................................................. 8, 13

*Shermoen v. U.S.,*
    982 F.2d 1312 (9th Cir. 1992) ...................................................................................... 7

Case No. C 07-4820 (MMC)   -iii-   AMS'S REPLY TO STAR'S OPPOSITION TO AMS'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Textile Productions, Inc. v. Mead Corp.*,
    134 F.3d 1481 (Fed. Cir. 1998) .......................................................................................... 5

*Travelers Health Association v. Virginia*,
    339 U.S. 643 (1950) .......................................................................................................... 9

*Wages v. IRS*,
    915 F.2d 1230 (9th Cir. 1990) ......................................................................................... 15

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .................................................................................................... 9, 10

**STATUTES**

Fed. R. Civ. P. 12(b)(1) .............................................................................................................. 1, 15

Fed. R. Civ. P. 12(b)(2) ........................................................................................................... 1, 7, 15

Fed. R. Civ. P. 12(b)(7) ........................................................................................................... 1, 7, 15

Fed. R. Civ. P. 19 ............................................................................................................................ 7

## I. INTRODUCTION

Star's Opposition to AMS's Motion to Dismiss (D.I. 43) fails to establish any reason why the First Amended Complaint (D.I. 28) should not be dismissed. Star has utterly failed to come forward with any credible evidence that it has standing and the necessary rights to commence this action in its own name, and to demonstrate that this Court has personal jurisdiction over AMS. AMS therefore respectfully requests that this Court grant the Motion to Dismiss.

Star has not shown that it possesses the necessary rights in the '852 Patent to bring this suit in its name alone. Star's argument to the contrary - that it has "all substantial rights" to the '852 Patent because its April 22, 2002 "field of use" License ("License") has the same scope as the '852 Patent's claims - is logically flawed and factually incorrect. No proper interpretation of the License's scope would lead to the conclusion that it is the same as that of the '852 Patent's claims. Without joining the owners of the '852 Patent, Star places AMS at risk of multiple suits and multiple liabilities.

Star also fails to show that this Court has personal jurisdiction over AMS. Star provides almost 50 exhibits to its Opposition, yet <u>not even one</u> evidences a particular act performed by AMS in California. Instead, Star resorts to: (1) conjecture as to what AMS <u>may</u> do in California; and (2) allegations about what AMS's <u>customers</u> do in California. Neither is sufficient to confer personal jurisdiction over AMS in California.[1] Star has not met its burden of showing that personal jurisdiction exists, and this is yet a second, independent reason to dismiss the First Amended Complaint.

## II. STAR HAS FAILED TO SHOW ANY REASON THAT ITS COMPLAINT SHOULD NOT BE DISMISSED UNDER FED. R. CIV. P. 12(b)(7) AND 12(b)(1)

There has been no assignment of the '852 Patent by the two named inventors (Messrs. Kapadia and Vieira), and they remain the owners of the '852 Patent. In fact, the License specifically forbids Star from alleging the contrary (D.I. 31, Ex. C, §§ 5.6, 5.8) – showing that

---

[1] Star also argues that the facts sworn to by AMS's President, Darryl Jacobs – are "not credible" and "inaccurate." This serious accusation is without basis, as described herein.

Case No. C 07-4820 (MMC) -1- AMS'S REPLY TO STAR'S OPPOSITION TO AMS'S MOTION TO DISMISS

Star has not been granted "all substantial rights" in the '852 Patent. *Propat Int'l Corp. v. RPost US, Inc.*, 473 F.3d 1187, 1191 (Fed. Cir. 2007). Despite this provision, Star argues that it <u>has</u> been transferred "all substantial rights." Opp. 3. Star's argument fails for many reasons.

**A.    <u>Star Has Less Than All Substantial Rights Because it has a "Field of Use" License</u>**

Star first argues that it has been granted "all substantial rights" in the '852 Patent because the scope of the License is the same as that of the '852 Patent. Opp. 12. However, Star's argument makes a logical leap by assuming that the parties to the License intended any correlation between the License's "Transportation Applications" (D.I. 31, Ex. C, § 1.1(m)) and the '852 Patent's "transportation vehicle" (D.I. 31, Ex. A, col. 34:2). There is no evidence that this was the parties' intention, and Star's attempt to rewrite the License to include such an unwritten provision violates basic contract law. If the License was intended by the parties to convey a scope coextensive with the claims of the '852 Patent, <u>it would have said so</u>, and there would have been no reason for the License to limit the grant to "Transportation Applications".

Further, even if there was some correlation between the License's "Transportation Applications" and the '852 Patent's "transportation vehicle," such a correlation does not support Star's argument. Independent claim 23 of the '852 Patent recites a "transportation vehicle," and claim 69 (which depends directly from claim 23) specifies that the "transportation vehicle" is one of: "an aircraft; a bus; a truck; a car; a boat; a ship; a submarine; a hovercraft; a satellite; a rocket; a missile; a blimp; a balloon; a utility vehicle; a train; and a tank." D.I. 31, Ex. A, cols. 34:1-25; 37:29-38:10. Accordingly, claim 23's "transportation vehicle" includes at least these vehicles.[2]

In contrast, the License's "Transportation Applications" are limited to "automobiles, trucks, trains, aircraft and ships of any kind." D.I. 31, Ex. C, § 1.1(m). Claim 69 is thus broader in that it also includes buses, boats, submarines, hovercraft, satellites, rockets, missiles, blimps, balloons, utility vehicles, and tanks, which are <u>not listed in the License</u>. Thus, even if Star is

---

[2] The concept of "claim differentiation" requires that independent claims not be construed as inclusive of limitations added by a dependent claim. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006). Thus, the "transportation vehicle" of claim 23 may be of an even broader scope than the vehicles recited in claim 69.

correct and there is some correlation between the "Transportation Applications" of the License and claim 69's "transportation vehicles," the License would only be to a subset of the "vehicles" covered by the '852 Patent – not to its entire scope.

In the end, Star's License can only be construed as a "field of use" license, limited in scope and one that does not transfer "all substantial rights" in the '852 Patent. Star therefore does not have legal standing to bring an infringement action in its name only.[3] See *Int'l Gamco, Inc.*, 2007 U.S. App. LEXIS 24099, *18 (Fed. Cir. 2007) (a "field of use license" did not transfer all substantial rights in the patent, and left the defendant open to suits by the owner).

**B.     Star Has Less Than All Substantial Rights Because
         The Patent Owners Maintain Significant Interests**

Star's argument that it has been transferred "all substantial rights" in the '852 Patent also ignores the many ownership rights expressly retained by Kapadia and Vieira. In addition to the two retained rights discussed above ("ownership of the Licensed Property," and the right to all non-"Transportation Application" uses), Kapadia and Vieira retained:

(1) all reversionary rights (D.I. 31, Ex. C, § 9);

(2) a right to bring an infringement action with or without Star (D.I. 31, Ex. C, § 10); and

(3) the right to terminate the agreement on their own volition (D.I. 31, Ex. C, § 9.2(a) if Star fails to: use its best efforts to "use, produce, install and implement the Licensed Property" (D.I. 31, Ex. C, § 5.1(a)); permit inspections by Kapadia/Vieira (D.I. 31, Ex. C, § 5.1(b)); warranty the quality and fitness of the Licensed property (D.I. 31, Ex. C, § 5.1(c)); adhere to quality standards set forth by Kapadia/Vieira (D.I. 31, Ex. C, § 5.1(d)); and "use its best efforts to market and promote the Licensed Property" and set its prices and terms of credit at commercially reasonable and competitive levels (D.I. 31, Ex. C, § 5.3).

Taken together, these reserved rights show that "all substantial rights" in the '852 Patent have not been transferred to Star. Star's two arguments to the contrary are unavailing.

---

[3] Star alleges that AMS is confusing the scope of patent rights with those of non-patent rights. Opp., p. 13:1-4. This argument is nonsensical. D.I. 31, Ex. C, § 1.1(m) specifies the scope of the License, which is unquestionably narrower from that of the claims of the '852 Patent.

Star first alleges that the rights reserved by Kapadia and Vieira are "common security and commercial provisions that do not undermine Star's status as the exclusive licensee holding all substantial rights." Opp. 13. Yet, these provisions are limitations on the rights granted to Star, and represent rights retained by the owners. Star's reliance on the unpublished Federal Circuit case (*McNeilab, Inc. v. Scandipharm, Inc.*, 1996 U.S. App. LEXIS 19073, *9 (Fed. Cir. 1996)) and a case from the Nothern District of Texas (*InternetAd Sys. LLC v. Opodo Ltd.*, 481 F.Supp. 2d 596, 610 (N.D. Tex. 2007)) are inapposite.

These cases hold that a "[r]easonable provision for unintended possibilities or force majeure does not defeat the substantiality of the transfer of the exclusive right to make, use, and sell the patented subject matter." *McNeilab*, at *9. But, here, much more than *McNeilab's* "reasonable provisions" are retained by Kapadia and Star, because Star has to perform to Kapadia and Vieira's subjective approval as to such things as quality, fitness, marketing efforts, and pricing. D.I. 31, Ex. C, §§ 5.1(a)-(d), 5.3. These are not simply provisions for bankruptcy or natural disaster, but are "benchmarks," and are the kind of restrictions found by the Federal Circuit to be an "indication that [the licensor] retains a significant ownership interest in the patent. *Propat*, 473 F.3d at 1191-1192.[4]

Star also argues that the exemplary cases cited by AMS are inapplicable because they involve "limitations on the grantees' rights that simply do not exist here." Opp. 14. But, looking to the factors previous courts considered pertinent for determining whether all substantial rights have been granted is what is important. Here, many factors found in these cases show that Star's License is not to "all substantial rights" of the '852 Patent. *See* AMS's Motion, D.I. 29, pp. 10-13. Star's license is a "field of use" license. *Int'l Gamco,* 2007 U.S. App. LEXIS 24099 at *18. The License provides an express indication that licensor is, and will continue to be, the owner of the patent. *Propat*, 473 F.3d at 1191. Kapadia and Vieira have: (1) an interest in the proceeds of litigation *(Propat,* 473 F.3d at 1191;); (2) the right to terminate the license if the licensee fails to

---

[4] Further, because Star must comply with the wishes of Kapadia and Vieira as to many aspects of its business, it is unable to enjoy the unfettered use of the '852 Patent.

1  meet certain specified benchmarks in its efforts to exploit the patent (*Propat*, 473 F.3d at 1191-
2  1192)[5]; and (3) the ability to sue parties for infringement (*Mentor H/S, Inc. v. Med. Device
3  Alliance*, 240 F.3d 1016, 1018 (Fed. Cir. 2001) (concluding that, "in light of [licensor's]
4  substantial retained rights, particularly its initial right and obligation to sue for infringement, …
5  [the licensee] did not receive all substantial rights in the patent"); *Abbott Labs v. Diamedix Corp.*,
6  47 F.3d 1128, 1132 (Fed. Cir. 1995)).[6]
7       In view of the above, Star cannot be considered to have "all substantial rights" to the '852
8  Patent, and has "standing to sue third parties only as a co-plaintiff with the patentee." *Textile
9  Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998). Kapadia and Vieira are
10 therefore necessary and indispensable parties that must be joined - or the case must be dismissed.
11 *Textile Productions,* 134 F.3d at 1484.
12 **C.    The "Release" By Mr. Vieira Is Suspect and Irrelevant**
13      Star attempts to paint Kapadia and Vieira as dispensable parties because "both have
14 exercised their respective rights and elected not to sue AMS," and will not "bring suit without
15 Star." Opp. 16. Star offers no credible proof of this, but even if that were the case, there is no
16 assurance that AMS would not face another suit by the '852 patent owners at any time.
17      First, no such election is relevant to Star's standing in the United States with respect to the
18 '852 patent. Nothing in the License (or otherwise) prevents Kapadia and/or Vieira from suing
19 AMS now or later on the '852 patent. <u>Even if</u> they refused to be part of the present action, there
20 is nothing that prevents them from later bringing suit.[7] The owners may later decide to bring suit
21 or may not like the outcome obtained by Star and seek another shot at AMS. The License only
22 indicates that the owners have no interest in damages obtained by Star if they do not participate in
23
---
24 [5] Star alleges that Propat's "proceeds" and "benchmark" factors are not present in its License. Opp. 14. This is wrong – these factors are present in its License, for the reasons discussed above.
25 [6] *See also Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006) (indicating that "a key factor" when determining transferred rights is "where the right to sue for
26 infringement lies"). Here, the right is with Kapadia and Vieira.
   [7] Star alleges that the License "provides no right allowing the Licensors to commence a
27 subsequent suit arising from the same operative facts." Opp. 16:19-22. This is irrelevant. Nothing in the License <u>prevents</u> such a subsequent suit either.
28

Case No. C 07-4820 (MMC)                              -5-            AMS'S REPLY TO STAR'S OPPOSITION TO
                                                                     AMS'S MOTION TO DISMISS

1  Star's action.  Thus, AMS faces the risk of multiple suits and multiple liabilities and, absent

2  joinder of the two inventors, the Court should dismiss this case.  *Crown Die & Tool Co. v. Nye

3  Tool & Mach. Works*, 261 U.S. 24, 38 (1923); *Int'l Gamco,* 2007 U.S. App. LEXIS 24099 at *11-

4  12 (Fed. Cir., 2007).

5  Also, the "evidence" cited by Star to show that the owners have "elected not to sue" is an

6  April 5, 2007 letter from Frances Wood (apparently a Canadian attorney) stating "[m]y client

7  does not object to [Star's] proceeding against AMS on [its] own behalf."  But, this letter is no

8  proof at all that Mr. Vieira has "elected not to sue."  There is no indication in the letter that Mr.

9  Vieira has done anything, as <u>the letter never mentions him by name</u>.  The letter is also unrelated

10  to the instant action - it is related to the Canadian dispute between Mr. Vieira and Star (its RE:

11  line reads "Vieira v. Star Navigation").  Further, <u>the letter is not in response to Star's March 8,

12  2007 letter</u> as Star alleges – but purports to be responsive to "yours of April 3, 2007."

13  Even if these glaring deficiencies are ignored, the letter cannot constitute a release for Star

14  to sue under section 10.2 of its License.  Star may only proceed under section 10.2 if the owners

15  "choose not to commence proceedings against the Infringer."  But, the April 5, 2007 letter does

16  not indicate that Mr. Vieira has "chosen not to commence proceedings" against AMS.[8]  Thus, not

17  only is the letter irrelevant for a standing determination, it is also inoperative for Star to proceed

18  against AMS under the terms of its License.

19  **D.     Canadian Action Dictates That The Complaint Be Dismissed**

20  Star also argues that AMS's "contention that the Canadian case precludes Star's standing

21  to sue by invalidating the License … would require this Court to make legal and factual

22  conclusions to dismiss this case."  Opp. 15.  Star misses the point.  Star has the burden of

23  showing that it held enforceable title to the patent <u>at the inception of this lawsuit</u>.  *Lujan v.

24  Defenders of Wildlife*, 504 U.S. 555, 570 n. 5 (1992).  Star has not satisfied this burden because it

25  has failed to explain how ownership of the '852 Patent has not reverted to Kapadia and Vieira in

26  view of the current Canadian litigation.  At best, it is unclear who retains what rights to the '852

---

[8] Star has also failed to provide any such similar indication by the other owner - Mr. Kapadia.

Case No. C 07-4820 (MMC)     -6-     AMS'S REPLY TO STAR'S OPPOSITION TO AMS'S MOTION TO DISMISS

Patent, and it is a waste of judicial resources to litigate infringement issues here until the parties' rights are determined. For this reason alone, this case should be dismissed.[9]

### E. Dismissal Is The Correct Action

Star argues that AMS's "request for dismissal is unwarranted," because Star is entitled to enforce the '852 Patent "despite an unwilling or unavailable patent owner," and that it may make Kapadia and Vieira a party by process, citing *Abbott Labs v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995). Opp. 16, fn. 6. Thus, Star asks for leave to amend its complaint should the Court find that the patent owners are necessary parties. Opp. 16. However, there is no evidence that Star will be able to add Mr. Vieria – who is hostile and outside of the U.S. Thus, the case should be dismissed.[10, 11]

### III. STAR HAS FAILED TO SHOW ANY REASON THAT ITS COMPLAINT SHOULD NOT BE DISMISSED UNDER FED. R. CIV. P. 12(b)(2))

In an effort to show that this Court has personal jurisdiction over AMS, Star spends many pages of its Opposition listing things AMS's <u>customers</u> have done, or may have done, in California, things AMS "may" have done in California, or things AMS might do in California in the future. But, none of this shows that AMS has "purposefully availed itself of the privileges of conducting activities in California," or that "the exercise of jurisdiction over AMS in California is reasonable. *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001); *Pennington Seed. Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006).

Because AMS has moved to dismiss under Rule 12(b)(2), Star bears the burden of proving

---

[9] While AMS firmly believes this case should be dismissed, at a minimum the case should be stayed pending resolution of the Canadian action.

[10] A Rule 12(b)(7) motion to dismiss for "failure to join a party under Rule 19" will be granted if the court determines that a party is "indispensable" and its joinder is <u>not possible.</u> *Shermoen v. U.S.*, 982 F.2d 1312, 1317 (9th Cir. 1992); Fed. R. Civ. P. 12(b)(7). Kapadia and Vieira are the owners of the Patent, and are therefore "indispensable parties" under Fed. R. Civ. P. 19(a). *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995).

[11] Courts may consider several factors when asked to dismiss. Fed. R. Civ. P. 19(b). Here, these factors all weigh in favor of dismissal. First, the '852 Patent may be found invalid in the instant litigation, which would be highly prejudicial to Kapadia and Vieira. Second, this prejudice cannot be lessened – an invalid patent is an invalid patent. Third, there is no evidence that a judgment rendered in the owners' absence will be adequate. Fourth, if the action is dismissed for nonjoinder, Star will have an adequate remedy once it settles its differences with Vieira.

1  personal jurisdiction, and cannot rest on the bare allegations of the complaint. *Schwarzenegger v.
2  Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Dismissal is <u>required</u> where the
3  plaintiff cannot present competent proof supporting jurisdiction. *McNutt v. General Motors
4  Acceptance Corp.*, 298 U.S. 178, 189 (1936); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d
5  586, 588 (9th Cir. 1996). Star has not met its burden, and therefore this case should be dismissed.

6  In fact, Star's request for jurisdictional discovery is a concession that it cannot show that
7  this Court has personal jurisdiction over AMS. Such discovery should be denied because Star has
8  failed to show that it is likely that any discoverable material exists, and because Star's vague
9  accusations fail to overcome the sworn statements of fact provided by AMS.

**A.  AMS Has, At Most, Attenuated Contacts With California**

Star alleges that this Court has specific personal jurisdiction over AMS because: (1) AMS's AFIRS systems "enter the forum regularly and at numerous entry points;" and (2) AMS "obtains and directs necessary communications from and to resident California customers located at the State's many airports. Opp. 18.

Star's allegations are strained, at best. AMS's AFIRS/UPTIME system consists of two parts: (1) an AFIRS unit installed on airplanes; and (2) UPTIME servers located in Canada. AFIRS units periodically transmit data from an airplane during its flight (*i.e.*, between the plane's departure gate and arrival gate) to the UPTIME servers via the Iridium satellite network. UPTIME servers then prepare reports that are electronically sent to recipients.

Aloha Airlines ("Aloha") is currently the <u>only</u> AMS customer that has AFIRS units installed on planes that fly into California. Aloha is a Delaware corporation based in Hawaii.[12] Aloha is in complete control of when, where and how it operates its airplanes, not AMS. Some of Aloha's flights are between Hawaiian airports and coastal cities in California, but AMS has no control of these flights - or Aloha's routes in general. <u>If</u> an Aloha airplane has an AFIRS unit on board, and <u>if</u> it flies into California, the AFIRS unit may send data from California airspace

---

[12] Although Star's own Exhibit 12 (D.I. 35, Ex. 12) shows that Aloha Airlines is a Delaware Corporation, Star appears to assert that Aloha is a California corporation because it is "registered" in California. Opp. 7. Star cites no case law for this novel legal argument.

Case No. C 07-4820 (MMC) -8- AMS'S REPLY TO STAR'S OPPOSITION TO AMS'S MOTION TO DISMISS

(depending on reporting parameters). The data is transmitted directly to the Iridium satellite network for transfer to UPTIME servers, not <u>to</u> or <u>through</u> anything in California. UPTIME servers in Canada receive the data from the Iridium network,[13] organize it into a usable format for Aloha, and deliver it to Aloha's maintenance facilities in Hawaii. No deliveries of data go through or touch California.[14]

Thus, while Star's allegation that AFIRS systems sometimes enter California is somewhat correct (inasmuch as they are installed on Aloha planes under Aloha control), its allegation that AMS "obtains and directs necessary communications from and to resident California customers located at the State's many airports" (Opp. 18) is false. AMS does not "direct" <u>any</u> communications to California, as its UPTIME reports are directed to Aloha's Hawaiian employees. Nor does AMS "obtain" communications from "resident California customers" – it simply may receive data from airplanes that venture into California for short time periods.[15]

In view of the above, AMS has at most random, fortuitous, or attenuated contacts with California, and thus cannot be considered to have purposely availed itself of the privileges of this forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980). AMS has not deliberately engaged in significant activities in California (*Keeton*, 465 U.S. at 781), nor has created continuing obligations between it and California residents (*Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 648 (1950)).

**B.    Aloha's Acts Cannot Be Attributed to AMS**

Star argues that AMS's citation of *Red Wing Shoe Company v. Hockerson-Halberstadt, Inc.* somehow "raises further questions requiring discovery." Opp. 21. It is difficult to

---

[13] The Iridium network forwards data to UPTIME servers via internet link from a ground station outside of California, which is under Iridium's control.
[14] AMS also has a website where Aloha's Hawaiian employees access historical data.
[15] Star attempts to explain the operation of AFIRS/UPTIME by citing portions of an AMS patent. Opp. 6:1-7:2. But, in patent cases, it is the accused product that is at issue. *Mars, Inc. v. H.J. Heinz Co., L. P.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004). AMS's patent is not an engineering schematic of AFIRS/UPTIME, and describes alternatives that may not be employed in every AFIRS/UPTIME installation. For example, AMS has not directed reports "to the on-site airplane operations personnel, airport maintenance crews, flight crews" or "aircraft crew" at California airports for Aloha, as alleged by Star. Opp. 6, 7.

understand how the citation of a Federal Circuit case can raise questions regarding discovery.

It is clear law that "doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998). Although Star tries to carve some kind of an exception to this rule by pointing out factual differences between the instant situation and that of *Red Wing Shoes*, the Federal Circuit was unequivocal.

Similarly, the Supreme Court has held that a New York auto dealer cannot be haled into court in Oklahoma because a car it sold was involved in an accident there (*World-Wide Volkswagen*, 444 U.S. at 295), and that the placement "of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987). Rather, the connection "between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Id.* at 112.

Just because Aloha does business in California does not mean that AMS does business there. To hold the contrary would have the absurd result of, for example, nationwide jurisdiction over a "mom & pop" supplier to Ford Motor Company, because Ford does business nationwide.

**C.    AMS Has Not Done Business With China Eastern Airlines in California**

Star alleges that AMS's "business within California further includes sale of, installation and service for its infringing product to China Eastern Airlines for use on its fleet of airplanes," (Opp. 8, 18) and that China Eastern Airlines ("China Eastern") flies into California via Los Angeles International Airport (*id.*). Star cites to an AMS press release (D.I. 35, Ex. 14) and printout from "Farecompare.com" (D.I. 35, Ex. 16) to support these allegations. Star's allegations are wrong.

First, none of Star's evidence shows AMS doing business in, or giving contacts with, California.

Second, AMS has not conducted any business with China Eastern Airlines in California, and has not sold, installed, or serviced AFIRS systems for China Eastern in California.[16] Nor does anything in Star's Exhibit 14 indicate that such is the case.

Further, no AFIRS units enter California via China Eastern's route to Los Angeles  As Star's Exhibit 14 shows the AFIRS installations for China Eastern are specifically indicated as being on Boeing's 737 family of aircraft. Boeing 737's are not used on China Eastern's routes to Los Angeles and are not designed for such transpacific routes due to their relatively short range.

### D.  **AMS Has Not Done Business With Meggitt In California**

Star alleges that AMS "maintains a strong relationship with Meggitt, PLC comprised of active, registered California businesses with headquarters and/or operations in Simi Valley, California" (Opp. 8, 18), and cites various press releases (D.I. 35, Exs. 17-20) as illustrating the relationship. These allegations are almost entirely wrong – and unsupported by Star's Exhibits. Meggitt PLC is not a California Corporation. It does not appear in the list of "Meggitts" in Star's Exhibit 19 (D.I. 35, Ex. 19), and is specified as being "U.K. based" by Star's Exhibit 20 (D.I. 35, Ex. 20). *See also* Star's Exhibit 38 (D.I. 40, Ex. 38). <u>AMS has not conducted any business with Meggitt PLC, or its subsidiaries, in California</u>. To the extent that AMS has worked with Meggitt, the work has taken place in Europe, is still in a developmental phase, and has not yet resulted in commercial installations.

### E.  **AMS's Future Business Is Irrelevant To Personal Jurisdiction**

Star alleges that: (1) AMS's states that it will provide services and install its systems anywhere in the world (Opp. 5, 7); (2) AMS's overall market potential is "immense" (Opp. 9); and (3) California has "a significant customer base for AMS to solicit" (Opp. 9, 22). Each of these is completely irrelevant to whether California has personal jurisdiction over AMS. None of these factors show that AMS has done anything to purposefully avail itself of the privileges of conducting activities in California, or that the exercise of jurisdiction over AMS in California is

---

[16] Although Star's own Exhibit 15 (D.I. 35, Ex. 15) shows that China Eastern Airlines is a Chinese Corporation, Star appears to assert that China Eastern is a California corporation because it is "registered" in California. Opp. 7:8-13. Star cites no case law for this novel legal argument.

Case No. C 07-4820 (MMC)  -11-  AMS'S REPLY TO STAR'S OPPOSITION TO AMS'S MOTION TO DISMISS

reasonable. *Doe*, 248 F.3d at 923; *Pennington Seed*, 457 F.3d at 1344. At best, they show that the long-term potential exists for AMS to operate in California – not that there is personal jurisdiction today.

### F. General Jurisdiction Matters Are Irrelevant Here

Star alleges that AMS provides "storage, cabin cleaning, and safety solutions" to customers in California. Opp. 5. However, AMS has not provided these services in California, and they are therefore irrelevant to the instant inquiry.

Further, the provision of such services is only relevant to a general jurisdiction analysis in the instant case, because they are unrelated to the accused AFIRS/UPTIME system. Star has not alleged any such general jurisdiction over AMS – and indeed cannot because none of the factors listed in *Perkins*, *Bancroft* or *Helicopteros* weigh in favor of general personal jurisdiction. *See* AMS's Motion, D.I. 29, pp. 17-18.

### G. AMS Has No Past Acts in California

Star also alleges that "the Jacobs declaration and AMS motion primarily focus on the present operations of the company," and that "[d]iscovery on the historical business activities of AMS … is highly relevant to" personal jurisdiction. Opp. 20. This is factually inaccurate. Many of the items declared by Mr. Jacobs are inclusive of past actions. *See, e.g.,* D.I. 30, ¶¶ 10, 15-18, 21-23, and 25. To the extent that the temporal limitations of the remaining paragraphs are unclear, AMS confirms that all declared statements include past and present activities.

### H. AMS's "Subsidiaries" Have No California Contacts Either

Star also alleges that AMS's "subsidiaries," "AMS USA" and "Flyht" may have contacts with California. Opp. 22. This is rank speculation. AMS confirms that "AMS," as used in Mr. Jacobs' Declaration, is inclusive of all subsidiaries.

### I. The Declaration of Mr. Jacobs is Credible and Accurate

Star alleges that Mr. Jacobs testimony is "not credible" and "inaccurate." Opp. 1. Yet, the only argument it presents in support of this serious allegation is what it alleges to be a contradiction between: (1) Mr. Jacobs's testimony that AMS's only offices are in Calgary (D.I. 30, ¶ 3); and (2) AMS's yearly report's indication that there is a US office (*e.g.*, D.I. 37-39, Ex.

30, p. 54). But, there is no contradiction. AMS's US "office" is a mailing address for FAA correspondence, not truly an "office," as testified to by Mr. Jacobs.

**J.      AMS Does Not Have Minimum Contacts With California**

Exercising jurisdiction over AMS in this case would contravene the requirements of due process. The only accurate allegation made by Star is that Aloha planes with AFIRS units on them enter California airspace from time to time. However, Aloha decides where and when to fly its planes, not AMS. Thus, AMS cannot be said to be availing itself of the benefits and privileges of California law by purposefully directing activities at California, because it neither performed "some type of affirmative conduct which allows or promotes the transaction of business" in California (*Doe*, 248 F.3d at 924), nor had a "purposeful direction" expressly aimed at California. *Schwarzenegger*, 374 F.3d at 803. Thus, any contact that AMS has with California can only be categorized as "random, fortuitous, or attenuated," which is not sufficient to show minimum contacts. *AT&T*, 94 F.3d at 590.

**K.      It Is Unreasonable To Drag AMS Into California**

Even if it could be shown that AMS has "minimum contacts" with California (which it does not have), the bare existence of these contacts "is not sufficient to allow a court to exercise personal jurisdiction over a defendant." *Doe*, 248 F.3d at 925. Jurisdiction is still improper if it would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Star has completely failed to address reasonableness in its Opposition. The Court should grant AMS's Motion for this reason alone.

Star probably did not address reasonableness because it cannot prevail on the well-established seven factor test. *See Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993). The burden here is high on AMS, because it is being asked to defend an action in a state where it does no business, and has no contacts. California cannot be said to have any particular interest in this litigation, because neither party is from California, AMS has not directed any of its business activities toward California, and there has been no allegation that any substantial portion of the allegedly infringing activities occurred in California. There is also no reason to believe that another district where AMS <u>does</u> have a presence could not

Case No. C 07-4820 (MMC)     -13-     AMS'S REPLY TO STAR'S OPPOSITION TO AMS'S MOTION TO DISMISS

provide a fair and competent proceeding where Star could obtain relief.

**L.      Dimissal Is Appropriate, And Star Should Not Be Granted Discovery**

Star's request for discovery (Opp. 20) should be denied.  This is not a close case where the discovery of some facts may demonstrate jurisdiction.  Star has utterly failed to proffer evidence showing any contacts that AMS has with California and is only seeking a fishing expedition.[17]

Further, Mr. Jacob's Declarations have indicated that there is no discoverable information for almost all of Star's proposed topics; and that there are no "minimum contacts" between AMS and California.  This testimony is more than enough to confirm the lack of personal jurisdiction over AMS here.  *See e.g.*, *Huang v. Ferrero U.S.A., Inc.*, 1999 U.S. Dist. LEXIS 5712 (N.D. Cal., 1999); *Levy v. Norwich Union Ins. Soc'y*, 1998 U.S. Dist. LEXIS 13524, *11 (N.D. Cal., 1998).  A court is free to deny discovery where, as here, "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003).

Star's allegations of personal jurisdiction are just that – allegations unsupported by any real facts.  On the other hand, AMS has provided clear testimony about its lack of contacts with California.  This situation squares with *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006), which holds that when "[a] plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."[18]

### IV.    COSTS

Star's only argument as to why the Court should not award AMS costs is that it was able

---

[17] Star has <u>already refused</u> to proceed with such discovery under the reasonable parameters offered by AMS - even though AMS agreed to the requested deponent and schedule, and offered to continue the hearing on its Motion to Dismiss. D.I. 31, Ex. F, p. 3.  Star should not be allowed to further delay this case.

[18] *See also Boschetto v. Hansing*, 2006 U.S. Dist. LEXIS 50807 (N.D. Cal. 2006) (no discovery because there was only speculation of jurisdiction); *Protrade Sports, Inc. v. Nextrade Holdings, Inc.*, 2006 U.S. Dist. LEXIS 6631 (N.D. Cal. 2006) (no discovery because plaintiff failed to establish any indication that defendant might be subject to personal jurisdiction); and *BenQ Am. Corp. v. Forward Elecs. Co.*, 2005 U.S. Dist. LEXIS 38648 (N.D. Cal. 2005) (no discovery because plaintiff didn't establish a "reasonable probability" discovery would show jurisdiction).

Case No. C 07-4820 (MMC)                                -14-                AMS'S REPLY TO STAR'S OPPOSITION TO AMS'S MOTION TO DISMISS

1   to file an amended complaint under Federal Rule 15(a)(1). Opp. 24. AMS does not disagree that
2   Federal Rule 15(a)(1) allows the filing of an amended complaint before the defendant's answer.
3   However, Star has not argued that the legal meanings of the complaint (D.I. 1) and first amended
4   complaint (D.I. 28) were any different. Indeed, Star has specifically averred that they were the
5   same. D.I. 31, Ex. H, ¶ 4. Thus, Star has advanced no reason for filing the first amended
6   complaint – except as a delaying tactic. Courts can award costs for delaying tactics that multiply
7   the proceedings via unnecessary filings once a lawsuit has begun. *Moore v. Keegan Mgmt. Co. (In*
8   *re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 435 (9th Cir. 1996). See also *Wages v. IRS*, 915
9   F.2d 1230, 1235 (9th Cir. 1990) (Court awarded sanctions because, *inter alia*, Wages attempted to
10  file an amended complaint that did not materially differ from one which the district court had
11  already concluded did not state a claim).

## V.   CONCLUSION

In view of the foregoing, AMS respectfully requests that this Court dismiss the current action under one or more of: (1) Fed. R. Civ. P. 12(b)(7); (2) Fed. R. Civ. P. 12(b)(1); and (3) Fed. R. Civ. P. 12(b)(2), and award reasonable attorney fees to AMS.

Dated: January 11, 2008

KEVIN C. McCANN
ROBERT M. MASTERS
TIMOTHY P. CREMEN
BHASKAR KAKARLA
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By:  /s/ Kevin C. McCann
       Kevin C. McCann

Attorneys for Defendant
AEROMECHANICAL SERVICES LTD.

700030 / 28946