IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STAR NAVIGATION SYSTEMS GROUP LTD., <br><br>  Plaintiff, <br><br>  v. <br><br> AEROMECHANICAL SERVICES LTD., <br><br>  Defendant | No. C-07-4820 MMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND; VACATING HEARING** |

   Before the Court is defendant's Motion to Dismiss, filed December 21, 2007. Plaintiff has filed opposition, to which defendant has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision thereon, VACATES the hearing scheduled for April 11, 2008, and rules as follows.[1]

   In its First Amended Complaint ("FAC"), plaintiff alleges that U.S. Patent 7,113,852 (the "'852 Patent"), was issued to Viraf S. Kapadia and Hilary Vieira (collectively, "the inventors"), and that the patent was subsequently "assigned" to plaintiff as the result of the inventors' having granted to plaintiff an "exclusive license."  (See FAC ¶¶ 6-7.)  Plaintiff

---

   [1] In its motion, defendant includes a request for an award of sanctions. The request is DENIED as procedurally improper. See Civil L.R. 7-8.

further alleges defendant has sold products that infringe the '852 Patent. In its motion, defendant argues plaintiff cannot establish its standing to bring the instant action, unless it joins the inventors as parties hereto.

"Only a 'patentee' can bring an action for patent infringement." Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F. 3d 1016, 1017 (Fed. Cir. 2001) (quoting 35 U.S.C. § 281). Where an "exclusive licensee holds all substantial rights in the patent," the "licensee is, in effect, an assignee, and, therefore, a patentee." See id. (internal quotation and citation omitted). If, however, an exclusive licensee does not hold all substantial rights in the patent, the exclusive licensee "must join the patent owner in an action brought against an accused infringer." See Propat Int'l Corp. v. Rpost, Inc., 473 F. 3d 1187, 1193 (Fed. Cir. 2007).

The agreement between the inventors and plaintiff, titled "License Agreement," was executed on April 22, 2002. (See Cremen Decl., filed December 21, 2007, Ex. C.)[2] Having reviewed the License Agreement, the Court finds, contrary to plaintiff's argument, that it does not transfer to plaintiff all substantial rights in the patent.

First, under the License Agreement, the inventors retain the "first right to institute proceedings against [an] [i]nfringer," (see id. Ex. C ¶ 10.1), and plaintiff may institute such proceedings only if the inventors "choose not to commence proceedings against the [i]nfringer," (see id. Ex. C ¶ 10.2). A licensor retains "significant ownership rights" in the patent, where, as here, a license agreement provides that the licensor has the "initial right" to sue for infringement and that the licensee "only can sue for infringement in the event [the licensor] fails to do so." See Mentor H/S, 240 F. 3d at 1018; see also Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc., 248 F. 3d 1333, 1344

---

[2] On or about May 3, 2007, Hilary Vieira ("Vieira"), one of the two inventors, filed a complaint in the Ontario Superior Court of Justice against, inter alia, plaintiff and Viraf Kapadia, the other inventor. (See id. Ex. D.) In said complaint, Vieira seeks, inter alia, an order "setting aside the License Agreement," (see id. Ex. D at 4); such request is based on Vieira's allegation that plaintiff has failed to perform its obligations under the License Agreement, (see id. Ex. D at 12). In its opposition to the instant motion, plaintiff represents that the action by Vieira remains pending in a Canadian court.

1  (Fed. Cir. 2001) (noting "transferee that receives all substantial patent rights from a
2  transferor would never need consent from the transferor to file suit"); Abbott Laboratories v.
3  Diamedix Corp., 47 F. 3d 1128, 1132 (Fed. Cir. 1995) (observing "right to indulge
4  infringements" is right that "normally accompanies a complete conveyance of the right to
5  sue").
6        Second, the License Agreement identifies the inventors as "the sole legal and
7  beneficial owners of all rights in and to the . . . Patents,"[3] (see Cremen Decl. Ex. C
8  ¶ 7.3(c)), includes a covenant by plaintiff not to "contest, directly or indirectly, the validity of
9  the [inventors'] ownership of the . . . Patents," (see id. Ex. C ¶ 5.6), provides that "nothing
10 in this Agreement will confer on [plaintiff] a propriety interest in the . . . Patents," (see id.
11 Ex. C ¶ 5.8), and states that plaintiff "specifically acknowledg[es] the [inventors'] superior
12 rights" in the '852 Patent, (see id.).  Such provisions are similar to those the Federal Circuit
13 has found indicative of a licensor's not having transferred all substantial rights to its
14 licensee.  See Propat Int'l Corp., 473 F. 3d at 1191 (holding district court did not err in
15 finding licensee agreement did not transfer to licensee all substantial rights in patent where,
16 inter alia, agreement included provision that licensor "is, and will continue to be, the owner
17 of the patent").
18       Third, the License Agreement provides that the inventors retain the right to cancel
19 the License Agreement in the event plaintiff fails to comply with the "terms and conditions"
20 set forth in the agreement, (see Cremen Decl. Ex. C ¶ 9.2(a)), which terms and conditions
21 include plaintiff's allowing the inventors to "inspect the facilities and operations of [plaintiff],"
22 (see id. Ex. C ¶ 5.1(b), "adher[ing] at all times to the quality control standards and
23 specifications communicated in writing by the [inventors] to [plaintiff]," (see id. Ex. C
24 ¶ 5.1(d)), "set[ting] its prices and its terms of credit at levels which are commercially
25 reasonable and competitive," (see id. Ex. C ¶ 5.3), and engaging in "intensive, consistent
26 and continuous promotion and advertisement so as to create a public interest in the
27
28     [3]The agreement provides plaintiff with a license to use three patents, including the '852 Patent.  (See Cremen Decl. Ex. C ¶ 1.1(d) and Schedule A thereto.)

3

Licensed Property,"[4] (see id.).  Again, such provisions are similar to those the Federal Circuit has found do not support a finding that a licensee has received from the licensor all substantial rights to a patent.  See Propat Int'l Corp., 473 F. 3d at 1191 (holding where licensor retains right to "terminate the agreement and end all of [the licensee's] rights in the patent if [the licensee] fails to perform up to specified benchmarks" such condition is "indication" licensor "retains a significant ownership interest in the patent").[5]

Finally, the License Agreement prohibits plaintiff from assigning its rights in the '852 Patent to another "without the prior written consent" of the inventors.  (See Cremen Decl. Ex. C ¶ 11.1).  "[A] restriction on a transferee's right to assign is a substantial right reserved by the transferor."  See Intellectual Property Development, 248 F. 3d at 1345.

In sum, the Court finds the License Agreement does not transfer to plaintiff all substantial rights to the '852 Patent, and, consequently, plaintiff lacks standing to bring the instant action, given the inventors are not parties hereto.

In its opposition, plaintiff requests, in the event the Court finds the License Agreement does not transfer to plaintiff all substantial rights in the '852 Patent, an opportunity to join the inventors herein.  The Court finds its appropriate to afford plaintiff such opportunity.  See, e.g., Mentor H/S, Inc. v. Medical Device Alliance, Inc., 244 F. 3d 1365, 1373 (Fed. Cir. 2001) (holding licensee's motion to join patent holder properly granted where defendant would not be prejudiced by joinder).  Indeed, in the event the inventors are added herein as parties, such joinder would fully address defendant's concern that, in the absence thereof, defendant could be subject to multiple lawsuits based on the same alleged infringement.

//

---

[4] The "Licensed Property" includes the '852 Patent, two other patents, and certain trademarks owned by the inventors.  (See id. Ex. C ¶ 1.1(h) and Schedule A thereto.)

[5] As noted, in the pending Canadian action filed by Vieira against plaintiff, Vieira seeks a finding that the License Agreement has been terminated in light of plaintiff's alleged non-compliance with the terms and conditions thereof.  (See Cremen Decl. Ex. D at 12.)

4

Accordingly, the FAC will be dismissed, without prejudice to plaintiff's filing a Second Amended Complaint in which plaintiff has joined the inventors.[6]

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is hereby GRANTED, and the First Amended Complaint is hereby DISMISSED, without prejudice to plaintiff's filing, no later than April 30, 2008, a Second Amended Complaint, in which both inventors are named parties.

**IT IS SO ORDERED.**

Dated:  April 8, 2008

　　　　　　　　　　　　　　　　　　　MAXINE M. CHESNEY
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[6] In light of this finding, the Court does not consider defendant's argument that the Court lacks personal jurisdiction over defendant.  Further, the Court does not consider defendant's argument, made for the first time in its reply, that the Court should dismiss or stay the instant action in favor of the Canadian action filed by Vieira.