Kevin C. McCann (SB# 120874)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
Email: kevinmccann@paulhastings.com

Robert M. Masters (DC Bar No. 435623)
(*pro hac vice*)
Timothy P. Cremen (DC Bar No. 478705)
(*pro hac vice*)
Bhaskar Kakarla (DC Bar No. 488976)
(*pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
Email: robertmasters@paulhastings.com
Email: timothycremen@paulhastings.com
Email: bhaskarkakarla@paulhastings.com

Attorneys for Defendant
AEROMECHANICAL SERVICES LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STAR NAVIGATION SYSTEMS GROUP LTD., | CASE NO. C 07-4820 (MMC) |
| Plaintiff, | **AEROMECHANICAL SERVICES LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS AND SUPPORTING MEMORANDUM** |
| v. | |
| AEROMECHANICAL SERVICES LTD., | Date: June 20, 2008 Time: 9:00 a.m. |
| Defendant. | Place: Courtroom 7, 19th Floor Honorable: Maxine M. Chesney |

1

# TABLE OF CONTENTS

2

**Page**

3   NOTICE OF MOTION ............................................................................................... 1

4   STATEMENT OF ISSUES TO BE DECIDED ........................................................ 1

5   I. INTRODUCTION AND BACKGROUND ............................................................ 1

6   II. ARGUMENT I (NO PERSONAL JURISDICTION) ............................................ 2

7         A.    AMS Has No Substantive Contacts with California ............................... 2

8         B.    Standard of Review ............................................................................... 3

9         C.    For This Forum To Have Personal Jurisdiction Over AMS, AMS Must

10              Have Minimum Contacts Herein ......................................................... 4

11              1.    General Jurisdiction ................................................... 4

12              2.    Specific Jurisdiction ................................................... 5

13        D.    AMS Does Not Have "Minimum Contacts" To Confer Personal

14              Jurisdiction ............................................................................................. 6

15  III. ARGUMENT II (JOINDER) ............................................................................... 9

16        A.    Mr. Vieira Has Not Been Joined, and The Canadian Action Is Still Pending ........ 9

17        B.    Star Has Failed To Join Mr. Vieira As An "Involuntary Plaintiff" ..................... 10

18        C.    Star Cannot Show That Mr. Vieira Should Be An "Involuntary Plaintiff,"

19              And The Case Should Be Dismissed Until The Canadian Action is

20              Complete ................................................................................................ 11

21              1.    The Court May Dismiss Star's Complaint ............................... 12

22              2.    Alternatively, The Court May Stay These Proceedings.......................... 13

23              3.    The Court May Also Dismiss or Stay the Proceedings Under the

24                    *Colorado River* Doctrine........................................................ 14

25              4.    The Court Should Not Waste Its Resources.............................................. 16

26  IV. CONCLUSION.................................................................................................... 16

27

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

## TABLE OF AUTHORITIES

2

Page

**CASES**

3

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995) ........................................................................... 4

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*,
1 F.3d 848 (9th Cir. 1993) ............................................................................. 4, 8

*Applera Corp. v. Illumina, Inc.*,
282 F. Supp. 2d 1120 (N.D. Cal. 2003) ............................................................ 15

*AT&T v. Compagnie Bruxelles Lambert*,
94 F.3d 586 (9th Cir. 1996) ........................................................................... 3, 4

*Bancroft & Masters v. Augusta National*,
223 F.3d 1082 (9th Cir. 2000) .................................................................. 5, 6, 7

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (U.S. 1985) ............................................................................... 5, 8

*Caprio v. Wilson*,
513 F.2d 837 (9th Cir. Cal. 1975) .................................................................... 11

*Citi Apts., Inc. v. Markel Insurance Co.*,
2007 U.S. Dist. LEXIS 44469 (N.D. Cal. 2007) ................................................. 9

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) ........................................................................... 13

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ................................................................................. 14, 15

*Data Discount, Inc. v. Systems Tech. Associate, Inc.*,
557 F.2d 1280 (9th Cir. 1977) .......................................................................... 3

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ............................................................. 3, 4, 6, 7, 8

*Electronics For Imaging, Inc. v. Coyle*,
340 F.3d 1344 (Fed. Cir. 2003) ......................................................................... 4

*Ethicon, Inc. v. United States Surgical Corp.*,
135 F.3d 1456 (Fed. Cir. 1998) ....................................................................... 12

*Ferguson Beauregard/Logic Controls v. Mega Sys.*,
*LLC*, 350 F.3d 1327 (Fed. Cir. 2003) ............................................................. 10

*Gen-Probe, Inc. v. Amoco Corp.*,
1996 U.S. Dist. LEXIS 5393 (S.D. Cal., 1996) ................................................ 14

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
466 U.S. 408 (1984) ................................................................................. 5, 6, 7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

(continued)

2

**Page**

3

*International Gamco, Inc. v. Multimedia Games, Inc.,*
2007 U.S. App. LEXIS 24099 (Fed. Cir. 2007)................................................ 11

4

*Intermedics Infusaid, Inc. v. Regents of University of Minnesota,*
804 F.2d 129 (Fed. Cir. 1986).................................................................. 13

5

6

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945).............................................................................. 6

7

*Joint Mktg. Int'l v. L&N Sales & Mktg.,*
2006 U.S. Dist. LEXIS 48017 (E.D.N.Y., 2006)............................................. 11

8

9

*Keeton v. Hustler Magazine, Inc.,*
465 U.S. 770 (1984).............................................................................. 5

10

*Landis v. North Am, Co.,*
299 U.S. 248 (1936).............................................................................. 12

11

12

*L.E.A. Dynatech, Inc. v. Allina,*
49 F.3d 1527 (Fed. Cir. 1995)................................................................ 12

13

*Leyva v. Certified Grocers of California, Ltd.,*
593 F.2d 857 (9th Cir. Cal. 1979)............................................................ 12

14

15

*McShan v. Sherrill,*
283 F.2d 462 (9th Cir. 1960)................................................................. 10

16

*McNutt v. General Motors Acceptance Corp.,*
298 U.S. 178 (1936)............................................................................. 3

17

18

*Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines,*
925 F.2d 1193 (9th Cir. Cal. 1991) ........................................................ 14

19

*One Up, Inc. v. Webcraft Technologies, Inc.,*
1989 U.S. Dist. LEXIS 11313 (N.D. Ill., 1989)............................................. 15

20

21

*Pennington Seed. Inc. v. Produce Exchange No. 299,*
457 F.3d 1334 (Fed. Cir. 2006)............................................................ 5, 7

22

*Perkins v. Benguet Consolidated Mining Co.,*
342 U.S. 437 (1952)........................................................................ 5, 6, 7

23

*Pirkle v. Ogontz Controls Co.,*
1987 U.S. Dist. LEXIS 10555 (E.D. Pa., 1987)............................................. 15

24

*Prima Tek II, L.L.C. v. A-Roo Co.,*
222 F.3d 1372 (Fed. Cir. 2000)............................................................. 10

25

26

*Rano v. Sipa Press, Inc.,*
987 F.2d 580 (9th Cir. 1993)................................................................. 8

27

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>
(continued)

2

**Page**

3

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998).........................................................................7

4

*Robinson v. Heilman,*
    563 F.2d 1304 (9th Cir. 1977)........................................................................10

5

*Santrade, Ltd. v. General Elec. Co.,*
    1990 U.S. Dist. LEXIS 19260 (E.D.N.C., 1990) ..........................................14

6

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004)..........................................................3, 4, 5, 6, 7

7

8

*Sheldon v. West Bend Equipment Corp.,*
    718 F.2d 603 (3d Cir. Pa. 1983)....................................................................11

9

*Sladek v. Bell Sys. Mgmt. Pension Plan,*
    880 F.2d 972 (7th Cir., 1988)........................................................................10

10

11

*Summa Four v. AT&T Wireless Servs.,*
    994 F. Supp. 575 (D. Del. 1998) ...................................................................15

12

*Travelers Health Association v. Virginia,*
    339 U.S. 643 (1950)..........................................................................................5

13

14

*Viam Corp. v. Iowa Export-Import Trading Co.,*
    84 F.3d 424 (Fed. Cir. 1996)............................................................................6

15

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980).......................................................................................5, 6

16

17

18

## **STATUTES**

19

Fed. R. Civ. P. 12(b)(2).................................................................................2, 3, 16

20

Fed. R. Civ. P. 12(b)(7).................................................................................2, 10, 16

21

Fed. R. Civ. P. 19(a)(2) ....................................................................................1, 10

22

Cal. Civ. Proc. Code § 410.10.................................................................................4

23

24

25

26

27

28

-v-

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

## NOTICE OF MOTION

2  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3          PLEASE TAKE NOTICE that on June 20, 2008, at 9:00 AM, or as soon thereafter as the

4  matter may be heard, in the United States District Court for the Northern District of California,

5  Courtroom 7, 19th Floor, 450 Golden Gate Ave., San Francisco, California, before the Honorable

6  Maxine M. Chesney, defendant Aeromechanical Services, Ltd ("AMS") will, and hereby does

7  move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (7), and its inherent

8  power to control its docket, for an Order dismissing plaintiff Star Navigation Systems Group

9  Ltd.'s ("Star") Second Amended Complaint (D.I. 61) or, in the alternative, staying these

10  proceedings until conclusion of a related Canadian court action.

11          AMS brings this motion pursuant to: Federal Rule of Civil Procedure 12(b)(2) because

12  this Court cannot reasonably be said to have personal jurisdiction over AMS; (2) Federal Rule of

13  Civil Procedure 12(b)(7) because Star has failed to join both owners of the '852 Patent; and (3)

14  this Court's inherent powers to control its docket because the tenuous existence of Star's

15  purported license to the '852 Patent (and thus the possibility of this action continuing) is currently

16  being litigated in Canada.  The motion is based upon this notice, the accompanying memorandum

17  of points and authorities, the Declaration of Darryl Jacobs filed with this motion, the Declaration

18  of Timothy P. Cremen filed with this motion, and such other matters as we may call to the

19  Court's attention at or before the time of the hearing.

20

## STATEMENT OF ISSUES TO BE DECIDED

21          1.  Whether Star's complaint should be dismissed because this Court cannot reasonably be

22  said to have personal jurisdiction over AMS.

23          2.  Whether Star's complaint should be dismissed because Star has failed to join both of

24  the owners of the patent-in-suit pursuant to the Court's April 8, 2008 Order.

25          3.  Whether Star's complaint should be dismissed, or these proceedings stayed, because

26  Star may not have a license to the '852 Patent and the existence of such a license is being actively

27  litigated in Canada.

28

1    Dated:  May 12, 2008                PAUL, HASTINGS, JANOFSKY & WALKER LLP

2
                                        By:_____/s/Kevin C. McCann_____
3                                       Kevin C. McCann (SB# 120874)
                                        55 Second Street
4                                       Twenty-Fourth Floor
                                        San Francisco, CA 94105
5                                       Telephone: (415) 856-7000
                                        Facsimile: (415) 856-7100
6                                       Email:  kevinmccann@paulhastings.com

7                                       Robert M. Masters (DC Bar No. 435623)
                                        (*pro hac vice*)
8                                       Timothy P. Cremen (DC Bar No. 478705)
                                        (*pro hac vice*)
9                                       Bhaskar Kakarla (DC Bar No. 488976)
                                        (*pro hac vice*)
10                                      875 15th St., N.W.
                                        Washington, DC 20005
11                                      Telephone:  (202) 551-1700
                                        Facsimile:  (202) 551-1705
12                                      Email:  robertmasters@paulhastings.com
                                        Email:  timothycremen@paulhastings.com
13                                      Email:  bhaskarkakarla@paulhastings.com

14                                      Attorneys for Defendant
                                        Aeromechanical Services Ltd.
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.    INTRODUCTION AND BACKGROUND

3       Star commenced this action on September 19, 2007, by filing a complaint, in its own

4   name, alleging infringement of the '852 Patent by defendant AMS.  AMS moved to dismiss on

5   two grounds: (1) that Star did not have standing to bring an infringement action without joining

6   the patent owners; and (2) that this Court cannot reasonably be considered to have personal

7   jurisdiction over AMS.  On April 8, 2008, the Court granted AMS's motion to dismiss without

8   prejudice on the grounds that Star did not have the requisite standing to proceed in its name only,

9   and gave Star until April 30, 2008 to join the co-owners of the patent, Viraf Kapadia and Hillary

10  Vieira (the Court did not rule on the personal jurisdiction issue).  Star was apparently able to join

11  Mr. Kapadia to this action, but not Mr. Vieira.  Mr. Vieira purportedly declined to assert his

12  patent against defendant AMS, and refused to join this action.  Not to be stopped, Star went ahead

13  anyway, and amended its complaint, which purports to join Mr. Vieira as an "involuntary

14  plaintiff."

15      This Court cannot reasonably be considered to have personal jurisdiction over AMS.

16  AMS is a Canadian company, has never conducted any business in the State of California and

17  does not have the requisite minimum contacts with the State of California such that it should be

18  dragged into this State to defend this action.

19      Additionally, Star has failed to comply with the Court's April 8, 2008 Order (D.I. 60) to

20  join the co-owners (Viraf Kapadia and Hillary Vieira) of the '852 Patent.  Star's labeling of Mr.

21  Vieira as an "involuntary plaintiff" in the Second Amended Complaint (D.I. 61) is not sufficient –

22  a party can only be declared an "involuntary plaintiff" by Court order under Rule 19(a)(2).

23      Even if Star had proceeded properly by seeking a Court order to join Mr. Vieira as an

24  "involuntary plaintiff," such a motion should not be granted.  The ability of Star to bring any

25  action, and to move to join Mr. Viera as an "involuntary plaintiff," is based solely on a license

26  agreement - the existence of which is currently being contested in a Canadian court.  This Court

27  should not proceed with a time- and cost- intensive patent litigation until the rights of Star (if any)

28  are determined by the Canadian court.

1

Accordingly, based on separate and independent reasons, AMS respectfully moves to:

2

(1)     Dismiss Star's Second Amended Complaint under Fed. R. Civ. P. 12(b)(2)

3

because this Court does not have personal jurisdiction over AMS;

4

(2)     Dismiss Star's Second Amended Complaint under Fed. R. Civ. P. 12(b)(7)

5

because Star has failed to join Mr. Vieira to this action, and does not otherwise have standing to

6

sue without Mr. Vieira; and

7

(3)     Dismiss Star's Second Amended Complaint, or otherwise stay this action, under

8

this Court's inherent powers to control its docket because the existence of Star's license to the

9

'852 Patent (and thus the possibility of this action continuing) is currently being litigated in

10

Canada.

11

## II.     ARGUMENT I (NO PERSONAL JURISDICTION)

12

### A.     AMS Has No Substantive Contacts with California

13

AMS is a Canadian corporation, with its principal place of business (and only offices) in

14

Calgary, Alberta, Canada.[1]  Jacobs Decl., ¶ 4.  AMS has never: had an office in California;

15

maintained any mailing address or telephone listing in California; been licensed or registered to

16

do business in California; or paid any tax to California.  Jacobs Decl., ¶¶ 6-8 and 12.  AMS has

17

never had employees, sales representatives, vendors, contractors, partners, service providers or

18

associates in California. Jacobs Decl., ¶ 9.  AMS has never owned property or other assets, or

19

maintained any bank accounts, in California.  Jacobs Decl., ¶¶ 10, 11.  AMS has never entered

20

into, or solicited entry into, any business or contract with a California customer.  Jacobs Decl., ¶

21

13.  No AMS employee, sales representative, vendor, contractor, partner, service provider or

22

associate has ever traveled to California to do business with customers on behalf of AMS.  Jacobs

23

Decl., ¶ 14.  AMS has never directed any customer communications into or out of California.

24

Jacobs Decl., ¶ 15.  AMS has never solicited business or customers in California via advertising,

25

presentations, or sales pitches.  Jacobs Decl., ¶ 16.  AMS's website has never allowed direct

26

---

27

[1] AMS has U.S. mailing addresses for FAA papers and sales documents in states other than California. Jacobs Decl., ¶ 5.

28

-2-

1  purchases.  Jacobs Decl., ¶ 17.  AMS has never manufactured goods or distributed products in

2  California.  Jacobs Decl., ¶ 18.  AMS has never conducted research, testing, or development

3  regarding any of its products or services in California.   Jacobs Decl., ¶ 19.  AMS has never

4  provided any service, repairs or support of its systems in California.  Jacobs Decl., ¶ 20.  AMS

5  has never provided services or support to customers in California.  Jacobs Decl., ¶ 21.

6      In previous filings with this Court, Star has alleged that AMS has conducted business with

7  three different companies in California – Aloha Airlines, China Eastern Airlines, and Meggit,

8  PLLC.  With respect to China Eastern Airlines and Meggitt, AMS has not conducted any business

9  with these companies in California.   Jacobs Decl., ¶¶ 43-48.  With respect to Aloha Airlines, any

10 contacts with California by virtue of AMS's business with Aloha can only be described as

11 random, fortuitous, or attenuated, and were caused by Aloha's actions, not AMS's.  Jacobs Decl.,

12 ¶¶ 31-42.  Further, Aloha has gone out of business, and no Aloha planes fly into California any

13 longer.  Jacobs Decl., ¶¶ 33, 34.

14 **B.    <u>Standard of Review</u>**

15     Federal Rule of Civil Procedure 12(b)(2) provides a district court with the ability to

16 dismiss an action for lack of personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*,

17 557 F.2d 1280, 1285 (9th Cir. 1977).  When the defendant moves to dismiss under Rule 12(b)(2),

18 the plaintiff bears the burden of proving personal jurisdiction, and cannot rest on the bare

19 allegations of the complaint.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th

20 Cir. 2004).  This Court is not confined to the facts contained in the complaint when considering

21 motions under Rule 12(b)(2).  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

22 Dismissal is required where the plaintiff cannot present competent proof supporting jurisdiction.

23 *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *AT&T v. Compagnie*

24 *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) ("[a]s the party seeking to invoke federal

25 jurisdiction, [plaintiff] has the burden of establishing its existence").

26

27

28

C.    **For This Forum To Have Personal Jurisdiction Over AMS,**
       **AMS Must Have Minimum Contacts Herein**

Federal Circuit law governs personal jurisdiction determinations in patent cases. *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). When, as here, the defendant is a non-resident of the forum, the determination of whether personal jurisdiction exists over the defendant requires an analysis of whether: (1) "a forum state's long-arm statute permits service of process;" and (2) "the assertion of jurisdiction would be inconsistent with due process." *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Because California's long arm statute[2] is co-extensive with the outer limits of due process under the state and federal constitutions, the jurisdiction analysis in California narrows to one inquiry - whether jurisdiction comports with due process. *Elecs. for Imaging, Inc.*, 340 F.3d at 1350.

Courts may exercise general or specific jurisdiction. A finding of general jurisdiction permits a defendant to be haled into the courts of the forum state for any cause of action, even if it is unrelated to the defendant's activities with the forum. *Schwarzenegger*, 374 F.3d at 801. Specific jurisdiction permits a court to adjudicate only claims that arise out of the defendant's contact with the forum. *AT&T,* 94 F.3d at 588.

1.    **General Jurisdiction**

To establish general jurisdiction, Star must demonstrate that AMS's contacts with the forum are "substantial, continuous and systematic" (*Doe*, 248 F.3d at 923), or that its contacts "'approximate physical presence' in the forum state" (*Schwarzenegger*, 374 F.3d at 801). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. For this reason, the Ninth Circuit "regularly [] decline[s] to find general jurisdiction even where the contacts were quite extensive." *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993). For example,

---

[2] *See Cal. Civ. Proc. Code § 410.10* ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States").

1    even the entry into sales contracts with California choice-of-law provisions, retention of services

2    of a California direct-mail marketing company, retention of California consultants, and

3    maintenance of a Web site available to California residents, "fall[s] well short of [] 'continuous

4    and systematic' contacts."[3] *Schwarzenegger*, 374 F.3d at 801.

5         **2.    Specific Jurisdiction**

6         In contrast, to show specific jurisdiction (*i.e.*, jurisdiction directly relating to the matter

7    being litigated) Star must satisfactorily show that: (1) AMS has purposefully availed itself of the

8    privileges of conducting activities in California; (2) Star's claim arises out of or results from

9    AMS's activities in California; and (3) the exercise of jurisdiction over AMS is reasonable. *Doe*,

10    248 F.3d at 923; *Pennington Seed. Inc. v. Produce Exchange No. 299*, 457 F.3d 1334, 1344 (Fed.

11    Cir. 2006).

12         Regarding the first two prongs, a defendant that has only random, fortuitous, or attenuated

13    contacts with a particular forum cannot be considered to have purposely availed itself of the

14    privileges of that forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-*

15    *Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980). But, where the defendant has

16    deliberately engaged in significant activities within a State (*Keeton*, 465 U.S. at 781), or has

17    created continuing obligations between himself and residents of the forum (*Travelers Health*

18    *Ass'n v. Virginia*, 339 U.S. 643, 648 (U.S. 1950)), it has availed itself of the privilege of

19    conducting business there, and it is not unreasonable to require him to submit to the burdens of

20    litigation there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (U.S. 1985).

21         Regarding the third prong, the reasonableness of jurisdiction is determined by balancing

22    several factors, namely: "(1) the burden on the defendant; (2) the interests of the forum state; (3)

23

24    [3] Courts have considered several factors when determining whether a defendant's contacts are
     "continuous and systematic," including whether the defendant: (1) is incorporated or authorized

25    to do business; (2) maintains its principal place of business, or offices, property, or employees;
     (3) makes sales or serves the markets; (4) has designated an agent for service of process; (5)

26    maintains corporate files; (6) holds director's meetings; (7) maintains accounts; or (8) makes key
     business decisions, in the forum. *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th

27    Cir. 2000); *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416 (1984); and
     *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 445 (1952).

28

AEROMECHANICAL SERVICES LTD.'S
Case No. C 07-4820 (MMC)             NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1   the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining

2   the most efficient resolution of controversies; and (5) the interest of the states in furthering their

3   social policies." *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed. Cir.

4   1996); *Burger King Corp,* 471 U.S. at 477.  However, the factors considered in the analysis of

5   reasonableness are not sufficient alone to vest the court with jurisdiction over a non-resident

6   defendant when the minimum contacts analysis weighs against the exercise of jurisdiction.

7   *World-Wide Volkswagen ,* 444 U.S. at 294.

8       **D.**    **AMS Does Not Have "Minimum Contacts" To Confer Personal Jurisdiction**

9           Exercising jurisdiction over AMS in this case would contravene the requirements of due

10  process.  AMS does not have the "minimum contacts with the forum such that the maintenance of

11  the suit does not offend traditional notions of fair play and substantial justice."  *See Int'l Shoe Co.*

12  *v. Washington*, 326 U.S. 310, 316 (1945).

13          As discussed above, and in the Declaration of Darryl Jacobs, AMS has done nothing to

14  purposefully avail itself of the benefits and privileges of doing business in California.  AMS is a

15  Canadian company, and has never: had employees (direct or otherwise); maintained facilities;

16  owned, leased or possessed assets; been registered as a business in; or paid tax to, California.

17  Jacobs Decl., ¶¶ 4, 6-12.  AMS has never solicited business in California, directed business

18  communications into California, or entered into business with a California customer.  Jacobs

19  Decl., ¶¶ 13-16.  AMS has never manufactured goods or distributed products in California.

20  Jacobs Decl., ¶ 18.  AMS has never conducted research, testing, or development regarding any of

21  its products or services in California.   Jacobs Decl., ¶ 19.  AMS has never provided any service,

22  repairs or support of its systems in California.  Jacobs Decl., ¶¶ 20-21.

23          Thus, general personal jurisdiction cannot be reasonably applied, as AMS does not have

24  "substantial, continuous and systematic" contacts (*Doe*, 248 F.3d at 923) with California that

25  would "approximate physical presence" therein (*Schwarzenegger*, 374 F.3d at 801).  None of the

26  factors listed in *Perkins*, *Bancroft* or *Helicopteros* weigh in favor of general personal jurisdiction

27

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1    here.[4]

2         Nor can specific personal jurisdiction be applied against AMS in view of the requirements

3    set forth in *Pennington Seed*. Here, AMS: (1) did not "purposefully direct[] its activities at

4    residents of [California];" (2) did not perform "activities in the forum state" relating to Star's

5    claim; or (3) cannot have personal jurisdiction applied against it in a manner that is "reasonable

6    and fair." *See Pennington Seed,* 457 F.3d at 1344.

7         AMS did not avail itself of the benefits and privileges of California law by purposefully

8    directing activities at California, because it neither performed "some type of affirmative conduct

9    which allows or promotes the transaction of business" in California (*Doe*, 248 F.3d at 924), nor

10   had a "purposeful direction" expressly aimed at California. *Schwarzenegger*, 374 F.3d at 803.

11   AMS did not (and does not) direct <u>any</u> business activity toward California. Thus, any contact that

12   AMS might have had with California (if any) can only be categorized as "random, fortuitous, or

13   attenuated," which is not sufficient to show minimum contacts. *AT&T*, 94 F.3d at 590.

14        Nor can Star allege that personal jurisdiction somehow attaches to AMS due to any of its

15   customer's previous actions in California – such as Aloha's flying in and out of California (before

16   Aloha ceased passenger operations). As the Federal Circuit has observed, "doing business with a

17   company that does business in [the forum state] is not the same as doing business in [the forum

18   state]." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir.

19   1998). AMS does not do business in California. Aloha (when it was operating) was in control of

20   where it flew, not AMS, and AMS cannot be argued to be availing itself of California law by such

21   attenuated circumstances.

22        Moreover, even if it could be shown that AMS has "minimum contacts" with California,

23   the bare existence or these contacts "is not sufficient to allow a court to exercise personal

24   _____

     [4] Namely, AMS: (1) is not incorporated or otherwise authorized to do business in California; (2)
25   does not maintain its principal place of business, or any offices, property, or employees in
     California; (3) does not make sales or serve California's markets; (4) has not designated a
26   California agent for service of process; (5) does not maintain corporate files in California; (6)
     does not hold director's meetings in California; (7) does not maintain accounts in California; (8)
27   does not make key business decisions in California. See *Bancroft*, 223 F.3d at 1086; *Helicopteros
     Nacionales*, 466 U.S. at 416 (1984); and *Perkins*, 342 U.S. at 438, 445.
28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1   jurisdiction over a defendant." *Doe*, 248 F.3d at 925.  Jurisdiction is still improper if it would be

2   unreasonable because the burdens on the defendant outweigh the plaintiff's interest in the forum

3   and the state's interest in resolving disputes arising within the forum.  *Burger King*, 471 U.S. at

4   477.  An analysis of such reasonableness requires a balancing of seven factors:

5           [(1)] the extent of purposeful interjection[;(2)] the burden on the
            defendant to defend the suit in the chosen forum[;(3)] the extent of
6           conflict with the sovereignty of the defendant's state[;(4)] the forum
            state's interest in the dispute; [(5)] the most efficient forum for
7           judicial resolution of the dispute; [(6)] the importance of the chosen
            forum to the plaintiff's interest in convenient and effective relief;
8           [and (7)] and the existence of an alternative forum.

9   *Amoco Egypt Oil Co.*, 1 F.3d at 852.  The jurisdictional barrier is "higher" for foreign defendants

10  than for citizens from a sister state.  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993).

11          Here, the burden is high on AMS, as it is being asked to defend an action in a state where

12  it does no business, and has no contacts.  It also cannot be said that California has any particular

13  interest in this litigation, because neither party is from California, AMS has not directed any of its

14  business activities toward California, and there has been no allegation that any substantial portion

15  of the allegedly infringing activities occurred in California.

16          This forum is also inconvenient and inefficient for both parties.  Both Star and AMS are

17  Canadian companies.  D.I. 61, ¶¶ 1 and 5.  AMS has no presence in California, and it is doubtful

18  that Star does either.  While this judicial district is known for providing structured and well-

19  managed patent-related proceedings, there is no reason to believe that another district where AMS

20  does have a presence could not provide a fair and competent proceeding.  Indeed, there is no

21  reason Star could not obtain relief in such other forum.

22          After review of all the evidence, it appears that Star has chosen the Northern District of

23  California for tactical, rather than substantive, reasons.  Star's tactical maneuvering should not

24  outweigh the unfairness and burden inherent in forcing AMS, a foreign company that has not

25  purposefully directed any activities to California, to defend itself here.

26

27

28

1

### III.    ARGUMENT II (JOINDER)

2

A.    **Mr. Vieira Has Not Been Joined, and The Canadian Action Is Still Pending**

3

Star commenced this action, as the sole plaintiff, on September 19, 2007, alleging

4

infringement of the '852 Patent by AMS.  Star alleged that it had the right to bring this action

5

based on an April 22, 2008 License Agreement (the "License Agreement")[5] to Star from the co-

6

owners of the '852 Patent (Viraf S. Kapadia and Hilary Vieira).

7

On April 8, 2008, the Court granted AMS's Motion to Dismiss (D.I. 60) Star's First

8

Amended Complaint, ruling: (1) the License Agreement did not transfer all substantial rights in

9

the '852 Patent to Star; and (2) therefore, Star did not have the requisite standing to bring an

10

infringement action without joining Messrs. Kapadia and Vieira as plaintiffs.  *Id*. at 4.  The Court

11

allowed Star until April 30, 2008 to join Messrs. Kapadia and Vieira to the action.  *Id*. at 5.

12

On April 25, 2008, Star filed a Second Amended Complaint that listed Mr. Kapadia as a

13

plaintiff, and Mr. Vieira as an "involuntary plaintiff."  D.I. 61.  As of today - long past the Court's

14

April 30, 2008 due date - Star has filed no separate motion requesting a Court order joining Mr.

15

Vieira as an "involuntary plaintiff."

16

Further, the License Agreement itself (including its existence) remains at the center of a

17

litigation between Mr. Vieira and Star in the Ontario Superior Court of Justice (hereinafter the

18

"Canadian Action").[6]  In the Canadian Action, Mr. Vieira contends that the License Agreement

19

was terminated over a year ago - on or about March 6, 2007, long before this case was first

20

commenced - and that Star no longer has <u>any</u> rights under the '852 Patent.  Cremen Dec., Ex. B.[7]

21

If the Canadian court determines that the License Agreement has been terminated, the

22

respective plaintiffs' rights in the '852 Patent drastically change.  Specifically, if the License

23

24

_____

[5] Cremen Dec., Ex. A, or D.I. 61, Ex. B.

25

[6] The Canadian Action was filed on May 3, 2007, shortly after Mr. Vieira's employment with Star ended, and remains pending as of the filing of this motion.

26

[7]  This Court may also take judicial notice of this pleading under Fed. R. Civ. P. 201(b)(2).  *See Citi Apts., Inc. v. Markel Ins. Co.*, 2007 U.S. Dist. LEXIS 44469, *21 (N.D. Cal. 2007) ("[t]he

27

Court may take judicial notice of a document filed in another court, not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and filing").

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1   Agreement is no longer in effect: (1) Star has not held <u>any</u> license to the '852 Patent since March

2   6, 2007; and (2) all rights to the '852 Patent now rest with the co-owners, Messrs. Kapadia and

3   Vieira.

4   **B.       Star Has Failed To Join Mr. Vieira As An "Involuntary Plaintiff"**

5          Under Rule 12(b)(7), a party may bring a motion to dismiss for "failure to join a party

6   under Rule 19." Fed. R. Civ. P. 12(b)(7).[8]  In its complaint, Star concedes that Mr. Vieira is

7   unwilling to join this litigation voluntarily (*i.e.*, under Fed R. Civ P. 19(a)(1)).  D.I. 61, par. 4.

8   Thus, Star must proceed under Fed. R. Civ. P. 19(a)(2) to join Mr. Vieira to this lawsuit.  Fed R.

9   Civ P. 19(a)(2) specifies:

10              (2) Joinder by Court Order. If a person has not been joined as
                required, the court must order that the person be made a party. A
11              person who refuses to join as a plaintiff may be made either a
                defendant or, in a proper case, an involuntary plaintiff.
12

13  Fed R. Civ P. 19.

14         The plain language of this subsection requires a "Court Order" to add a party as an

15  "involuntary plaintiff"[9]  This, Star did not do.  Instead of seeking an order of the Court to declare

16  Mr. Vieira an "involuntary plaintiff," Star added a conclusory statement to its Second Amended

17  Complaint that "Hilary Vieira has been joined as an involuntary plaintiff in this action."  D.I. 61,

18  par. 4.  This does not satisfy the requirements of Fed R. Civ P. 19.

19         Because Star did not move the Court to join Mr. Vieira as an "involuntary plaintiff" under

20  Rule 19(a)(2) by the Court's April 30, 2008 deadline, Star's Second Amended Complaint should

21  be dismissed.  The dismissal should be with prejudice for the failure of Star to comply with a

22  Court order.[10]

23  _____

24  [8] This Court may consider facts outside the complaint when considering motions under Rule
    12(b)(7). *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).
25  [9] *See also, e.g., Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1336
    (Fed. Cir. 2003) (specifying that a party was joined and deemed an "involuntary plaintiff" by the
    district court); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376 (Fed. Cir. 2000)
26  (specifying that "the district court ordered Prima Tek I joined as an involuntary plaintiff"); and
    *Robinson v. Heilman*, 563 F.2d 1304, 1305 (9th Cir. 1977) (where a stockholder of a party was
27  "joined by court order as an involuntary plaintiff").
    [10] *See, e.g., Sladek v. Bell Sys. Mgmt. Pension Plan*, 880 F.2d 972 (7th Cir., 1988) ("dismissal
28                                                                                    (continued)

1    Because Mr. Vieira has still not been properly joined to this action, AMS still faces the

2    risk of multiple suits.  AMS should not be placed in situation where it is faced with the risk of

3    multiple recoveries by multiple plaintiffs.  *International Gamco, Inc. v. Multimedia Games, Inc.*,

4    2007 U.S. App. LEXIS 24099 at *11 (Fed. Cir. 2007).  The Court recognized AMS's dilemma in

5    its April 8, 2008 Order.  D.I. 60 at 4.

6    **C.    Star Cannot Show That Mr. Vieira Should Be An "Involuntary Plaintiff," And The
       Case Should Be Dismissed Until The Canadian Action is Complete**

7

8    Courts have found that Rule 19's "involuntary plaintiff" provision should only be invoked

9    when "the party sought to be joined has a duty to allow plaintiff to use his name in the action."

10    *Caprio v. Wilson*, 513 F.2d 837, 840 (9th Cir. Cal. 1975).[11]  Star has failed to make such a

11    showing.  While Star cites the presence of a License Agreement in the Second Amended

12    Complaint (D.I. 61, par. 11), it does not show what duty, if any, Mr. Vieira has to Star.  Indeed,

13    the License Agreeement is completely silent as to whether Star can use Mr. Vieira's name in a

14    patent infringement lawsuit in the United States.

15    Further, Star's rights in the '852 Patent are tenuous – Star's rights are being actively

16    litigated in the Canadian Action, and it is unclear if the License Agreement is still in effect.  Mr.

17    Vieira has alleged that the License Agreement to Star was terminated by him on or about March

18    6, 2007, under Section 9 thereof – a section that reserves very broad termination rights to either

19    Messrs. Kapadia or Vieira.  Cremen Dec., Ex. A, Sec. 9.  Star has not explained how Mr. Vieira's

20    allegation is incorrect, and why the License Agreement would remain in effect at this time.  If the

21    License Agreement is no longer operative, Star would no longer have the right to bring an

22

---

23    (continued)

24    with prejudice should ordinarily result only after the court has ordered the party joined and the
       plaintiff has failed to do so."), and *Joint Mktg. Int'l v. L&N Sales & Mktg.*, 2006 U.S. Dist. LEXIS

25    48017 (E.D.N.Y., 2006) (holding that the case would be dismissed with prejudice if the plaintiff
       licensee failed to join the patent owner by a date certain).

26    [11] *See also Sheldon v. West Bend Equipment Corp.*, 718 F.2d 603, 606 (3d Cir. Pa. 1983) (holding
       that "an outsider may be joined as an involuntary plaintiff only ... where (1) the party to be joined
       has an obligation to permit its name or title to be used to protect rights asserted in the action; (2)

27    is beyond the jurisdiction of the court; and (3) has refused to voluntarily join in the action
       following notification thereof.").

28

1    infringement action, and Mr. Vieira would inarguably have no "duty" to assist such an action.[12]

2    Further, if the License Agreement is no longer operative, Star cannot be maintained as a

3    party to this action.  The only named plaintiff would then be Mr. Kapadia – who would be unable

4    to force Mr. Vieira to join this action, because the Federal Circuit has explicitly stated that "Rule

5    19 does not permit the involuntary joinder of a patent co-owner in an infringement suit brought

6    by another co-owner."  *See Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468

7    (Fed. Cir. 1998).

8    Thus, <u>if the Canadian Court determines the License Agreement is no longer operative,</u>

9    <u>neither Star nor Mr. Kapadia could force Mr. Vieira to join this suit, and it could not proceed</u>.  A

10   determination whether the License Agreement is in effect is therefore crucial.  Thus, until the

11   Canadian Court reaches a decision on the License Agreement, this Court should dismiss, or in the

12   alternative stay, the instant Action.  The Court has the inherent power to "control the disposition

13   of the cases on its docket with the economy of time and effort for itself, for counsel, and for

14   litigants." *Landis v. North Am, Co.*, 299 U.S. 248, 254 (1936).[13]  There are several reasons to

15   dismiss or stay this action.

16       **1.    The Court May Dismiss Star's Complaint**

17   This Court may dismiss Star's complaint until such time as the Canadian Court reaches a

18   decision on the status of the License Agreement.  The Federal Circuit has approved dismissal of

19   patent cases for similar reasons.  For example, in *L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527

20   (Fed. Cir. 1995), the Federal Circuit found that the district court did not abuse its discretion when

21   it dismissed, without prejudice, the claims in a patent suit because the underlying patent claims

22   had been rejected in a reissue application, and there was no indication of when the patent might

23   actually reissue.  *Id.* at 1530.  The Court found that:

24           several policies supported the district court's dismissal without
25           prejudice. The dismissal removed the case from the district court's

26   [12] Star should have presented these arguments in a Motion to add Mr. Vieira as an "involuntary
     plaintiff."  The failure to file this Motion should result in the dismissal of the action, as discussed
27   above.  The failure can also be attributed to the inability of Star to show these factors.
     [13] *See also Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. Cal. 1979).

28

                                                    AEROMECHANICAL SERVICES LTD.'S
                                                    NOT. OF MOTION & MOTION TO DISMISS;
                                                    MPA IN SUPPORT OF MOTION TO DISMISS

1
2
3
4
5

> docket pending the agency appeal. The dismissal also preserved the resources of the court and the parties by preventing further discovery and litigation on claims which might not survive the reissue. In addition, the dismissal eliminated any prejudice to [defendant] from the bare existence of the infringement suit. Finally, the dismissal without prejudice left undisturbed [plaintiff's] opportunity to enforce any patent claims surviving the reissue process.

6    *Id.*

7    Although the ability of Star to enforce the '852 Patent is being decided by a foreign court,

8    rather than the U.S. Patent Office, the circumstances here are similar.  A dismissal will: (1)

9    remove the case from the district court's docket; (2) preserve the resources of the court and

10   parties; (2) reduce the chance of prejudice to AMS from the existence of the suit; and (4) leave

11   undisturbed Star's opportunity to enforce the '852 Patent (should the Canadian Action result in

12   Star's interest therein being maintained).

13   Similarly, the Federal Circuit approved of a dismissal in *Intermedics Infusaid, Inc. v.*

14   *Regents of University of Minnesota*, 804 F.2d 129 (Fed. Cir. 1986).  In *Intermedics*, the Court

15   approved the staying of a patent action until a state court ownership dispute (of the patent-in-suit)

16   between the parties was finalized.  The Federal Circuit cited several factors that supported the

17   stay, including: (1) that the state proceedings had been instituted well before the Federal

18   proceedings; (2) that a particular judgment in the state action would end the Federal proceedings;

19   (3) that the state court was not being called on to resolve matters of Federal law; (4) that the

20   decision of the state court would serve as res judicata; and (5) that there was no prejudice to

21   Intermedics.  *Id*. at 134-135.  These same factors all weight in favor of dismissal here.

22   **2.    Alternatively, The Court May Stay These Proceedings**

23   The Court may also stay the proceedings until such time as the Canadian Court reaches a

24   decision on the status of the License Agreement.  When considering a stay, the court must weigh

25   the competing interests, such as: (1) "possible damage which may result from the granting of a

26   stay," (2) "the hardship or inequity which a party may suffer in being required to go forward,"

27   and (3) "the orderly course of justice measured in terms of the simplifying or complicating of

28

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

Case No. C 07-4820 (MMC)

1  issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v.*

2  *Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

3       Here, it is unclear just which rights that Star, and Messrs. Kapadia and Vieira, have in the

4  '852 Patent. Their respective rights are being determined by the Canadian Court. If Star does not

5  prevail, this suit cannot go forward, and Star would not have been damaged. In contrast, if this

6  action were not dismissed or stayed, AMS would suffer large expenses in time, money, and

7  reputation defending a suit that could very well be found to be lacking a plaintiff. Further,

8  correctly naming the parties in this action has already proven to be of great dispute between Star,

9  Mr. Kapadia and Mr. Vieira. Staying the case until the rights in the '852 Patent are determined

10  would eliminate the ownership issues from this litigation, and remove complicated issues of

11  discovery and questions of foreign law from the litigation.

12       Other district courts have stayed litigation in similar situations. For example, in *Gen-*

13  *Probe, Inc. v. Amoco Corp.*, 1996 U.S. Dist. LEXIS 5393 (S.D. Cal., 1996), the District Court

14  granted a stay of an infringement suit in favor of a state court litigation determining ownership of

15  the patent. The Court cited Amoco's argument (similar to that advanced here) that the plaintiff

16  may be deprived of any interest in the patent-in-suit by the state court litigation, and would

17  therefore lack standing to bring the action. *Id.* at *17. Thus, the Court granted the stay, *inter alia*,

18  "[b]ecause of the massive costs that proceeding with this litigation would entail for the parties and

19  the court." *Id. See also Santrade, Ltd. v. General Elec. Co.*, 1990 U.S. Dist. LEXIS 19260, *4-5

20  (E.D.N.C., 1990) (holding that a stay was appropriate because the state action was filed first, a

21  disposition in the state action could end the federal action, and there was no prejudice to the

22  plaintiffs).

23     **3.**    **The Court May Also Dismiss or Stay the Proceedings Under the *Colorado***

24             ***River* Doctrine**

25       The Court may also dismiss or stay these proceedings under the *Colorado River*[14]

26  abstention doctrine.[15] Several District Courts have found it appropriate to stay patent cases in

---

[14] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

[15] The *Colorado River* Doctrine has been applied by Courts in situations, as here, where there is a
             (continued)

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1    view of ongoing actions in other fora involving the ownership of the patents-in-suit.

2         In *Summa Four v. AT&T Wireless Servs.*, 994 F. Supp. 575 (D. Del. 1998), the Court,

3    using a modified *Colorado River* analysis, stayed an infringement action in favor of a state action

4    determining ownership of the patent-in-suit. *Id.* at 585. Specifically, the Court found that: (1)

5    there was little chance for piecemeal litigation because there were almost no duplicative counts in

6    the state litigation; (2) the state court action was first in time and more advanced; (3) the

7    ownership issue was a state-law issue; (4) the state court action is adequate to protect the

8    plaintiff's rights, because if plaintiff were t prevail in state court, he could still obtain damages in

9    federal court; (5) the state court was substantially assured of reaching a decision before the

10   federal court; (6) the state court decision could obviate the federal litigation, because if the

11   ownership issue went against the plaintiff, the federal action would not continue; (7) the state

12   court dispute includes a colorable ownership dispute; (8) no state court decisions would interfere

13   with the patent law claims; (9) the defendant would be forced to make alternative arguments in

14   federal court; and (10) judicial economy would be substantially advanced. *Id.* at 583-585. Each

15   of these factors are also present in the instant case.

16        In *Applera Corp. v. Illumina, Inc.*, 282 F. Supp. 2d 1120 (N.D. Cal. 2003), Judge Patel

17   cited *Gen-Probe* and *Summa Four*, but distinguished the case at bar from the fact patterns of

18   those cases. Judge Patel indicated that conditions would be aligned in favor of a stay if: (1) the

19   state court litigation was focused on the ownership of the patent; (2) a determination in that forum

20   had a strong chance of obviating the need for patent infringement litigation; and (3) the state court

21   had already been engaged in the proceedings for a lengthy time. *Id.* at 1128. Each of these

22   factors are also present in the instant case.

23        Two other cases, *One Up, Inc. v. Webcraft Technologies, Inc.*, 1989 U.S. Dist. LEXIS

24   11313 (N.D. Ill., 1989) and *Pirkle v. Ogontz Controls Co.*, 1987 U.S. Dist. LEXIS 10555 (E.D.

25   Pa., 1987), also granted stays of infringement actions in favor of a state action determining

26

(continued)

27   parallel foreign court proceeding. *Neuchatel Swiss General Ins. Co. v. Lufthansa Airlines*, 925
     F.2d 1193, 1195 (9th Cir. Cal. 1991).

28

1    ownership of the patent-in-suit.  Both courts focused on the possibility of the state court

2    ownership decision mooting the federal court litigation.  *See One Up* at *14, *18, and *Pirkle* at

3    *5.

4        **4.    The Court Should Not Waste Its Resources**

5        If this case is allowed to proceed, and the Canadian Court determines that the License

6    Agreement has been rescinded by Mr. Vieira, all of the Court's and parties' time, effort, and

7    expense will be for naught.  This Court should not waste its limited resources on a time- and cost-

8    intensive patent litigation when it is unclear whether the named plaintiffs are even able to bring

9    the suit.  AMS should not be forced to go forward and incur substantial expense if, in the end,

10   Star may not have the rights to litigate.  Accordingly, the Court should dismiss this action, or stay

11   proceedings until the Canadian Court completes its analysis.

12                        **IV.    CONCLUSION**

13       In view of the foregoing, AMS respectfully requests that this Court dismiss the current

14   action under one or more of: (1) Fed. R. Civ. P. 12(b)(2) because this Court cannot reasonably be

15   said to have personal jurisdiction over AMS; (2) Fed. R. Civ. P. 12(b)(7) because Star has failed

16   to join the owners of the '852 Patent according to Court Order; and (3) this Court's inherent

17   powers to control its docket because the existence of Star's license to the '852 Patent (and thus

18   the possibility of this action continuing) is currently being litigated in Canada.

19

20   Dated:  May 12, 2008              PAUL, HASTINGS, JANOFSKY & WALKER LLP

21

22                        By:        /s/Kevin C. McCann
                                    Kevin C. McCann (SB# 120874)
23                                  55 Second Street
                                    Twenty-Fourth Floor
24                                  San Francisco, CA 94105
                                    Telephone: (415) 856-7000
25                                  Facsimile: (415) 856-7100
                                    Email: kevinmccann@paulhastings.com
26
                                    Robert M. Masters (DC Bar No. 435623)
27                                  (*pro hac vice*)
                                    Timothy P. Cremen (DC Bar No. 478705)
28                                  (*pro hac vice*)

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS

1

2

3

4

5

6

7    700030 / 28946

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Bhaskar Kakarla (DC Bar No. 488976)
(*pro hac vice*)
875 15th St., N.W.
Washington, DC 20005
Telephone:  (202) 551-1700
Facsimile:  (202) 551-1705
Email: robertmasters@paulhastings.com
Email: timothycremen@paulhastings.com
Email: bhaskarkakarla@paulhastings.com

Attorneys for Defendant
Aeromechanical Services Ltd.

AEROMECHANICAL SERVICES LTD.'S
NOT. OF MOTION & MOTION TO DISMISS;
MPA IN SUPPORT OF MOTION TO DISMISS