1  DANIEL P. ALBERS (admitted *pro hac vice*)
2  JOHN P. WAPPEL (admitted *pro hac vice*)
   BARNES & THORNBURG LLP
3  One North Wacker Drive, Suite 4400
   Chicago, IL  60606
4  Phone No.: (312) 357-1313
5  Fax No.: (312) 357-1313
   Email: dalbers@btlaw.com
6  Email: jwappel@btlaw.com

7  CHRISTINE H. MCCARTHY (admitted *pro hac vice*)
8  BARNES & THORNBURG LLP
   750 17th Street N.W., Suite 900
9  Washington, D.C. 20006-4675
   Phone No.: (202) 289-1313
10 Fax No.:  (202) 289-1330
11 Email:  cmccarthy@btlaw.com

12 JEFFREY K. LEE, CA Bar No. 212465
   KIMBERLY A. DONOVAN, CA Bar No. 160729
13 GCA LAW PARTNERS LLP
   1891 Landings Drive
14 Mountain View, CA  94043
   Phone No.: (650) 428-3900
15 Fax No.: (650) 428-3901
   Email:  jlee@gcalaw.com
16 Email: kdonovan@gcalaw.com

17
   Attorneys for Plaintiff  STAR NAVIGATION SYSTEMS GROUP LTD. and VIRAF KAPADIA
18
                    UNITED STATES DISTRICT COURT
19
                   NORTHERN DISTRICT OF CALIFORNIA
20
                      SAN FRANCISCO DIVISION
21

22 | STAR NAVIGATION SYSTEMS GROUP LTD., | Case No.  C 07-4820 MMC |
   | VIRAF KAPADIA, and | |

23 |                              Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS** |
   | HILARY VIEIRA, | **AND AUTHORITIES IN OPPOSITION TO** |
24 |                    Involuntary Plaintiff, | **DEFENDANT'S THIRD MOTION TO** |
   | v. | **DISMISS; AND REQUEST FOR LEAVE TO** |
25 | AEROMECHANICAL SERVICES LTD., | **CONDUCT JURISDICTIONAL DISCOVERY** |
26 |                              Defendant. | |
   | | Honorable Maxine M. Chesney |
27 | | Date: June 20, 2008 |
   | | Time: 9:00 a.m. |
28 | | Place: Courtroom No. 7, 19th Floor |

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in
Opp'n to Third Motion to Dismiss

# TABLE OF CONTENTS

Page No.

INTRODUCTION ........................................................................................... 1

ISSUES TO BE DECIDED............................................................................. 2

STATEMENT OF RELEVANT FACTS....................................................... 2

A.    The '852 Patent and Star's License....................................... 2

B.    The Infringement Action .......................................................... 3

C.    Defendant AMS and its Contacts to California ..................... 3

    1.    AMS' Publicly-Disclosed Products and Support Services ......... 4

    2.    AMS' Publicly-Disclosed Customers and Operations .............. 5

    3.    AMS' Potential California Customers ...................................... 7

ARGUMENT .................................................................................................. 8

I.    STAR PROPERLY AMENDED THE COMPLAINT PURSUANT TO
    THE COURT'S ORDER ...................................................................... 8

II.    THIS CASE SHOULD NOT BE DISMISSED OR STAYED ............. 10

A.    The Canadian Litigation Cannot Extinguish Star's Right
    to Enforce the '852 Patent for AMS' Infringement
    During the License Term............................................................. 11

B.    Star's License is Currently in Effect........................................... 12

C.    The Canadian Case Does Not Present "Exceptional
    Circumstances" Allowing a Stay or Dismissal........................... 12

    1.    The Canadian Case Cannot Moot
        the Federal Patent Case .......................................... 13

    2.    AMS Cannot Satisfy The "Extraordinary
        Circumstances" Test...................................................... 14

    3.    Delaying Relief Will Prejudice and Harm Star
        And Kapadia.................................................................. 15

D.    AMS's Own Authorities Preclude a Stay or Dismissal.............. 16

III.    PERSONAL JURISDICTION EXISTS DUE TO AMS' PRODUCT
        DISTRIBUTION TO REGISTERED CALIFORNIA BUSINESSES AND
        COMMUNICATIONS NECESSARY FOR USE OF ITS ACCUSED
        SYSTEM WITHIN THE STATE. .......................................................  19

IV.    PLAINTIFF SHOULD BE GRANTED EXPEDITED
        JURISDICTIONAL DISCOVERY TO SUPPLEMENT
        THE PUBLIC RECORD. ...................................................................  20

        A.    Jurisdictional Discovery Will Allow Star to Address
              Specific Factual Claims and Evidence at Issue Here  ...............  21

        B.    Star is Likely to Discover Additional Evidence Supporting
              Personal Jurisdiction  ...............................................................  22

V.    PENDING DEADLINES SHOULD BE ENLARGED AND
        CONTINUED TO ALLOW COMPLETION OF
        JURISDICTIONAL DISCOVERY AND SUBSEQUENT
        SUBMISSION OF BRIEFS ...............................................................  23

CONCLUSION ............................................................................................  24

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1

## **TABLE OF AUTHORITIES**

2

3    <u>Cases</u>                                                                        <u>Page No.</u>

4    *Abbott Labs. v. Diamedix Corp.,*
5        47 F.3d 1128 (Fed. Cir. 1995) ................................................................ 9

6    *Aerotel, Ltd. v. IDT Corp., et al.,*
7        486 F.Supp.2d 277 (S.D.N.Y. 2007) ...................................................... 12

8    *Applera Corporation – Applied Biosystems Group v. Illumina, Inc.,*
         382 F. Supp. 2d 1120 (N.D. Cal. 2003) ................................................. *passim*
9

10   *Asahi Metals Indus. Co. v. Superior Court,*
         480 U.S. 102 (1987) ............................................................................... 21

11
12   *Beverly Hills Fan co. v. Royal Sovereign Corp.,*
         21 F.3d 1558 (Fed. Cir. 1994) ............................................................... 19

13
14   *Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.,*
         444 F.3d 1356 (Fed. Cir. 2006) ............................................................. 19

15
16   *Colorado River Water Conservation Dist. V. United States,*
         424 U.S. 800 (1976) ............................................................................ *passim*

17   *Commissariat a l'Energie Atomique, v. Chi Mei Optoelectronics Corp.,*
18       395 F.3d 1315 (Fed. Cir. 2005) ........................................................ 20, 21

19   *Doe v. Unocal Corp.,*
         248 F.3d 915 (9th Cir. 2001) ............................................................. 22, 23
20

21   *Ekland Marketing Co. of Calif. V. Lopez et al.,*
         2007 U.S. Dist. LEXIS 57749 (E.D. Cal. 2007) .................................... 14
22

23   *Elec. For Imaging, Inc. v. Coyle,*
         340 F.3d 1344 (Fed. Cir. 2003) ............................................................. 19

24   *Finova Capital Corp. v. Ryan Helicopters, U.S.A. Inc.,*
25       180 F.3d 896 (7th Cir. 1999) ................................................................. 12

26   *Genprobe, Inc. v. Amoco Corp.,*
27       1996 U.S. Dist. LEXIS 5393 (S.D. Cal. 1996) ....................................... 17

28

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Goldhaft v. Moorhouse,*
    306 F.Supp. 533 (D.Minn. 1969) ........................................................... 11

*Gulfstream Aerospace Corp. v. Mayacamas Corp.,*
    485 U.S. 271 (1988) ............................................................................ 14

*Helicopteros Nacionales de Colombia v. Hall,*
    466 U.S. 408 (1984) ............................................................................ 19

*Independent Wireless Telegraph Co. v. Radio Corp. of Am.,*
    269 U.S. 459 (1926) ......................................................................... 9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    12 F.3d 908 (9th Cir. 1993) ............................................................ 13, 14

*Int'l Nutrition Co. v. Horphag Research Ltd.,*
    257 F.3d 1324 (Fed. Cir. 2001) ............................................................ 12

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ............................................................................ 19

*Intermedics Ifusaid, Inc. v. Regents of University of Minnesota,*
    804 F.2d 129 (Fed. Cir. 1986)) ............................................................ 18

*Intravascular Research Ltd. v. Endosonics Corp.,*
    994 F.Supp 564 (D. Del. 1998) ............................................................ 17

*L.E.A. Dyntech, Inc. v. Allina,*
    49 F.3d 1527 (Fed. Cir. 1995) ............................................................. 18

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ............................................................................ 13, 16

*Muniauction, Inc. v. Thomson Corp.,*
    502 F. Supp. 2d 477 (W.D. Pa. 2007) .............................................. 15, 16

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,*
    925 F.2d 1193 (9th Cir. 1991) ...................................................... *passim*

*One Up, Inc. v. Webcraft Technologies, Inc.,*
    1989 U.S. Dist. LEXIS 11313 (N.D. Ill. 1989) ....................................... 17

*Pirkle v. Ogontz Controls, Co.,*
    1987 U.S. Dist. LEXIS 10555 (E.D. PA. 1987) ...................................... 17

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

1  *Posner v. Essex Insurance Co., Ltd,*
      178 F.3d 1209 (11th Cir. 1999) .............................................................. 14
2

3  *Prima Tek II, LLC v. A-Roo Company,*
      222 F.3d 1372 (Fed. Cir. 2000) .............................................................. 9
4

5  *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
      148 F.3d 1355 (Fed. Cir. 1998) .............................................................. 21, 22
6

7  *Santrade Ltd. v. General Elec. Co.,*
      1990 U.S. Dist. LEXIS 19260(E.D.N.C. 1990) ...................................... 17
8

9  *Shaffer v. Heitner,*
      433 U.S. 186 (1977) .............................................................................. 19

10  *Smith v. Central Ariz. Water Conservation,*
      418 F.3d 1028 (9th Cir. 2005) .............................................................. 13
11

12  *Summa Four, Inc. v. AT&T Wireless Services, Inc.,*
      994 F.Supp. 575 (D.Del. 1998) .............................................................. *passim*
13

14  *Supermicro Computer Inc. v. Digitechnic,*
      145 F.Supp. 2d 1147 (N.D. Cal. 2001) .................................................... 12
15

16  *TiVo, Inc. v. EchoStar Comm. Corp.,*
      446 F. Supp. 2d 664 (E.D. Tex. 2006)
17      *aff'd in part, rev'd in part on other grounds and remanded,*
      516 F.3d 1290 ........................................................................................ 15, 16
18

19  *Trinitech Industries, Inc. v. Pedre Promotional Products, Inc.,*
      395 F.3d 1275 (Fed. Cir. 2005) .............................................................. 19, 20
20

21  *Turner Entertainment Co. v. Degeto Film GmbH,,*
      25 F.3d 1512 (11th Cir. 1994) .............................................................. 12, 14
22

23  *Water Technologies Corp. v. Calco, Ltd.,*
      576 F.Supp. 767 (D. Ill. 1983) .............................................................. 11
24

25  <u>Codes and Statutes</u>      <u>Page No.</u>

26  CAL. CIV. PROC. CODE § 410.10.......................................................................... 19

27  Fed. R. Civ. P. 12(b)(2) ...................................................................................... 1

28  Fed. R. Civ. P. 12(b)(7) ...................................................................................... 1, 10, 21

CCA Law Partners LLP
1891 Landings Drive
Mountain View, CA  94043
(650)428-3900

**INTRODUCTION**

Defendant Aeromechanical Services Ltd. ("AMS") seeks dismissal of Plaintiffs Viraf Kapadia and Star Navigation Systems Group Ltd.'s ("Star's") Second Amended Complaint alleging infringement of U.S. Patent No. 7,113,852 (the "'852 patent"), a transportation vehicle monitoring patent.

AMS argues under Fed. R. Civ. P. 12(b)(7) that co-inventor-owner Hilary Vieira was improperly joined as an involuntary plaintiff. But AMS ignores the parties' prior briefs identifying Vieira's April 2007 refusal to participate in this action, his legal duty to lend his name to this case, and this Court's resulting April 8, 2008 order (D.I. 60) (the "Order") allowing Star to file an amended complaint joining Vieira.

AMS next claims that this case should be stayed or dismissed without prejudice until a possible determination of Star's license rights in the '852 patent in a pending Canadian employment lawsuit. But the Canadian case can, at most, result in Star losing its rights to enforce the '852 patent only for infringement occurring *after March 6, 2007*. Thus, regardless of the outcome there, Star will continue to enforce the '852 patent to remedy AMS' infringement occurring during the undisputed license term. The Canadian litigation cannot obviate the need for this Court to continue to exercise jurisdiction over this infringement action or remove Vieira's duty to serve as an involuntary plaintiff.

AMS claims that this Court cannot exercise personal jurisdiction because AMS lacks contacts to California, requiring dismissal under Fed. R. Civ. P. 12(b)(2). But, although denied jurisdictional discovery by AMS, based on publicly-available information, Plaintiffs present *prima facie* evidence of personal jurisdiction, *inter alia*, due to AMS (1) purposefully and intentionally placing its accused product into the stream of commerce by leasing and distributing to registered California businesses for trans-Pacific flights, at least one of which foreseeably and regularly communicated with AMS through the accused product from State airspace and airports, and (2) purposely and foreseeably receiving and directing necessary communications from and to California for use of its accused product while its product units were within State airspace and airports.

For the reasons below, AMS' motion should be denied in its entirety. If this Court requires

- 1 -

a more complete evidentiary record, Plaintiffs respectfully request leave to conduct jurisdictional discovery and to continue the hearing date, as proposed in Argument section IV, *infra*.

### ISSUES TO BE DECIDED

1. Whether Star properly amended its Complaint to join owner-inventor Vieira as an involuntary plaintiff where the parties advised the Court regarding Vieira's refusal and duty to participate in this action prior to issuance of the order to join him.

2. Whether a stay or dismissal without prejudice is appropriate pending completion of a Canadian lawsuit alleging that Star's license rights in the '852 patent terminated on March 6, 2007.

3. Whether Plaintiffs have presented a *prima facie* case that personal jurisdiction exists, *inter alia*, in light of AMS (1) purposefully and intentionally placing its accused product into the stream of commerce by leasing and distributing to registered California businesses for trans-Pacific flights, at least one of which foreseeably and regularly communicated with AMS through the accused product from State airspace and airports, and (2) purposely and foreseeably receiving and directing necessary communications from and to California for use of its accused product while its product units were within State airspace and airports.

4. Whether this Court should grant Plaintiffs leave to conduct jurisdictional discovery and continue the hearing on Defendant's Motion to Dismiss until jurisdictional discovery is completed and the jurisdictional issues have been fully briefed.

### STATEMENT OF RELEVANT FACTS

#### A. The '852 Patent and Star's License

Plaintiff Star is a Canadian corporation, with its principal place of business in Toronto, Ontario Canada. Second Amended Complaint (D.I. 61) ("Compl.") ¶ 1. Star offers its "TERRASTAR" on-board aircraft monitoring system that automatically and securely transmits flight data and incident alerts in "real time. On September 26, 2006, United States Patent No. 7,113,852 ("the '852 patent"), entitled "System and Method for Transportation Vehicle Monitoring, Feedback and Control" was duly and legally issued to Viraf S. Kapadia (Star's Chair and Chief Executive Officer) and Hilary Vieira. Compl. ¶¶ 6, 7. *See* Exhibit ("Exh.") 1 to Declaration of Jeffrey K. Lee ("Lee Decl."). Kapadia and Vieira ("the Licensors") granted Star an exclusive license to the '852 patent in an agreement dated April 22, 2002 ("the License"). Compl. ¶ 11. *See* Lee Decl., Exh. 2.

In a Canadian employment suit against Star, Vieira alleges that the License terminated on March 6, 2007 due to a breach by Star. *See* Declaration of Blair Bowen ("Bowen Decl."), ¶¶ 5-6 and Exh. 1, ¶¶ 26-27. Star denies termination and counterclaimed against Mr. Vieira for breach of

- 2 -

1 │ contract on September 4, 2007. *See* Bowen Decl., ¶¶ 9-13 and Exh. 2 (Star's Canadian pleading) at

2 │ ¶¶ 82-83 (Star defense of License termination allegation) and ¶ 90 (Star counterclaim against

3 │ Vieira). The case, still in its early stage after being filed on May 3, 2007, has not progressed beyond

4 │ the pleading stage and no discovery has occurred. *See* Bowen Decl., ¶¶ 14-17. No case deadlines or

5 │ trial date have been imposed by the court. *See* Bowen Decl., ¶¶ 18-19. A trial is at least 24 months

6 │ away. *See* Bowen Decl., ¶ 21.

7 │ **B. The Infringement Action**

8 │ On September 19, 2007, Star filed the present action, amending its complaint on December

9 │ 18 and, then on April 25, 2008, pursuant to this Court's Order. Star seeks to remedy past and

10 │ ongoing infringement of the '852 patent, including through AMS' Automated Flight Information

11 │ Reporting System model 200, ("AFIRS" or the "Infringing System"). Compl. ¶¶ 8-9. AMS has

12 │ offered AFIRS for lease and/or sale since at least 2004. *See* Lee Decl., Exhs. 34, 31, 30, 50 (AMS

13 │ 2004–2007 Annual Reports). Plaintiffs allege "AMS is doing business and has committed acts of

14 │ infringement, including those alleged herein, within the State of California and/or this judicial

15 │ district . . . ." Compl. ¶ 7.

16 │ In the Second Amended Complaint, Star joined inventor Kapadia as a voluntary plaintiff.

17 │ Compl. ¶¶ 3-4. Star Navigation notified Vieira of AMS' infringement of the '852 patent in a March

18 │ 8, 2007 letter from Kapadia. *See* Lee Decl., Exh. 3. Vieira, through his lawyer, declined to join the

19 │ action. *See* Lee Decl., Exh. 4. Vieira's refusal to join the action resulted in the Court's order to

20 │ amend the complaint by April 30, 2008 to join both inventors. Star's counsel again invited Vieira to

21 │ join the action in April 2008, providing updated notice of the suit and the Court's Order. Vieira

22 │ again refused to join. *See* Lee Decl., Exh. 51. Star then amended its complaint to join Vieira as an

23 │ involuntary plaintiff and so notified Vieira. Compl. ¶¶ 3-4; *See* Lee Decl., Exh. 51.

24 │ **C. Defendant AMS and its Contacts to California**

25 │ Defendant AMS is a Canadian corporation with its place of business in Calgary, Alberta

26 │ Canada.[1] Compl. ¶ 5. AMS maintains a corporate website at www.amscanada.com, advertising its

27 │

28 │ ───────────────

[1] Although Darryl Jacobs contends in paragraphs 4-5 of his declaration (D.I. 68) ("Jacobs Decl.") that AMS has "its principal place of business (*and only offices*) in Calgary, Alberta, Canada (emphasis added)" and only U.S. mailing addresses, the company and he, as its president, publicly

- 3 -

1    products and services to investors, customers, and potential customers of AMS, including in

2    California. Public information shows that AMS operates at least one U.S. subsidiary,

3    AeroMechanical Services USA, Inc. *See* Lee Decl., Exh. 6. AMS also publicly identifies Flyht

4    Corporation, a wholly-owned subsidiary, as its agent for sales and marketing for AMS "service

5    agreements, product sales and part supply." *See* Lee Decl., Exh. 30 at 1 and 32. Other AMS

6    subsidiaries and partners relevant to this case may be identified through discovery.[2]

7    ### 1.  AMS' Publicly-Disclosed Products and Support Services

8    ***The Infringing AFIRS product*** - AMS's website states that it offers its AFIRS solution and

9    provides storage, cabin cleaning, and safety solutions for the transportation industry. *See* Lee Decl.,

10   Exh. 7. AMS *leases* its AFIRS system to customers as an aircraft monitoring aid, including for

11   commercial passenger craft crossing the Pacific Ocean into California from Hawaii, Asia, and

12   beyond. Although secretive about customers' identities, AMS generally claims 30 air carriers as

13   current AFIRS customers, including Chinese airlines that may fly across the Pacific Ocean to

14   California, and contracts for 718 AFIRS units. *See* Lee Decl., Exh. 53 at 2-3, 10 (announcing

15   contract with "unidentified North American airline"). Further, public information available on

16   AMS' website indicates that as of May 21, 2008, 20% of AMS' customer base was located in the

17   United States. *See* Lee Decl., Exh. 49 at 7 (showing AMS "customers under contract").

18   Jurisdictional discovery is likely to uncover specific locations in the U.S. where AMS has

19   continuous and systematic contacts and is subject to jurisdiction, if not in this judicial district.

20   In a December 21, 2007 press release, announcing a new (unidentified) customer, Chief

21   Executive Officer Bill Tempany acknowledged: "Our products are connecting our clients around

22   the globe, from the North Pole to the South Pole and from Hawaii to Africa and Asia Pacific *and all*

23

24   reported in 2004, 2005 and 2006 Annual Reports that AMS has an "office" in League City, Texas.
     *See* Lee Decl., Exhs. 30 at 9 (signature) and 53 (offices); 31 at 3 (signature) and 40 (offices); 34 at 5
25   (signature) and 25 (offices).
         On December 10, 2007 counsel for Star contacted AMS counsel to discuss an agreement to
26   conduct jurisdictional discovery. *See* Lee Decl., Exh. 27. Star provided a deposition notice and
     document requests directed to jurisdictional issues. *See* Lee Decl., Exh. 27 (attaching discovery
27   requests). AMS offered a single deponent and sought to severely restrict the scope of discovery.
     Lee Decl., Exh. 29. On January 2, 2007, Star modified its jurisdictional discovery requests and
28   served a revised deposition notice and document requests. *See* Lee Decl., Exh. 46. As of this filing,
     AMS has refused to allow jurisdictional discovery requested by Star. *See* Lee Decl., Exhs. 43 and
     48; D.I. 74.

- 4 -

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Third Motion to Dismiss

1    *points between*." Lee Decl., Exh. 48 at 2. (emphasis added). AMS also reported its rapid success in

2    cornering market share: "This brings the contracted aircraft in 2007 to 507 at 17 airlines. These 3

3    additions increase the total aircraft under contract to 684 from 26 different carriers. There are

4    currently more than 90 aircraft that are equipped for the afirs™ UpTime™ solution."[3]  *Id.*

5            ***Installation and Support Services*** – AMS' website acknowledges its product support

6    services, available anywhere in the world: "At AMS, we pride ourselves on outstanding customer

7    service, efficient installation, and exceptional technical support." Lee Decl., Exh. 9.  AMS promises

8    "efficient installation" of its leased product, stating "[w]orking within the airlines' schedules, AMS

9    provides on-site installation *anywhere in the world*." *Id.* (emphasis added).

10           ***Necessary Communications To Use AFIRS*** – AMS supports use of its leased AFIRS

11   systems for customers through its "web-based client interface," usable anywhere – including

12   California - and a remote access technician.  *See* Lee Decl., Exhs. 9 ("Our easy-to-use web-based

13   *client interface* allows *airline staff* to produce reports and access data quickly and easily . . . . If

14   necessary, AMS retains a remote-access technician available 24/7.") and 52 at 8 (maintenance,

15   dispatch, operations and management personnel access reports via internet).

16           Publicly-available evidence indicates that AMS' ongoing communications from its leased

17   AFIRS units and through its "client interface" are foreseeable and necessary for use and operation of

18   AFIRS, such as at takeoff and touchdown at airports, including when within California.  AMS'

19   AFIRS on-board units send flight data to AMS's servers and AMS then provides real-time

20   performance reports for on-site airplane flight and maintenance crews needing immediate aviation

21   system evaluations.  *See* Lee Decl., Exh. 52. Such information is, by design, collected and provided

22   by AMS in a real-time environment to provide aircraft performance information and prepare the

23   craft for its departing flight (when other transmissions occur with AMS).  *See* Lee Decl., Exh. 36 at

24   3 (describing client interface upon aircraft takeoff).  These communications foreseeably occur at

25   touchdown and/or takeoff wherever an AFIRS-equipped aircraft travels.[4]

26   _____

27   [3]   Other established AMS products for the aviation industry include cabin cleaning systems and
     under-floor stowage units.  *See* Lee Decl., Exhs. 7, 30, 31.

28   [4]   The system disclosed by AMS' own patent gathers and transmits information onboard the
     airplane.  *See* Lee Decl., Exh. 10 at 1:12-1:14 (AMS invention "relates to an aircraft flight data
     management system and, more particularly, to an *on-board data acquisition, storage and*

                                            - 5 -

**2. AMS' Publicly-Disclosed Customers and Operations**

AMS targets sales to aviation original equipment manufacturers ("OEMs"), large and small aviation operators (both military and private) and aviation craft maintenance companies, among others. *See* Lee Decl., Exhs. 11; 17; 32; 37 at 1; 33 at 1; 30 at 3-10; 31 at 3; and 39 (military use of AFIRS by Raytheon of Long Beach, California). Some known AMS customers are registered as active California corporations that maintain operations centers and/or flight routes into and out of the State. At least one of AMS' products - its AFIRS system – regularly entered (or enters) California when installed in aircraft of these customers.

Public information indicates that AMS installs its leased systems and provides ongoing system support services wherever requested. AMS's solicitation, sales, installation and service of its AFIRS system (and other products) may occur in California at any location. Jurisdictional discovery is needed to determine the extent and scope of such state contacts, including with the following.

*Aloha Airlines* - AMS' business within California has included sale of, installation and ongoing service for its Infringing System to Aloha Airlines, a registered California business, for use on its fleet of airplanes. *See* Lee Decl., Exh. 35 at 2; Exh. 12. Although Aloha ceased passenger operations on March 31, 2008, AMS "should continue to enjoy revenue" from Aloha's active, "more lucrative cargo and special operations business." *See* Lee Decl., Exhs. 53 at 9, 54. Aloha's AFIRS-equipped planes operated – and may still operate – in California, including airports in Sacramento, Oakland, San Diego, and John Wayne (Orange County, California). *See* Lee Decl., Exhs. 13 at 3. AMS admits that AFIRS transmissions from planes in California may have occurred.

---

*transmission system.*"). Either manually (through human action) or automatically (through pre-programmed events such as upon engine shutdown), flight data is formatted on the airplane and transmitted – including from the airplane at touchdown and takeoff locations – to AMS servers. *See* Lee Decl., Exh. 10 at Figure 6 (showing data report produced to client after touchdown). Data reports are then created by AMS servers and re-directed back to the on-site airplane operations personnel, airport maintenance crews, flight crews, and/or any person evaluating the airplane's system performance. *See* Lee Decl., Exh. 10 at 6:3-44 (describing transmission of client data to AMS and retransmission of report to the "aircraft crew" onboard the aircraft) and Exh. 30 at 11.

1   Jacobs Decl., ¶ 37. Jurisdictional discovery is needed to determine, with more detail, the extent and

2   scope of past, present and future AMS-Aloha activities in the forum.

3        ***China Eastern Airlines*** - AMS' business within California further includes sale of,

4   installation and service for its infringing product to China Eastern Airlines. *See* Lee Decl., Exh. 14.

5   China Eastern Airlines Co. Ltd. is another active, registered California business. *See* Lee Decl., ¶ 19

6   and Exh. 15. China Eastern also flies across the Pacific Ocean in and out of California, including

7   LAX airport in Los Angeles. *See* Lee Decl., Exh. 16. Although Darryl Jacobs claims that AMS has

8   not installed AFIRS units on China Eastern aircraft flying to Los Angeles, AMS committed to

9   install AFIRS systems on Chinese aircraft already under contract after a June 30, 2008 regulatory

10  approval deadline. *See* Jacobs Decl., ¶ 46; Lee Decl., Exh. 53 at 2. Jurisdictional discovery is

11  needed to determine the extent and scope of such past, present and future state contacts.

12       ***Meggitt Purchase and Installation of AMS' Systems in California*** – AMS advertises a

13  strong relationship with Meggitt, PLC, comprised in part of active, registered California businesses

14  with headquarters and/or operations in California. *See* Lee Decl., ¶ 23 and Exh. 19. *See also* Lee

15  Decl., Exhs. 30 at 6; 17; 18; 20 at 1-2; 36; 38 at 4; 50 at 3.

16       Meggitt manufactures and sells aviation equipment, including (as advertised by AMS)

17  systems incorporating the AFIRS solution. *See* Lee Decl., Exhs. 17, 18, 20. A November 21, 2007

18  report highlighted AMS's relationship with Meggitt as "allowing AeroMechanical to work directly

19  with OEM's (Original Equipment Manufacturers ex: Boeing, Airbus, etc) to have its products

20  installed directly on the airframe and thus reduce installation time." Lee Decl., Exh. 20. The

21  extent of AMS and/or OEM sales, installation, promotions and service of the Infringing System

22  (and other AMS products) within California, by Meggitt (and others), is an issue for jurisdictional

23  discovery.

24       **3. AMS' Potential California Customers**

25       The November 21, 2007 market report found the market potential for AMS' AFIRS solution

26  as "immense" with respect to almost 40 thousand commercial and business aircraft in operation and

27  51 thousand when including turboprops." *See* Lee Decl., Exh. 20. Apart from AMS' acknowledged

28  large-scale commercial passenger airline customers, the company (or its subsidiaries or partners)

- 7 -

1   may solicit, promote, offer, sell, and/or support the Infringing System or its other products to small,

2   independent aviation craft (airplanes, helicopters, etc.) customers. *See* Lee Decl., Exh. 30 at 4

3   (discussing general and helicopter OEMs as customers). Numerous large and small aviation craft

4   operators, manufacturers and maintenance companies reside and operate in California, creating a

5   significant customer base for AMS, its subsidiaries, or partners to solicit.[5] *See* Lee Decl., Exhs. 21,

6   40. AMS' opportunities for contacts with California resident customers seem to arise regularly.[6]

7   Those contacts may only be learned through jurisdictional discovery.

### ARGUMENT

### I.   STAR PROPERLY AMENDED THE COMPLAINT PURSUANT TO THE COURT'S ORDER.

AMS argues that inventor Vieira has not been joined as a party, arguing: (1) Star did not

seek an additional order permitting Star to join Vieira as an involuntary plaintiff and (2) Vieira

cannot be joined until Star identifies a duty by him to "allow plaintiff to use his name in the action."

*See* AMS Mem. at 9-11 and 11-12. But the Court was already briefed on Mr. Vieira's refusal to

join, and his duty to lend his name to the action before allowing Star to file "a Second Amended

Complaint *in which plaintiff has joined the Inventors*" by April 30, 2008. Order at 5.

AMS' too narrowly construes that authorization to amend the complaint. Indeed, the

parties' briefs and evidence submitted in connection with AMS' prior motion to dismiss fully

advised the Court of (1) the adversarial position Vieira has taken toward Star and co-inventor

Kapadia through a Canadian employment lawsuit and (2) Vieira's pre-filing refusal to join this

infringement action against AMS. *See* DI. 43 ("Star 1/4/2008 Mem.") at 3 n.1, 3-4, 15-16 and 16

n.6 (and accompanying exhibits); D.I. 29 ("AMS 12/21/2007 Mem.") at 4, 14 and 14-15; D.I. 49

---

[5]   To aid in marketing, AMS' website promotes its AFIRS solution to small, commercial and business aircraft by recounting the Indian Air Force's use of the system on a worldwide flight in a "microlight" aircraft that followed a route through California, including Stockton and Tracy. *See* Lee Decl., Exh. 23 at 6-7. Third-parties also identified the system's use when installed on small-scale aircraft. *See* Lee Decl., Exhs. 23, 24, and 37.

[6]   AMS appears to have attended conferences with numerous airline customers and/or potential customers in attendance, including commercial flight operators and airplane manufacturers. *See, e.g.*, Lee Decl., Exhs. 30 at 1 (describing March 2007 conference "attended by all the major aircraft manufacturers, leasing companies, industrial banks from around the world and most of the leading airlines in the world"); 25 at 6; 26 at 6. AMS or its subsidiaries' contacts with current or potential California customers may thus occur frequently and would be the subject of jurisdictional discovery.

- 8 -

1  ("AMS 1/11/2008 Mem.") at 5-7. AMS informed the Court that "Star has likely decided not to join

2  the co-inventors because it knows at least *Mr. Vieira would not do so*," cited the ongoing dispute in

3  Canada, and further argued that Star must join the inventors to maintain the action. *See* AMS

4  12/21/2007 Mem. at 14-15 (emphasis added) and AMS 1/11/2008 Mem. at 5-6. AMS also

5  informed the Court that he was beyond process. AMS 1/11/2008 Mem. at 7.

6      Star also identified for the Court its right as an exclusive patent licensee to join Vieira under

7  the Supreme Court's longstanding rule that a patent owner is "duty bound to become a party" to a

8  patent infringement action brought by its exclusive licensee. Star 1/4/2008 Mem. at 16 n.6 (citing

9  *Independent Wireless Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459, 472 (1926)). AMS cited

10  no contrary authority in reply,  and has not now challenged Vieira's duty.

11      After review of the parties' arguments and evidence, the Court expressly (1) identified the

12  two inventors to be joined as parties, (2) noted the ongoing Canadian litigation brought by Vieira

13  against Kapadia and Star, (3) determined that joinder of the inventors was necessary because it

14  "would fully address defendant's concern that, in the absence thereof, defendant could be subject to

15  multiple law-suits based on the same infringement,"  and (4) provided Star an "opportunity to *join*

16  *the inventors*," clearly and specifically directing the "*filing a Second Amended Complaint* in which

17  plaintiff *has joined* the Inventors" by April 30. Order at 1, 2 n.2, 4, 4 n.5, and 5 (emphasis added).

18      After receiving the Order, Star followed the procedures prescribed by *Independent Wireless*

19  by filing its Second Amended Complaint with an averment identifying Vieira's notice of suit and

20  refusal to join as a voluntary plaintiff. *See* Compl. ¶ 4.  In *Independent Wireless*, the plaintiff-

21  exclusive licensee filed its pleading with a single such averment. *Id*. at 462. Defendant-accused

22  infringer argued, *inter alia*, that "the owner of the patent in suit, has not joined in this litigation as a

23  party plaintiff by duly signing and verifying the bill of complaint herein" and sought dismissal." *Id*.

24  The Supreme Court held that the involuntary plaintiff-patentee "was properly joined as a co-plaintiff

25  by the [plaintiff-licensee] upon the twenty-fifth averment of the bill." *Id*. at 475. The Court

26  established that a patent owner was under an equitable duty to allow use of his name and title to

27  protect exclusive licensees:

28          The objection by the defendant that the name of the owner of the patent
        is used as a plaintiff in this suit without authority is met by the

- 9 -

> obligation the owner is under to allow the use of his name and title to
> protect all lawful exclusive licensees and sublicensees against
> infringers, and by the application of the maxim that equity regards that
> as done which ought to be done. . . . The court should on these grounds
> refuse to strike out the name of the owner as co-plaintiff, put in the bill
> under proper averment by the exclusive licensee.

*Id.* at 473 (emphasis added).    The Federal Circuit recognizes this duty.  *See, e.g., Abbott*

*Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1133 (Fed. Cir. 1995) (cited in Star's 1/4/2008

Mem. at 16 n.6); *Prima Tek II, LLC v. A-Roo Company*, 222 F.3d 1372, 1377 (Fed. Cir. 2000)

("[t]he holding of *Independent Wireless* was incorporated into the Federal Rules of Civil Procedure

in 1937 with the adoption of Rule 19. . . . [a]s a general rule, this court continues to adhere to the

principle set forth in *Independent Wireless* that a patentee should be joined, either voluntarily or

involuntarily, in any infringement suit brought by an exclusive licensee.") (citations omitted).  As

demonstrated, *infra*, Star's status as an exclusive licensee cannot be altered by the Canadian case.

     Vieira's duty as a patent owner under *Independent Wireless* makes his joinder as an

involuntary plaintiff fully consistent with Fed. R. Civ. P. 19(a)(2), which provides "If a person has

not been joined as required, the court must order that the person be made a party. A person who

refuses to join as a plaintiff may be made either a defendant or, *in a proper case*, an *involuntary*

*plaintiff*."  (emphasis added).  The Advisory Committee Notes for Rule 19(a) unequivocally stated,

"[f]or *example of a proper case* for *involuntary plaintiff*, see *Independent Wireless Telegraph Co. v.*

*Radio Corp. of Am.*, 269 U.S. 459 (1926)."(emphasis added).  Here, Vieira was made a party

pursuant to the Court's Order after he refused to join as a plaintiff - twice.[7]  Moreover, Vieira's duty

is ongoing because, as addressed *infra*, Star's exclusive license rights prior to March 6, 2007 are not

disputed in the Canadian case and the License remains in effect.

     As a result, Star has complied fully and in good faith with the Court's Order, construing it as

an order for joinder of Kapadia and Vieira.  To the extent that the Court intended otherwise, Star

respectfully requests the Court's clarification and an opportunity to move as necessary.

---

[7]   Despite Vieira's first refusal to join the suit voluntarily in April 2007, Star counsel even took the
extra step of providing Vieira's counsel with a second request to join the suit voluntarily in April
2008. *See* Lee Decl., Exh. 51. Consistent with the evidence previously presented to this Court,
Vieira's attorney reiterated the first refusal to join this action as a voluntary plaintiff, reconfirming
Star's recourse - filing an amended complaint naming him as an involuntary plaintiff by April 30,
2008. *Id.*

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Third Motion to Dismiss

## II.    **THIS CASE SHOULD NOT BE DISMISSED OR STAYED.**

There is no claim of patent infringement parallel to this Court's proceeding in the Canadian court.[8] Nevertheless, AMS contends that this case must be dismissed without prejudice or stayed "until such time as the Canadian Court reaches a decision on the status of the License Agreement," arguing that absent a stay "AMS would suffer large expenses in time, money and reputation defending a suit that could very well be found to be lacking a plaintiff." D.I. 67 ("AMS 5/12/2008 Mem.") at 12-14. *See also, id* at 11-13, 13-14. AMS wrongly (1) concludes that Star has no rights in the '852 patent that allow it to join Vieira; (2) compares the Canadian case to those adjudicating patent ownership; and (3) and misconstrues relevant authorities.

### A.    **The Canadian Litigation Cannot Extinguish Star's Right to Enforce the '852 Patent for AMS' Infringement During the License Term.**

AMS argues that Star's right to sue AMS for *all* infringement of the '852 patent could be extinguished in the Canadian case: "if the Canadian Court determines the License Agreement is *no longer operative*, neither Star nor Mr. Kapadia could force Mr. Vieira to join this suit, and it could not proceed." AMS 5/12/2008 Mem. at 12 (emphasis added). But even AMS conceded that the Canadian court may only determine if Star's license was terminated after March 6, 2007. *Id.* At 9-10; AMS 12/21/2007 Mem. at 4 (Vieira alleges Star's License terminated on or about March 6, 2007).

Therefore, even if considered and adjudicated in Vieira's favor by the Canadian court, that finding would merely eliminate Star's rights in the '852 patent *after* the alleged March 6, 2007 termination date. Because AMS' recent Annual Reports show its infringement through the Infringing System dates back at least to 2004 and Star's rights to bring an action for AMS' infringement *during the license term* will remain, under any result, Star may maintain this patent suit. *See, e.g., Water Technologies Corp. v. Calco, Ltd.*, 576 F. Supp. 767, 773 (N.D. Ill. 1983 ) ("An exclusive licensee may bring suit for damages in his own name after the license has terminated for infringements committed during the pendency of the license.") (citations omitted); *Goldhaft v.*

---

[8]    For this reason alone, AMS' request should be denied. *See Summa Four, Inc. v. AT&T Wireless Services, Inc.*, 994 F.Supp. 575 (D. Del. 1998) (where no "parallelism," *i.e.*, "same parties litigating the same issues in both forums" – abstention is "inappropriate").

- 11 -

1  *Moorhouse*, 306 F. Supp. 533, 536 (D. Minn. 1969) ("the rights which an exclusive licensee has

2  against an infringer are not automatically, without more, terminated by the termination of his

3  exclusive licensing arrangement"). *See also, id.* ("There is no reason why the exclusive licensee

4  should lose his rights on the day the exclusive arrangement ends, especially when it is possible that

5  an infringement would not be discovered until after that date.").

6        Thus, the limited relief regarding the License sought by Vieira in the Canadian case ensures

7  that Star can maintain this infringement action. As a result, Vieira's duty to lend his name to this

8  action remains, allowing this Court to adjudicate AMS's infringement of the '852 patent with all

9  necessary parties as part of the action and mooting AMS' request.

10                 **B.**    **Star's License is Currently in Effect.**

11        AMS's motion also presupposes that the Canadian court will consider Vieira's license

12  termination contention. But the License termination allegations identified by AMS remain a non-

13  material aspect of that employment contract dispute, are disputed by Star, unproven, and

14  unaddressed by that court. Bowen Decl., ¶¶ 9-21. Indeed, as in any litigation, there is no certainty

15  that the Canadian court will even reach the License termination issue. *See* Bowen Decl., ¶ 8.

16  Accordingly, the *status quo* continues with the license in effect unless and until determined

17  otherwise by the Canadian court.

18                 **C.**    **The Canadian Case Does Not Present "Exceptional Circumstances"**

19                      **Allowing a Stay or Dismissal.**

20        AMS' request for a dismissal or stay is governed by the "international abstention" doctrine

21  *See e.g., Supermicro Computer Inc. v. Digitechnic*, 145 F. Supp. 2d 1147, 1149 (N.D. Cal. 2001)

22  ("The international abstention doctrine allows a court to stay or dismiss an action where parallel

23  proceedings are pending in the court of a foreign nation. . . . Abstention is rooted in concerns of

24  international comity, judicial efficiency and fairness to litigants.") (citation omitted). In the Ninth

25  Circuit, a court's analysis must follow the principles governing abstention in federal and parallel

26  state cases, set forth by the Supreme Court in *Colorado River Water Conservation Dist. v. United*

27  *States*, 424 U.S. 800 (1976) (the "*Colorado River* doctrine").[9]  *Neuchatel Swiss Gen. Ins. Co. v.*

28  
---
[9]  A district court should look to the law of its regional circuit, rather than the Federal Circuit to
examine "procedural issues that are not themselves substantive patent law issues," such as staying a

- 12 -

1  *Lufthansa Airlines*, 925 F.2d 1193 (9th Cir. 1991) (vacating district court stay of federal action in

2  deference to parallel Swiss proceedings under *Colorado River* doctrine).[10]

3      In *Colorado River* the Supreme Court explained: "Generally, as between state and federal

4  courts, the rule is that the pendency of an action in the state court is no bar to proceedings

5  concerning the same matter in the Federal court having jurisdiction. . . ." *Colorado River,* 424 U.S.

6  at 817 (internal citation omitted). The Court further cautioned: "The doctrine of abstention . . . is an

7  *extraordinary* and narrow exception to the duty of a District Court to adjudicate a controversy

8  properly before it. Abdication of the obligation to decide cases can be justified under this doctrine

9  only in . . . *exceptional circumstances."* *Id.* at 813 (emphasis added, internal quotation omitted). *See*

10  *also, Intel Corp, v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 912 (9th Cir. 1993) ("The Supreme

11  Court has stressed [] that the *Colorado River* exception to the virtually unflagging obligation of the

12  federal courts to exercise the jurisdiction given them is a narrow one."); *Smith v. Central Ariz.*

13  *Water Conservation,* 418 F.3d 1028, 1033 (9th Cir. 2005) (same).  Moreover, the *Colorado River*

14  abstention analysis is no more deferential in cases involving foreign court proceedings. "[T]he fact

15  that the parallel proceedings are pending in a foreign jurisdiction rather than in a state court is

16  immaterial. We reject the notion that a federal court owes greater deference to foreign courts than to

17  our own state courts." *Neuchatel,* 925 F.2d at 1195.

18      As a result, *Colorado River* abstention is rarely proper, and is particularly unavailable here,

19  where a stay or dismissal would abdicate a federal court's exclusive jurisdiction over questions of

20  federal patent law. *Intel,* 12 F.3d at 913, n. 7 ("the presence of federal law issues must always be a

21  major consideration weighing against surrender.") (quoting *Moses H. Cone Memorial Hospital v.*

22  *Mercury Constr. Corp.,* 460 U.S. 1, 26 (1983)). This, by itself, precludes abstention in this case.

23

24

25

26  case pending foreign proceeding,  *See Aerotel, Ltd. v. IDT Corp., et al.,* 486 F.Supp.2d 277, 282
    (S.D.N.Y. 2007) (citing *Int's Nutrition Co. v. Horphag Research, Ltd.,* 257 F.3d 1324, 1328 (Fed.
27  Cir. 2001) (applying Second Circuit law to issue of comity to decision of foreign court concerning
    patent ownership)).
28  [10]    Other circuits adopted the international abstention doctrine by name. *Turner Entertainment*
    *Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1523 (11th Cir. 1994); *Finova Capital Corp. v. Ryan*
    *Helicopters, U.S.A. Inc.,* 180 F.3d 896, 900-901 (7th Cir. 1999).

- 13 -

1

## 1.  <u>The Canadian Case Cannot Moot the Federal Patent Case.</u>

2
3
4
5
6
7
8
9

As a threshold matter, the foreign action must resolve *all claims* in the federal case before abstention is even considered. *Intel,* 12 F.3d at 913 ("Under the rules governing the *Colorado River* doctrine, the existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay."). "[A] district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will *end* the litigation." *Id.* (quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 277, 108 S. Ct. 1133, 1137 (1988)); *see also Smith,* 418 F.3d at 1033 ("any substantial doubt is sufficient to preclude a stay").

10
11
12
13
14
15
16
17

As discussed above, the Canadian litigation cannot preclude Star's claim to infringement of the '852 patent by AMS prior to March 6, 2007. This determination is "dispositive" and alone warrants denial of AMS' request. *See, e.g., Ekland Marketing Company of California v. Lopez, et al.,* 2007 US Dist. LEXIS 57749 at *12 (E.D. Cal. 2007) ("substantial doubt as to whether the state proceedings will resolve the federal action" precluded stay under international abstention doctrine and made it "unnecessary . . . to weigh the other factors included on the [] analysis. ") (citing *Intel Corp.,* 12 F.3d at 913 and n.7). Accordingly, a stay or dismissal without prejudice is precluded and this Court need go no further.

18
19

## 2.  <u>AMS' Cannot Satisfy The "Extraordinary Circumstances" Test.</u>

20
21

Even if the analysis proceeds, abstention is inappropriate. This Court articulated the Supreme Court's considerations for abstention of a patent infringement claim in light of a related state court proceeding in *Applera Corporation – Applied Biosystems Group, v. Illumina, Inc.*:

22
23
24
25
26
27

> (1) where real property is involved, which court is first to assume jurisdiction over that property; (2) whether the federal forum is inconvenient; (3) whether one course of action may avoid piecemeal litigation; and (4) which of the concurrent fora first obtained jurisdiction. . . .After careful consideration of all of these factors, a court must weigh the benefits of abstention against its obligation to exercise jurisdiction. . . . The Supreme Court, in *Moses H. Cone Memorial Hospital  v. Mercury Const. Corp.,* added two more factors to the balance, noting that (5) whether the action involved federal question subject matter should weigh heavily in the balance, and that courts should consider (6) whether the state court forum was adequate to protect the federal plaintiff's rights.

28

- 14 -

1   382 F. Supp. 2d 1120, 1125-26 (N.D. Cal. 2003) (Patel, j.) (citations omitted). The *Applera* court

2   further stated that "[t]he same standard applies whether the abstention is in the form of a dismissal

3   or a stay."[11]  *Id.*  at 1126 (citation omitted). These factors weigh heavily against a stay or dismissal

4   here.

5          In *Applera*, this Court, most heavily weighed factors (3) , (4) and (5) above in declining to

6   abstain. The Court found that the state court proceeding could moot the need for patent litigation.

7   282 F. Supp. 2d at 1126-27. Although the relative filing dates and progress of the litigations there

8   showed that the state court litigation was further advanced due to depositions taken, documents

9   exchanged and an established trial date, the "State court progress toward resolution of the licensing

10  question is insignificant to date, and it is not clear that such matters will be decided in state court or

11  arbitration prior to their determination in this court." *Id.* at 1127. Perhaps most importantly, a

12  federal court's exclusive jurisdiction over patent cases "weighs heavily against a stay" because "the

13  presence of federal question subject matter significantly narrows the circumstances in which a

14  district court may abstain from jurisdiction." *Id.*

15         The *Applera* analysis applies with equal or greater force here. The limited finding that

16  Vieira seeks in the Canadian case assures that it will not eliminate Star's right to prosecute this

17  federal action. The first-filed Canadian action has not advanced beyond the pleading stage, showing

18  a lack of progress toward resolving Vieira's license termination claim. Finally, exclusive federal

19  jurisdiction over patent cases further precludes a stay or dismissal of this action.

20              **3.  Delaying Relief Will Prejudice and Harm Star and Kapadia.**

21         The stay sought could last 24 months or more. *See* Bowen Decl., ¶ 21. Appeals and other

22  delays requested in Canada could significantly extend the period during which AMS continues to

23  infringe the '852 patent. Granting a stay or dismissal in this case will prejudice and significantly

24  harm Star and Kapadia's interests.

25         As Star's only competitor in this new technology product market, the very fact of AMS'

26  ongoing infringement and unlawful competition through acknowledged distribution of the accused

27

28  [11]   Where justified, a stay is favored over dismissal in foreign litigation matters. *See  Posner v. Essex Insurance Company*, Ltd., 178 F.3d 1209, 1224 (11th Cir. 1999) (citing *Turner*, 25 F.3d at 1523).

- 15 -

AFIRS system in Star's exclusive market has caused and will continue to cause Star: (1) to lose

sales reducing the market share of Star's product; (2) to lose business opportunities to AMS; and (3)

to spend time, effort and resources competing with AMS rather than enjoying the patent exclusivity

it owns and engaging in product development. *See Muniauction, Inc. v. Thomson Corp.*, 502 F.

Supp. 2d 477, 482 (W.D. Pa. 2007) ("If plaintiff cannot prevent its only competitor's continued

infringement of its patent, the patent is of little value").  Star faces losing customers and market

share to AMS at this critical time in this young market's development if AMS succeeds in further

delaying Star's relief in this case and continues its infringing activities unfettered. *See TiVo, Inc. v.*

*EchoStar Comm. Corp.*, 446 F. Supp. 2d 664, 669-70 (E.D. Tex. 2006), *aff'd in part, rev'd in part*

*on other grounds and remanded,* 516 F.3d 1290.  Monetary damages from AMS' ongoing, illegal

infringement cannot compensate Star for lost opportunities and lost goodwill in customer

relationships arising from AMS' infringement. *Muniauction*, 502 F. Supp. 2d at 482-83, *TiVo*, 446

F. Supp. 2d at 669-70.

    Moreover, staying this case for 24 months (or more) while the Canadian case resolves, may

result in AMS becoming unable to pay an eventual award to Plaintiffs.  AMS suffers from "a sizable

net loss" despite rapidly increasing revenues from its AFIRS system. *See* Lee Decl., Exh. 53 at 5

(based on its AMS' 2007 Annual Report).  As a result, delaying this case further may increasingly

prejudice Plaintiffs' ability to recover for AMS infringement.

### D.    AMS's Own Authorities Preclude a Stay or Dismissal.

    Although filed first, the Canadian case is a commercial contract dispute between private

parties that does not create the "exceptional circumstances" required by the *Colorado River*

doctrine.  In *Neuchatel* the parties were engaged in parallel proceedings in Switzerland and the

United States over lost cargo.  Although, the Swiss case was farther along than the U.S. case, the

Ninth Circuit found none of these circumstances warranted the stay:

> In this case . . . there are no "exceptional circumstances" justifying the
> invocation of the *Colorado River* abstention doctrine. What we have
> here is an *unexceptional commercial dispute . . . [T]he mere fact that*
> *parallel proceedings may be further along does not make a case*
> *"exceptional"* for the purpose of invoking the *Colorado River*
> exception to the general rule that federal courts must exercise their
> jurisdiction concurrently with courts of other jurisdictions.

*Neuchatel,* 925 F.2d at 1195 (emphasis added; citations omitted).

- 16 -

1       Ignoring the relevant law, AMS relies on authorities that do not support its request. In

2   *Summa Four v. AT&T Wireless Servs.*, 994 F. Supp. 575, 581 (D. Del. 1998), the District of

3   Delaware determined that *Colorado River* abstention was not and might never be "appropriate." *See*

4   *also, id.* ("Although there is overlap between state and federal proceedings, the fact remains that the

5   patent infringement is within the exclusive jurisdiction of the federal district court; the state court

6   cannot address these patent infringement issues."). There, the federal patent suit and state action

7   addressed different issues and were not "parallel" for *Colorado River* analysis purposes. *Id.*

8       In, *Applera Corp. v. Illumina, Inc.*, 282 F.Supp.2d 1120, 1129 (N.D. Cal. 2003), this Court

9   commented that it was asked "to look beyond *Colorado River* and *Moses H. Cone*, and to follow the

10  reasoning of *Summa Four*, an action decided in the Delaware district court." Judge Patel

11  commented that the *Summa Four* court "defined a new and somewhat idiosyncratic set of factors to

12  guide an abstention decision." *Id.* at 1129-1131. Significantly, a the outset, she stressed the

13  advanced stage of the state litigation in *Summa Four*, where the state court had "worked through

14  more than 230,000 pages of documents, that more than fifty depositions had been heard, and that

15  the trial there was scheduled to begin within three months." *Id.* at 1129. The *Applera* court then

16  considered the *Summa Four* factors to determine that no stay was warranted: (1) there was no

17  substantial assurance of a first judgment in state court; (2) the lack of progress in the state court on a

18  potentially dispositive license question "weighed heavily against granting a stay;" (3) the potential

19  of a stay to advance judicial economy "is too far from its realization . . . to counsel a stay."[12]

20  *Applera*, 282 F.Supp 2d at 1129-1131 & n.7.

21      In the present case, each factor precludes AMS' request. The Canadian litigation is not

22  certain to reach Vieira's termination contention prior to this Court's adjudicating AMS'

23  infringement, has no dispositive issue affecting this patent case, and has not advanced past the

24

25

26  [12]    In contrast, the *Summa Four* judge denied a stay request the same day using the new test in

27  *Intravascular Research Ltd v. Endosonics Corp.,* 994 F.Supp. 564, 572 (D. Del. 1998), upon
    finding "no assurance" that the first-filed state court litigation would come to judgment prior to the
    federal patent case "nor that it would even reach any issue that might obviate the need for federal

28  [patent] litigation." *Applera*, 282 F.Supp.2d at 1129. The slow pace of the state case limited its
    ability to obviate the federal case and "weighed heavily against granting a stay." *Id.* at 1130.

- 17 -

1   pleading stage.  Also, the potential to advance judicial economy is non-existent because Star may

2   continue to prosecute its infringement action here.

3          AMS also mistakenly relies on cases involving parties potentially lacking patent ownership

4   status and where advanced state proceedings could obviate the federal patent case.[13]  Here, in

5   contrast to the cases AMS cites, the cases are not parallel, no dispute of the ownership of the '852

6   patent has been raised, the Canadian action cannot obviate Star's infringement claim and, being

7   filed only several months before this action, has not progressed beyond the pleading stage.

8          Moreover, Star cannot rely on *L.E.A. Dyntech, Inc. v. Allina*, 49 F.3d 1527, 1530 (Fed. Cir.

9   1995), where the district court dismissed without prejudice pending patent declaratory judgment

10  claims and infringement counterclaims after the Patent Office issued a Final Office Action in

11  reissue proceedings rejecting all claims of the patent-in-suit.  The examiner's rejection issued over

12  two years after the suit was filed in the district court and seventeen months after the reissue

13  application was filed with the Patent Office.  *Id.*  The Federal Circuit noted that "the duration of an

14  appeal of the Final Office Action was indefinite, and the outcome of such an appeal unclear."  *Id.*

15  The court stressed that "[i]n this factual setting" dismissal without prejudice was supported because,

16

17  ─────────────────────────────────────────────────

    [13] *See One Up, Inc. v. Webcraft Technologies, Inc.*, 1989 U.S. Dist. LEXIS 11313, *9-*15 (N.D. Ill.
18  1989) (granting stay of a cross claim in a patent infringement case after determining that "parallel"
    state case adjudicating patent ownership because it avoided piecemeal litigation over ownership of
19  the patent by obviating federal infringement claims, the state court was better suited to resolve
    certain state contract law claims, and the state court proceedings were "well advanced" through
20  discovery in contrast to the federal case); *Pirkle v. Ogontz Controls, Co.*, 1987 U.S. Dist. LEXIS
    10555 *4-*7 (E.D. Pa. 1987) (granting stay pending state action that would settle ownership of the
21  patents in suit because, *inter alia*, it was unfair to require the parties to litigate patent ownership in
    two fora , the state case was almost three years ahead of the federal case, and the state court could
22  determine whether the federal infringement plaintiff possessed standing); *Genprobe, Inc. v. Amoco
    Corp.*, 1996 U.S. Dist. LEXIS 5393 (S.D. Cal. 1996) (staying federal patent suit in favor of state
23  court decision on whether the accused infringer held ownership of the patent because that
    proceeding had a strong chance of obviating the need for the patent infringement case, the state
24  court had over two years of history with the proceedings and set a trial date for only one month after
    the federal court stayed its case); *Applera*, 282 F.Supp. 2d at 1128 (discussing *Genprobe*); *Santrade
25  Ltd. v. General Elec. Co.*, 1990 U.S. Dist. LEXIS 19260, *4-5 (E.D. N.C. 1990) (staying patent
    infringement action in favor of state action addressing defendant's claimed ownership of patents-
26  in-suit because state action had progressed to discovery and could have "moot[ed] the infringement
    action" by granting defendant ownership in the asserted patents); and *Intermedics Ifusaid, Inc. v.
27  Regents of University of Minnesota*, 804 F.2d 129, 134 (Fed. Cir. 1986) (applying *Colorado River*
    considerations to affirm a "stay" of patent declaratory judgment action pending a state suit that was
28  "well advanced by the time the stays were sought in federal court," federal plaintiff had "delayed
    many months in bringing the [federal] action even after the [state] action began.," and judgment in
    the state lawsuit "could well moot the patent suit.").

                                      - 18 -

1   *inter alia,* (1) the dismissal removed the case from the docket pending an indefinite administrative

2   appeal, and (2) dismissal prevented discovery on claims that might not survive the reissue. *Id.*

3   Here, the factual context is entirely different, including because no reissue application is pending,

4   no claims of the '852 patent are in question, and no discovery on mooted claims has been requested.

5       Finally, AMS claims that judicial efficiency can only be served by staying or dismissing this

6   case ring hollow in light of the limited effect the Canadian case may have on Star's rights to

7   maintain this action. Moreover, when reversing a stay in an international abstention matter, the

8   Ninth Circuit expressed much less concern about international deference and efficiency gains, than

9   about preserving access to the federal courts: "As we said in *Tovar v. Billmeyer,* 'conflicting results,

10  piecemeal litigation, and some duplication of judicial effort is the unavoidable price of preserving

11  access to . . . federal relief.'" *Neuchatel,* 925 F.2d at 1195 (citations omitted).

### III. PERSONAL JURISDICTION EXISTS DUE TO AMS' PRODUCT DISTRIBUTION TO REGISTERED CALIFORNIA BUSINESSES AND COMMUNICATIONS NECESSARY FOR USE OF ITS ACCUSED SYSTEM WITHIN THE STATE.

12

13

14      District courts are bound by the law of the Federal Circuit on matters of personal jurisdiction

15  involving patent claims. *Elecs. For Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1348 (Fed. Cir. 2003).[14]

16  Where no jurisdictional discovery has occurred, a plaintiff need "'only to make a prima facie

17  showing' of jurisdiction to defeat the motion to dismiss." *Trinitech Industries, Inc. v. Pedre*

18  *Promotional Products, Inc.,* 395 F.3d 1275, 1282 (Fed. Cir. 2005) (citations omitted). The district

19  court "must construe all pleadings and affidavits in the light most favorable to the plaintiff." *Id.* at

20  1282-83 (citations omitted).

21      Personal jurisdiction over AMS is established under Constitutional standards.[15] The United

22  States Constitution requires that a foreign defendant have such contacts with the forum state that

23  maintaining the action would not offend "traditional notions of fair play and substantial justice."

24  *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). The Supreme Court set forth

25

26

27  [14]  *See also, Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564-65 (Fed. Cir. 1994); *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed. Cir. 1995); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1361 (Fed. Cir. 2006).

28  [15]  *See* California Code of Civil Procedure § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

- 19 -

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in Opp'n to Third Motion to Dismiss

1    Constitutional standards for both general and specific jurisdiction in *Helicopteros Nacionales de*

2    *Colombia v. Hall*, 466 U.S. 408, 414-15 (1984). Principles of general jurisdiction dictate that a party

3    may be subject to suit on all claims in a forum, wherever they arise, when that defendant has

4    "continuous and systematic" contacts with the forum state whether or not those contacts relate to the

5    cause of action. *Helicopteros*, 466 U.S. at 414-15. Specific jurisdiction is assessed by the

6    "relationship among the defendants, the forum and the litigation." *Shaffer v. Heitner*, 433 U.S. 186,

7    204 (1977).

8        Despite having no discovery on the issue, Star presents public evidence above supporting the

9    exercise of specific personal jurisdiction over AMS, including (1) that AMS' Infringing Systems

10   have entered the forum regularly and at numerous airport entry points via AMS' leasing of its

11   AFIRS units to registered California corporations, including to Aloha, and (2) AMS has obtained

12   (and possibly directed) communications necessary to use the system from and to customers in

13   California through its AFIRS units and web-based customer interface.[16]

14       AMS has and may continue to lease and distribute at least its AFIRS product to registered

15   California businesses Aloha (or its successor(s)) and China Eastern Airlines that operated, continue

16   to operate, and/or will operate flights to and from state airports.[17]   As described above, AMS

17   necessarily obtains and directs communications necessary for use of its system from and/or to the

18   airline personnel in California when and where those customers land and take-off. AMS also

19   maintains its product installation and distribution relationship with Meggitt PLC.

20       AMS admits on its website that it sells, installs, services and supports its products for its

21   customers, including via the company's web-based service accessible by customer personnel,

22   "24/7" and "anywhere in the world." At least two such customers, Aloha and China Eastern

23   Airlines, have entered and/or maintained operations and staff in California airports.

24

25   [16]   AMS president Darryl Jacobs concedes that Aloha airplane with the leased AFIRS units installed "may have sent data from California airspace." Jacobs Decl., ¶ 37.

26   [17]   Although AMS president Jacobs' testimony that Aloha is not a current customer of AMS,
27   Jacobs Decl., ¶ 31, public information contradicts his testimony. *See* Lee Decl., Exh. 53 at 9-10 (Aloha continuing cargo operations "so [AMS] should continue to enjoy revenue.") Moreover,
28   Aloha's AFIRS-equipped planes may enter California after being sold by Aloha. *See* Lee Decl., Exh. 54.

- 20 -

1    In sum, AMS has intentionally and purposefully placed its Infringing Systems into the

2    stream of commerce by leasing to customers that are registered to do business in California (such as

3    Aloha), and who direct AFIRS-equipped flights to the foreseeable, known and intended destination

4    of California.  Moreover, AMS cannot reasonably deny that it foresaw, knew and intended that it

5    would use and operate its AFIRS systems through communicating with those flights in California

6    airspace and/or on the ground while its systems were in the State.  Indeed, AMS' very purpose is to

7    communicate with its AFIRS units and provide constant, "real time" flight performance information

8    for airline personnel – including plane maintenance staff - upon request and at scheduled

9    transmission times.  AMS cannot seriously contend that it has not (and will not) receive and direct

10    these necessary communications from and/or to customers operating flights to California when

11    within the State.  As a result, AMS has purposely availed itself of California's airspace and airports.

12    AMS' claims a business presence reaching "anywhere in the world."  Apparently, California

13    is now not on AMS' world map.  AMS argues that it is now too burdensome to defend its activities

14    directed into the State.  But AMS proposes no more convenient or efficient district to resolve

15    Plaintiffs' infringement claims.  AMS would likely claim an equal or greater burden *wherever else*

16    Plaintiffs brought suit. Nevertheless, AMS' operation and support of its products "anywhere in the

17    world" – including when in California - and its acknowledged goal to serve the worldwide market

18    makes the exercise of jurisdiction reasonable here.  In addition, infringement of the '852 patent

19    cannot be litigated in Canada.  California has an interest in this litigation because this dispute arises

20    in large part from use of the Infringing System on trans-Pacific flights to California airspace and

21    airports.  Cessation or continued such use of AMS' flight monitoring systems by state-registered

22    airlines concerns aviation and public safety within California's borders.  As a result, the exercise of

23    jurisdiction in this Court is reasonable and fair to AMS, the State's interests, and Plaintiffs.

24    **IV.    PLAINTIFF SHOULD BE GRANTED EXPEDITED JURISDICTIONAL**
25    **DISCOVERY TO SUPPLEMENT THE PUBLIC RECORD.**

26    Federal Circuit caselaw further governs jurisdictional and other discovery where substantive

27    patent law is involved.  *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395

28    F.3d 1315, 1323 (Fed. Cir. 2005) ("*Chi Mei*") (vacating dismissal and remanding for jurisdictional

- 21 -

1    discovery and reconsideration). The Federal Circuit directs district courts entertaining patent claims

2    to allow jurisdictional discovery as appropriate "where the existing record is 'inadequate' to support

3    personal jurisdiction and 'a party demonstrates that it can supplement its jurisdictional allegations

4    through discovery." *Trinitech*, 395 F.3d at 1283 (citations omitted). A plaintiff makes a sufficient

5    threshold showing to merit jurisdictional discovery when "factual allegations *suggest the possible*

6    *existence* of requisite contacts between the defendant and the forum state with 'reasonable

7    particularity.'"[18] *Chi Mei*, 395 F.3d at 1323 (emphasis added; citation omitted).

8
9    ### A. Jurisdictional Discovery Will Allow Star to Address Specific Factual Claims and Evidence at Issue Here.

10    Star presents above specific, publicly-available information showing AMS contacts to the

11    State. The evidence and allegations "suggest the possible existence of specific contacts" required

12    by *Chi Mei* and must further be addressed through jurisdictional discovery.

13    AMS challenges this Court's exercise of personal jurisdiction through its President, Mr.

14    Jacobs. Although he denies that AMS has contacts to California, significant evidence gaps

15    characterize the jurisdictional record. Indeed, Jacobs' focuses on past actions of AMS. He does

16    not address whether AMS has future commitments requiring it to avail itself of California.

17    AMS appears to focus its general jurisdiction "no-contacts" argument on its distribution of

18    its Infringing System, which is relevant to specific jurisdiction, but does not provide details of its

19    activities regarding its *other* products for general jurisdiction analysis. By ignoring its other

20    products and supporting activities, AMS creates gaps in the evidentiary record regarding AMS'

21    business solicitation, operation, services, and installation and support of all its products as they may

22
23

---

24    [18] Requests for jurisdictional discovery may be made, as here, through opposition to a Rule 12(b)(2) motion. In *Chi Mei*, the Federal Circuit determined that the district court abused its discretion by

25    denying plaintiff's request for jurisdictional discovery as untimely when initially presented in an opposition to a Rule 12(b)(2) motion. 395 F.3d at 1322-23, 1324. The court found discovery

26    warranted to evaluate defendant's "intent and purpose" to serve Delaware's market and placement of its product into the stream of commerce, including through marketing arrangements and use of its website use as a "channel [] for providing regular advice to its customers in the forum state." *Id.* at

27    1323-24 (discussing stream of commerce jurisdiction in *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102 (1987)). Public information above establishes that AMS' marketing practices (*e.g.*,

28    through Meggitt and/or subsidiaries such as Flyht), its intent and purpose to place its AFIRS systems in to the stream of commerce and to serve the California aviation market, its "client interface," and web-based services should subject AMS to similar discovery.

- 22 -

1 | relate to California residents. Discovery is needed to address AMS business activities relevant to
2 | general jurisdiction.

3 |       AMS mistakenly relies on *Red Wing Shoe Company v. Hockerson-Halberstadt, Inc.*, 148
4 | F.3d 1355 (Fed. Cir. 1998). AMS argues without context that contacts with California cannot exist
5 | despite AMS' customers' California business activities. AMS Mem. at 17. That court found a
6 | defendant that sold no products and merely licensed others to manufacture and sell shoes lacked
7 | contacts with Minnesota despite its licensees contacts there because "'the *unilateral activity* of
8 | another party or third person' are not attributable to a defendant." *Red Wing*, 148 F.3d 1361
9 | (citation omitted, emphasis added). Yet, that court's rationale raises questions in the present case.
10 | For example, what influence, conditions, agreements, etc., did or will AMS have – through
11 | contracts or otherwise - regarding the lease, use, installation, service and support of its AFIRS and
12 | other products with respect to California, including through Aloha, China Eastern and Meggitt?

13 |     The *Red Wing* court stressed its consideration of contacts by a party that maintained
14 | "continuing obligations" through a contractual relationship with a forum resident in the forum state.
15 | *Red Wing*, 148 F.3d 1362 ("What was critical was . . . contacts with that resident in the forum
16 | state."). Accordingly, *Red Wing* raises the issue of the extent of the contacts between AMS and its
17 | customers such as Aloha within California. For example, to what extent did, does, and will AMS
18 | install, support, service, or communicate with California-registered businesses Aloha and China
19 | Eastern (and other customers) when in California? Also, what contacts does and/or will AMS have
20 | with Meggitt in California? The record is inadequate regarding details on such highly relevant
21 | questions. Jurisdictional discovery would address such issues for the Court.

22 | **B. Star Is Likely to Discover Additional Evidence Supporting Personal Jurisdiction.**

23 |     Star presented evidence above showing that AMS – or its subsidiaries - may actively solicit
24 | customers from a large, untapped aviation industry client base. Potential customers include
25 | California businesses and/or involve provision of products or services into the State. Based on this
26 | evidence, Star is likely to discover additional evidence supporting specific and/or general
27 | jurisdiction, including the reasonableness and relative fairness to AMS of litigating in this Court.
28 |

- 23 -

1    In particular, discovery is likely to reveal the extent of AMS contacts with California

2  through its subsidiaries, AMS USA and Flyht Corporation.  A district court may exercise general

3  jurisdiction over a parent company where a subsidiary is the parent's general agent. *See Doe v.*

4  *Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001) (agency test for personal jurisdiction over a parent

5  company is "satisfied by a showing that the subsidiary functions as the parent corporation's

6  representative in that it performs services that are sufficiently important to the foreign corporation

7  that if it did not have a representative to perform them, the corporation's own officials would

8  undertake to perform substantially similar services."). The "question to ask is . . . whether, in the

9  truest sense, the subsidiar[y's] presence substitutes for the presence of the parent." *Id.* at 928-29.

10  Here, sales, marketing, maintenance and support functions for AMS are likely performed by AMS

11  subsidiaries. Thus, Star seeks discovery to confirm whether AMS subsidiaries, including Flyht and

12  AMS USA, "substitute[] for the presence of the parent" in California.[19] *Id.* at 929.

13    AMS is highly guarded with respect to its customers' identities and prospective activities.

14  Nevertheless, Star has identified public information showing that AMS had and/or has contacts

15  through its leased AFIRS system and supporting services in California.  Additional information

16  regarding AMS' business activities and non-AFIRS related activities is unavailable other than

17  through discovery.  To the extent further evidence supporting jurisdiction over AMS may be

18  needed, that should be obtained through jurisdictional discovery.

### V.    PENDING DEADLINES SHOULD BE ENLARGED AND CONTINUED TO ALLOW COMPLETION OF JURISDICTIONAL DISCOVERY AND SUBSEQUENT SUBMISSION OF BRIEFS.

Plaintiffs respectfully request that the Court adopt the following schedule to allow completion of expedited jurisdictional discovery and full briefing of the issues:

A.    *Jurisdictional Discovery*: Plaintiffs request a sixty (60) day period for jurisdictional discovery.

B.    *Expedited Discovery*: Plaintiffs request that the Court order the following:

[19]  Jacobs purports to cover all AMS subsidiaries in his statements; however he provides no basis for his ability to do so and has not identified those other entities for which he claims to speak.

- 24 -

(1) that AMS respond to Plaintiffs' Requests for Production of Documents and Things within fourteen (14) days of its decision on the present motion;

(2) that all future responses to written discovery requests be reduced from thirty (30) days to fourteen (14) days;

(3) that third-party responses to any Subpoena Duces Tecum occur within seven (7) days; and

(4) that all depositions take place on seven (7) days notice.

C.    ***Briefing***: Plaintiffs request that the Court provide time to respond to AMS' Third Motion to Dismiss up to and including twenty-one (21) days after the close of jurisdictional discovery and provide AMS up to and including fourteen (14) days to file a reply in support of its Third Motion to Dismiss.

D.    ***Hearing Date on Defendant's Motion to Dismiss***: Plaintiffs request that a hearing date be scheduled shortly after submission of all briefing.

## CONCLUSION

For the foregoing reasons, Defendant AMS' Third Motion to Dismiss should be denied in its entirety.  If the Court determines that the record is incomplete, then Plaintiffs respectfully request that they be granted leave to supplement their allegations through jurisdictional discovery.

Dated:  May 30, 2008                          Respectfully submitted,

Daniel P. Albers
John P. Wappel
Christine H. McCarthy
BARNES & THORNBURG LLP

Jeffrey K. Lee, State Bar No. 212465
Kimberly A. Donovan, State Bar No. 160729
GCA LAW PARTNERS LLP

By:    /s/ Jeffrey K. Lee
              Attorneys for Plaintiff STAR NAVIGATION
              SYSTEMS GROUP LTD.

- 25 -

1

2

## CERTIFICATE OF SERVICE

3      The foregoing document and supporting papers have been filed with the Court this day though

4  the Court's Electronic Case Filing system, which will provide electronic notice and service upon the

5  parties listed below:

6

7              Kevin C. McCann
               Paul, Hastings, Janofsky & Walker LLP
               55 Second Street
8              Twenty-Fourth Floor
               San Francisco, CA 94105
9              Telephone: (415) 856-7000
               Facsimile: (415) 856-7100
10             E-mail: kevinmccann@paulhastings.com

11

12             Robert M. Masters
               Timothy P. Cremen
13             Bhaskar Kakarla
               Paul Hastings
14             875 15th Street, N.W.
               Washington, DC 20005
15              Tel: (202) 551-1700
               Fax: (202) 551-1705
16             E-mail: robertmasters@paulhastings.com, timothycremen@paulhastings.com,
17             bhaskarkakarla@paulhastings.com

18

19

20  Dated: May 30, 2008

21                                          By:  ___/s/ Jeffrey K. Lee_____

22

23

24

25

26

27  437686v1

28

Case No. C 07-4820 (MMC)
Plaintiff's Mem. P's and A's in
Opp'n to Motion to Dismiss