Kevin C. McCann (SB# 120874)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
Email:  kevinmccann@paulhastings.com

Robert M. Masters (admitted *pro hac vice*)
Timothy P. Cremen (admitted *pro hac vice*)
Bhaskar Kakarla (admitted *pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
Telephone:  (202) 551-1700
Facsimile:  (202) 551-1705
Email:  robertmasters@paulhastings.com
Email:  timothycremen@paulhastings.com
Email:  bhaskarkakarla@paulhastings.com

Attorneys for Defendant
AEROMECHANICAL SERVICES LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STAR NAVIGATION SYSTEMS GROUP LTD., | CASE NO. C 07-4820 (MMC) |
| Plaintiff, | **AEROMECHANICAL SERVICES LTD.'S REPLY TO STAR NAVIGATION SYSTEMS GROUP LTD.'S OPPOSITION TO AEROMECHANICAL SERVICES LTD.'S MOTION TO DISMISS** |
| v. | |
| AEROMECHANICAL SERVICES LTD., | |
| Defendant. | |
| | Date:   June 20, 2008<br>Time:  9:00 AM<br>Place:  Courtroom 7, 19th Floor<br>Honorable: Maxine M. Chesney |

1

## TABLE OF CONTENTS

**Page**

2

3    I. INTRODUCTION ..................................................................................................... 1

4    II. STAR'S COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(2)) ...... 1

5        A.    AMS Has, At Most, Attenuated Contacts With California .................................... 2

6        B.    Aloha's Acts Cannot Be Attributed to AMS ......................................................... 4

7        C.    AMS Has Not Done Business With China Eastern Airlines in California ............. 5

8        D.    AMS Has Not Done Business With Meggitt In California.................................... 6

9        E.    AMS's Future Business Is Irrelevant To Personal Jurisdiction ............................ 6

10        F.    General Jurisdiction Matters Are Irrelevant Here.................................................. 7

11        G.    Star's "Forseeability" and "Stream of Commerce" Arguments are

12             Unsupported ........................................................................................................ 7

13        H.    AMS Does Not Have Minimum Contacts With California ................................... 8

14        I.    It Is Unreasonable To Drag AMS Into California.................................................. 8

15        J.    Dismissal Is Appropriate, And Star Should Not Be Granted Discovery ............... 9

16    III. STAR'S COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(B)(7) .... 10

17        A.    Star Did Not Follow The Requirements of Fed. R. Civ. 19(a)(2) .................... 10

18        B.    The Procedure in *Independent Wireless* Is Irrelevant to Rule 19(a)(2) ............... 12

19        C.    The Holding of *Independent Wireless* Is Inapplicable Here ................................ 12

20        D.    If Star's License Has Been Revoked, This Case Cannot Proceed ........................ 13

21        E.    A Dismissal or Stay of This Action By The Court's Inherent Powers Is

22             Appropriate ....................................................................................................... 13

23        F.    A Dismissal or Stay Under The *Colorado River* Doctrine Is Appropriate .......... 15

24    IV. CONCLUSION.................................................................................................... 15

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page**

### CASES

3

*Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.,*
4
    1 F.3d 848 (9th Cir. 1993)................................................................................... 8

5
*Applera Corp. v. Illumina, Inc.,*
    282 F. Supp. 2d 1120 (N.D. Cal. 2003) ........................................................... 15

6
*Asahi Metal Indus. Co. v. Superior Court of Cal.,*
7
    480 U.S. 102 (1987)......................................................................................... 5

8
*AT&T v. Compagnie Bruxelles Lambert,*
    94 F.3d 586 (9th Cir. 1996).......................................................................... 2, 8

9
*Bancroft & Masters v. Augusta National,*
10
    223 F.3d 1082 (9th Cir. 2000).......................................................................... 7

11
*Bell Helicopter Textron v. HeliQwest Int'l., Ltd.,*
    385 F.3d 1291 (10th Cir. 2004)........................................................................ 7

12
*BenQ Am. Corp. v. Forward Elecs. Co.,*
13
    2005 U.S. Dist. LEXIS 38648 (N.D. Cal. 2005) ........................................... 10

14
*Boschetto v. Hansing,*
    2006 U.S. Dist. LEXIS 50807 (N.D. Cal. 2006) ........................................... 10

15
*Burger King Corp. v. Rudzewicz,*
16
    471 U.S. 462 (1985)......................................................................................... 8

17
*Caprio v. Wilson,*
    513 F.2d 837 (9th Cir. Cal. 1975) .................................................................. 11

18
*Colorado River Water Conservation District v. United States,*
19
    424 U.S. 800 (1976)....................................................................................... 14

20
*Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.,*
    395 F.3d 1315 (Fed. Cir. 2005)........................................................................ 9

21
*Doe v. Unocal Corp.,*
22
    248 F.3d 915 (9th Cir. 2001)................................................................... 2, 4, 7, 8

23
*Ethicon, Inc. v. United States Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998)...................................................................... 13

24
*Ferguson Beauregard/Logic Controls v. Mega Sys.,*
25
    *LLC,* 350 F.3d 1327 (Fed. Cir. 2003)............................................................ 12

26
*Gen-Probe, Inc. v. Amoco Corp.,*
    1996 U.S. Dist. LEXIS 5393 (S.D. Cal., 1996) ............................................ 14

27
*GTE New Media Servs. v. BellSouth Corp.,*
28
    199 F.3d 1343 (D.C. Cir. 2000) ....................................................................... 9

-ii-

1

## TABLE OF AUTHORITIES
(continued)

2

**Page**

3

*Goldhaft v. Moorhouse*,
    306 F.Supp. 533 (D.Minn. 1696)) ................................................................... 13

4

*Helicopteros Nacionales de Colombia, S. A. v. Hall*,
    466 U.S. 408 (1984) ......................................................................................... 7

5

6

*Home Gambling Network, Inc. v. Betinternet.com, PLC*,
    2006 U.S. Dist. LEXIS 44205 (D. Nev. 2006) ................................................ 7

7

*Huang v. Ferrero U.S.A., Inc.*,
    1999 U.S. Dist. LEXIS 5712 (N.D. Cal., 1999) ............................................. 10

8

*Independent Wireless Telegraph Co. v. Radio Corp. of Am.*,
    269 U.S. 459 (1926) .................................................................................. 11, 12

9

10

*Intermedics Infusaid, Inc. v. Regents of University of Minnesota*,
    804 F.2d 129 (Fed. Cir. 1986) ........................................................................ 14

11

*Joint Mktg. Int'l v. L&N Sales & Mktg.*,
    2006 U.S. Dist. LEXIS 48017 (E.D.N.Y., 2006) ........................................... 12

12

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) .......................................................................................... 4

13

14

*Landis v. North Am, Co.*,
    299 U.S. 248 (1936) ........................................................................................ 14

15

*Laub v. United States DOI*,
    342 F.3d 1080 (9th Cir. 2003) ........................................................................ 10

16

17

*L.E.A. Dynatech, Inc. v. Allina*,
    49 F.3d 1527 (Fed. Cir. 1995) ........................................................................ 14

18

*Levy v. Norwich Union Ins. Soc'y*,
    1998 U.S. Dist. LEXIS 13524 (N.D. Cal., 1998) ........................................... 10

19

20

*Leyva v. Certified Grocers of California, Ltd.*,
    593 F.2d 857 (9th Cir. Cal. 1979) .................................................................. 14

21

*Mars, Inc. v. H.J. Heinz Co.*,
    377 F.3d 1369 (Fed. Cir. 2004) ........................................................................ 4

22

23

*McNutt v. General Motors Acceptance Corp.*,
    298 U.S. 178 (1936) .......................................................................................... 2

24

*Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*,
    960 F.2d 1217 (3rd Cir. 1992) .......................................................................... 9

25

26

*Missud v. Horton*,
    2007 U.S. Dist. LEXIS 84006 (N.D. Cal. 2007) .............................................. 7

27

28

-iii-

1

## TABLE OF AUTHORITIES
(continued)

2

Page

3

*One Up, Inc. v. Webcraft Technologies, Inc.,*
    1989 U.S. Dist. LEXIS 11313 (N.D. Ill., 1989)........................................................ 15

4

*Pebble Beach Co. v. Caddy,*
    453 F.3d 1151 (9th Cir. 2006)........................................................................... 10

5

6

*Pennington Seed. Inc. v. Produce Exchange No. 299,*
    457 F.3d 1334 (Fed. Cir. 2006)................................................................... 2, 4, 7

7

*Perkins v. Benguet Consolidated Mining Co.,*
    342 U.S. 437 (1952)......................................................................................... 7

8

9

*Pirkle v. Ogontz Controls Co.,*
    1987 U.S. Dist. LEXIS 10555 (E.D. Pa., 1987).................................................. 15

10

*Prima Tek II, L.L.C. v. A-Roo Co.,*
    222 F.3d 1372 (Fed. Cir. 2000)......................................................................... 12

11

12

*Protrade Sports, Inc. v. Nextrade Holdings, Inc.,*
    2006 U.S. Dist. LEXIS 6631 (N.D. Cal. 2006)................................................. 10

13

*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998)........................................................................... 5

14

15

*Rite-Hite Corp. v. Kelley Co.,*
    56 F.3d 1538 (Fed. Cir. 1995)......................................................................... 11

16

*Robinson v. Heilman,*
    563 F.2d 1304 (9th Cir. 1977)......................................................................... 12

17

18

*Santrade, Ltd. v. General Elec. Co.,*
    1990 U.S. Dist. LEXIS 19260 (E.D.N.C., 1990) .............................................. 14

19

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004).......................................................................... 2, 8

20

21

*Sheldon v. West Bend Equipment Corp.,*
    718 F.2d 603 (3d Cir. Pa. 1983)...................................................................... 11

22

*Seiferth v. Helicopteros Atuneros, Inc.,*
    472 F.3d 266 (5th Cir. 2006)............................................................................. 7

23

24

*Sladek v. Bell Sys. Mgmt. Pension Plan,*
    880 F.2d 972 (7th Cir., 1988)........................................................................... 12

25

*Summa Four v. AT&T Wireless Servs.,*
    994 F. Supp. 575 (D. Del. 1998) ..................................................................... 15

26

27

*System Software Assocs. v. Trapp,*
    1995 U.S. Dist. LEXIS 11990 (N.D. Ill. 1995)................................................... 7

28

-iv-

AMS'S REPLY TO STAR'S OPPOSITION TO
AMS'S MOTION TO DISMISS

1

## TABLE OF AUTHORITIES
(continued)

2
**Page**

3
*Travelers Health Association v. Virginia,*
         339 U.S. 643 (1950) .................................................................................................... 4

4
*Trintec Indus. v. Pedre Promotional Prods.,*
         395 F.3d 1275 (Fed. Cir. 2005) ................................................................................. 9

5

*Water Technologies Corp. v. Calco, Ltd.,*
6
         576 F.Supp 767, 773 (N.D. Ill. 1983) ...................................................................... 13

7
*World-Wide Volkswagen Corp. v. Woodson,*
         444 U.S. 286 (1980) ............................................................................................ 4, 5, 8

8

## STATUTES

9

Fed. R. Civ. P. 12 ........................................................................................... 1, 2, 10, 15
10
Fed. R. Civ. P. 19 ...................................................................................... 1, 10, 11, 12, 15
11
35 U.S.C. § 287 ....................................................................................................... 13
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

Star's Opposition fails to establish any reason why its Complaint should not be dismissed.

Star's Complaint should be dismissed under Fed. R.Civ. P. 12(b)(2) because Star has failed to show that this Court has personal jurisdiction over AMS.  Star provides over 50 exhibits to its Opposition, yet <u>not one</u> evidences a particular act performed by AMS in California.  Instead, Star resorts to: (1) conjecture as to what AMS <u>may</u> do in California – almost all of which is contradictory to AMS's sworn statements; (2) allegations about what AMS's <u>customers</u> do in California; and (3) theories as to what AMS <u>might</u> do in California in the future.  None of these bases are sufficient to confer personal jurisdiction over AMS in California, and Star has not met its burden of showing that personal jurisdiction exists.

Alternatively (and independently), Star's Complaint should be dismissed under Fed. R.Civ. P. 12(b)(7) because Star has also failed to comply with the Court's April 8, 2008 Order (D.I. 60) to join the co-owners (Viraf Kapadia and Hillary Vieira) of the '852 Patent.  Although Star attempts to rewrite the history of the parties' previous filings, this revisionist history does not change the fact that Star never specifically requested this Court to label Mr. Vieira an "involuntary plaintiff" under Fed. R. Civ. P. 19(a)(2) – <u>which is the required procedure</u>.  Nor has Star yet made the requisite factual showings that would form the basis of such a labeling.

Further, even if Star's previous filings could be construed as it suggests, the Court should not grant Star's request.  Each of Star's arguments as to why Mr. Vieira should be dragged into this action as an "involuntary plaintiff" are based on Star having an "exclusive license" to practice the '852 Patent.  Yet Star has not established that its license is in fact an "exclusive license," or that the license is still in force.  In fact, the existence of the license itself is being contested in a Canadian court, and Star will not be able to proceed on its Second Amended Complaint if its License has been revoked – despite Star's arguments to the contrary.  This provides yet a third independent reason for the Court to dismiss Star's Complaint - under its inherent powers.

## II. STAR'S COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(2))

In an effort to show that this Court somehow has personal jurisdiction over AMS, Star spends many pages of its Opposition discussing: (1) what AMS <u>may</u> do in California; (2) what

-1-                    AMS'S REPLY TO STAR'S OPPOSITION TO
                                                                AMS'S MOTION TO DISMISS

1   AMS's <u>customers</u> do in California; and (3) what AMS <u>might</u> do in California in the future.  But,

2   none of this shows that AMS has "purposefully availed itself of the privileges of conducting

3   activities in California," or that "the exercise of jurisdiction over AMS in California is reasonable.

4   *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001); *Pennington Seed. Inc. v. Produce

5   Exchange No. 299*, 457 F.3d 1334, 1344 (Fed. Cir. 2006).

6       Because AMS has moved to dismiss under Rule 12(b)(2), Star bears the burden of proving

7   personal jurisdiction, and cannot rest on the bare allegations of the complaint.  *Schwarzenegger v.*

8   *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Dismissal is <u>required</u> where the

9   plaintiff cannot present competent proof supporting jurisdiction.  *McNutt v. General Motors*

10  *Acceptance Corp.*, 298 U.S. 178, 189 (1936); *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d

11  586, 588 (9th Cir. 1996).  Star has not met its burden, and thus this case should be dismissed.[1]

12  **A.    AMS Has, At Most, Attenuated Contacts With California**

13      Star first alleges that this Court has specific personal jurisdiction over AMS because: (1)

14  AMS's AFIRS systems "have entered the forum regularly and at numerous airport entry points

15  via [AMS's] leasing of its AFIRS units to registered California Corporations;" and (2) "AMS has

16  obtained (and possibly directed) communications necessary to use the system from and to

17  customers in California through its AFIRS units and web-based customer interface."  Opp. 20.

18      Star's allegations are strained, at best.  AMS's AFIRS/UPTIME system consists of two

19  parts: (1) an AFIRS unit installed on airplanes; and (2) UPTIME servers in Canada.  D.I. 68, ¶ 23.

20  AFIRS units periodically transmit data from an airplane during its flight (*i.e.*, between the plane's

21  departure and arrival gates) to the UPTIME servers via the Iridium satellite network.  D.I. 68, ¶

22  24.  UPTIME servers then prepare reports that are electronically sent to recipients.  D.I. 68, ¶ 25.

23      Aloha Airlines ("Aloha") was the <u>only</u> AMS customer that had AFIRS units installed on

24  planes that flew into California.  These flights have stopped, because Aloha has declared

25  bankruptcy.[2]  Contrary to the impressions Star tries to leave (*see* Opp. 6 and 20), Aloha is a

---

[1] In fact, Star's request for jurisdictional discovery is a concession that it cannot meet its burden of establishing personal jurisdiction.

[2] Star alleges that, while Aloha's passenger flights have stopped, Aloha's cargo flights have
(continued)

-2-

AMS'S REPLY TO STAR'S OPPOSITION TO
AMS'S MOTION TO DISMISS

1   Delaware corporation based in Hawaii, not California,[3] and AMS did not do business with, or

2   provide any service or support to, Aloha (or any other company) in California (D.I. 68, ¶¶ 6-30).

3       Aloha was also always in complete control of when, where and how it operated its

4   airplanes - not AMS.  Some of Aloha's flights were between Hawaiian airports and coastal cities

5   in California, but AMS had no control of these flights - or Aloha's routes in general.  Thus,

6   Aloha, not AMS, brought AFIRS units into California, despite Star's novel legal argument that

7   AMS's AFIRS units entered California because of AMS's "leasing" of those units.  Opp. 20.

8       If an Aloha airplane had an AFIRS unit on board, and if it flew into California, the AFIRS

9   unit may have sent data from California airspace (depending on reporting parameters).  The data

10  would have been transmitted directly to the Iridium satellite network for transfer to UPTIME

11  servers, not to or through California.  UPTIME servers in Canada would have received the data

12  from the Iridium network,[4] organized/formatted it, and delivered it to Aloha's maintenance

13  facilities in Hawaii.  No deliveries of data would have gone to or through California.  For Aloha,

14  no deliveries of data were sent to California-located "on site airplane flight and maintenance

15  crews," (Opp. 5) or to "prepare the craft for its departing flight" while it was in California (Opp.

16  5), as Star alleges.  *See* D.I. 68, ¶¶ 40-42.  Such allegations show Star's basic misunderstanding of

17  the AFIRS/UPTIME system – at no time does it send data to an aircraft system or component.

18      Thus, while Star's allegation that AFIRS systems sometimes entered California is

19  somewhat correct (inasmuch as they were installed on Aloha planes that operated under Aloha

20  control), its allegation that AMS "obtained (and possibly directed) communications necessary to

21  use the system from and to customers in California through its AFIRS units and web-based

22  customer interface" (Opp. 20) is not correct.  AMS did not "direct" any communications to

23

24  (continued)
    continued to California.  This is incorrect - Aloha does not operate (and never operated) cargo
25  flights to California.  All cargo flights are inter-island.  D.I. 68, ¶ 34.
    [3] Star's own Exhibit 12 (D.I. 79, Ex. 12) shows that Aloha Airlines is a Delaware Corporation,
26  Star appears to assert that Aloha is a California corporation because it is "registered" in
    California.  Star cites no case law for this novel legal argument.
27  [4] The Iridium network forwards data to UPTIME servers via internet link from a ground station
    outside of California, which is under Iridium's control.  D.I. 68, ¶ 39.
28

California, as its UPTIME reports were directed to Aloha's Hawaiian employees. D.I. 68, ¶ 40.

Nor does AMS "obtain" communications from customers in California – it simply may receive

data from airplanes that venture into California for short time periods.[5]

Further, even if one were to assume that Star's arguments regarding the AFIRS-based

communications were correct, <u>Star has completely failed to explain the relevance of these</u>

<u>communications to the matter at hand.</u>  Just because AFIRS units may communicate in California

is irrelevant to a specific jurisdiction analysis unless Star <u>also</u> shows that the communications in

question are related to this action.  *See Doe*, 248 F.3d at 923 and *Pennington Seed.* 457 F.3d at

1344 ( holding that the plaintiff must show that its claim arises out of or results from defendant's

activities).[6]  Here, Star has not tied any of the communications in question to the claimed features

of its '852 Patent.  Star has not bothered to include a claim chart showing how the AFIRS

communications system infringes its Patent, or even explain the relevance of the AFIRS

communications to its claims in general.  AMS's motion should be granted on this basis alone.

In view of the above, Star has not shown that AMS has any more than random, fortuitous,

or attenuated contacts with California, and thus cannot be considered to have purposely availed

itself of the privileges of this forum.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984);

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980).  AMS has not deliberately

engaged in significant activities in California (*Keeton*, 465 U.S. at 781), nor has created

continuing obligations between it and California residents (*Travelers Health Ass'n v. Virginia*,

339 U.S. 643, 648 (1950)).

**B.    <u>Aloha's Acts Cannot Be Attributed to AMS</u>**

Despite Star's novel argument that AMS's leasing of AFIRS systems to Aloha somehow

---

[5] Star attempts to explain the operation of AFIRS/UPTIME by citing portions of an AMS patent. Opp. 5, fn 4.  But, in patent cases, it is the accused product that is at issue.  *Mars, Inc. v. H.J. Heinz Co., L. P.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004).  AMS's patent is not an engineering schematic of AFIRS/UPTIME, and describes alternatives that may not be employed in every AFIRS/UPTIME installation.

[6] To show specific personal jurisdiction, Star must show that (1) AMS has purposefully availed itself of the privileges of conducting activities in California; (2) Star's claim arises out of or results from AMS's activities in California; and (3) the exercise of jurisdiction over AMS is reasonable.  See *Doe*, 248 F.3d at 923 and *Pennington Seed* at 1344.

-4-                    AMS'S REPLY TO STAR'S OPPOSITION TO
                                                                                  AMS'S MOTION TO DISMISS

1  brought those systems into California (Opp. 20), the presence of AFIRS systems in California can

2  only be attributed to one party - Aloha.  Personal jurisdiction cannot be asserted over AMS due to

3  the actions of Aloha, because "doing business with a company that does business in [the forum

4  state] is not the same as doing business in [the forum state]." *Red Wing Shoe Co., Inc. v.*

5  *Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).  Although Star tries to carve

6  some kind of an exception to this rule by pointing out factual differences between the instant

7  situation and that of *Red Wing Shoes*, the Federal Circuit was unequivocal in its holding.[7]

8       Similarly, the Supreme Court has held that a New York auto dealer cannot be haled into

9  court in Oklahoma because a car it sold was part of an accident there (*World-Wide Volkswagen*,

10  444 U.S. at 295), and that the placement "of a product into the stream of commerce, without

11  more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal*

12  *Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987).  Rather, the connection "between

13  the defendant and the forum State necessary for a finding of minimum contacts must come about

14  by an action of the defendant purposefully directed toward the forum State." *Id.* at 112.

15       Just because Aloha does business in California does not mean that AMS does business

16  there.  To hold the contrary would have the absurd result of, for example, nationwide jurisdiction

17  over a "mom & pop" supplier to Ford Motor Company, because Ford does business nationwide.

18  **C.**    **AMS Has Not Done Business With China Eastern Airlines in California**

19       Star alleges that AMS's "business within California further includes sale of, installation

20  and service for its infringing product to China Eastern Airlines for use on its fleet of airplanes."[8]

21  Opp. 7, 20.  Star's claim is incorrect, and fails to cite any credible evidence.  No AFIRS units

22  enter California on China Eastern planes, because AFIRS installations for China Eastern are on

23  Boeing's 737 aircraft, which are not used on China Eastern's routes to Los Angeles.  D.I. 68, ¶¶

24  45, 46.[9]  Rather, China Eastern's 737s are short-range aircraft used for short flights near China.

[7] Star argues that AMS's citation of *Red Wing Shoes* somehow "raises questions" here.  Opp. 23.
It is hard to understand how the citation of a case can raise questions regarding discovery.
[8] Star also alleges that AFIRS units are on unnamed "Chinese airlines that fly across the Pacific."
Opp. 4.  This is false.
[9] AMS has never conducted business with China Eastern Airlines in California, and has never
(continued)

AMS'S REPLY TO STAR'S OPPOSITION TO
AMS'S MOTION TO DISMISS

1  Star's only purported "evidence" that AFIRS units are coming into California on China

2  Eastern flights is an AMS press release (D.I. 79, Ex. 14) and printout from "Farecompare.com"

3  (D.I. 79, Ex. 16).  But, neither document shows that China Eastern's 737s defy the laws of

4  physics and fly into California, or that AMS is doing business with China Eastern in California.[10]

5  **D.     AMS Has Not Done Business With Meggitt In California**

6  Star alleges that AMS "advertises a strong relationship with Meggitt, PLC comprised in

7  part of active, registered California businesses with headquarters and/or operations in Simi

8  Valley, California" (Opp. 7), and cites various press releases (D.I. 79, Exs. 17-20) as illustrating

9  the relationship.  These allegations are almost entirely wrong – and unsupported by Star's

10  Exhibits.  Meggitt PLC is not a California Corporation.  It does not appear in the list of

11  "Meggitts" in Star's Exhibit 19 (D.I. 79, Ex. 19), and is specified as being "U.K. based" by Star's

12  Exhibit 20 (D.I. 79, Ex. 20).  *See also* Star's Exhibit 38 (D.I. 81, Ex. 38).  AMS has not

13  conducted any business with Meggitt PLC, or its subsidiaries, in California.  D.I. 68, ¶ 47.  To the

14  extent that AMS has worked with Meggitt, the work has taken place in Europe, is still in a

15  developmental phase, and has not yet resulted in commercial installations.  D.I. 68, ¶ 48.

16  **E.     AMS's Future Business Is Irrelevant To Personal Jurisdiction**

17  Star alleges that: (1) AMS has stated that it will provide services and install its systems

18  anywhere in the world (Opp. 5-7, 20, 21); (2) AMS's overall market potential is "immense" (Opp.

19  7); (3) California has a significant customer base for AMS to solicit (Opp. 8); and (4) AMS's

20  website has prospective statements about its "worldwide" capabilities, market share, and sales

21  (Opp. 4, 21).  These statements for purposes of advertisement/marketing do not somehow

22  physically place AMS in California; they are simply irrelevant to whether California has personal

23  jurisdiction over AMS.  None of these factors show that AMS has done anything to purposefully

24  avail itself of the privileges of conducting activities in California, or that the exercise of

25

26  (continued)
sold, installed, or serviced AFIRS systems for China Eastern in California.  D.I. 68, ¶¶ 43, 44.

27  [10] In this regard, because China Eastern is a Chinese company and AMS is a Canadian company,
it strains credibility for Star to allege that their business dealings took place in California.

28

1    jurisdiction over AMS in California is reasonable.  *Doe*, 248 F.3d at 923; *Pennington Seed*, 457

2    F.3d at 1344.  At best, they show that the long-term potential exists for AMS to operate in

3    California – not that there is <u>current</u> personal jurisdiction.[11]

4    **F.    General Jurisdiction Matters Are Irrelevant Here**

5    Star alleges that AMS has focused "its general jurisdiction 'no-contacts' argument on its

6    distribution of" the AFIRS system, "but does not provide details of its activities regarding its

7    *other* products for general jurisdiction analysis."  Opp. 22 (*emphasis* in original).  This argument

8    is difficult to understand.  General jurisdiction would be shown by acts of the corporation such as

9    those listed in *Perkins*, *Bancroft* or *Helicopteros*.[12]  In view of Mr. Jacobs's affidavit (D.I. 68, ¶¶

10   4-21), however, it is plainly apparent that none of these factors are relevant to this case.  Nor

11   would the alleged "other products" support a finding of specific jurisdiction, because they are not

12   accused of infringement, and therefore are not related to Star's claims in this suit.

13   **G.    Star's "Forseeability" and "Stream of Commerce" Arguments are Unsupported**

14   Star argues that this Court should have personal jurisdiction over AMS because it placed

15   products in the "stream of commerce by leasing to customers that are registered to do business in

16   California," and because it was "foreseeable" that these customers would fly into California.

17   Opp. 21.  Star cites no case law to support either of these points, and both are irrelevant.[13]

18   First, the AFIRS units on Aloha's aircraft were leased, not sold, and neither the Ninth

19   Circuit nor the Federal Circuit has extended the "stream of commerce" to leased products.  Other

20   circuits have held that it does not so extend.  *See, e.g., Seiferth v. Helicopteros Atuneros, Inc.*, 472

21   F.3d 266, 273 (5th Cir. 2006) and *Bell Helicopter Textron v. HeliQwest Int'l., Ltd.*, 385 F.3d 1291

22

23   [11] *See, e.g., Missud v. Horton*, 2007 U.S. Dist. LEXIS 84006 (N.D. Cal. 2007) (defendant's letter indicating future plans is irrelevant for personal jurisdiction analysis); *Home Gambling Network, Inc. v. Betinternet.com, PLC*, 2006 U.S. Dist. LEXIS 44205 (D. Nev. 2006)

24   (defendant's future plans do not establish current personal jurisdiction); and *System Software Assocs. v. Trapp*, 1995 U.S. Dist. LEXIS 11990 (N.D. Ill. 1995) (personal jurisdiction cannot be

25   based on future contacts).
     [12] *Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Helicopteros*

26   *Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 416 (1984); and *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 438, 445 (1952).

27   [13] Indeed, Star's specific arguments as to why this Court has personal jurisdiction over AMS for this matter extend from Opp. 20:8-23:21.  This section contains <u>no citations to case law</u>.

28

1    (10th Cir. 2004).  Further, the "forseeability" analysis is not simply whether AMS's products will

2    find their way into California, as Star alleges.  "[T]he foreseeability that is critical to due process

3    analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it

4    is that the defendant's conduct and connection with the forum State are such that he should

5    reasonably anticipate being haled into court there." *World-Wide Volkswagen* 444 U.S. at 297.

6    Here, AMS's contacts do not rise to the requisite level.

7    **H.    AMS Does Not Have Minimum Contacts With California**

8            Exercising jurisdiction over AMS in this case would contravene the requirements of due

9    process.  Almost the only accurate allegation made by Star in its entire Opposition is that Aloha

10   planes with AFIRS units on them entered California airspace from time to time.  However, Aloha

11   decided where and when to fly its planes, not AMS.  Thus, AMS cannot be said to have been

12   availing itself of the benefits and privileges of California law by purposefully directing activities

13   at California, because it neither performed "some type of affirmative conduct which allows or

14   promotes the transaction of business" in California (*Doe*, 248 F.3d at 924), nor had a "purposeful

15   direction" expressly aimed at California.  *Schwarzenegger*, 374 F.3d at 803.  Thus, any contact

16   that AMS has with California can only be categorized as "random, fortuitous, or attenuated,"

17   which is not sufficient to show minimum contacts. *AT&T*, 94 F.3d at 590.

18   **I.    It Is Unreasonable To Drag AMS Into California**

19           Even if it could be shown that AMS has "minimum contacts" with California (which it

20   does not have), the bare existence of these contacts "is not sufficient to allow a court to exercise

21   personal jurisdiction over a defendant."  *Doe*, 248 F.3d at 925.  Jurisdiction is still improper if it

22   would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

23           Star has not directly addressed reasonableness in its Opposition,[14] likely because it cannot

24   prevail on the well-established seven factor test.  *See Amoco Egypt Oil Co. v. Leonis Navigation*

25   _____

26   [14] Star does argue that AMS has not proposed a more convenient district to resolve Star's claims,
     and alleges that AMS will claim a similar burden wherever Star brings suit.  Opp. 21.  These

27   arguments are irrelevant.  If this Court does not have personal jurisdiction over AMS, this case
     must be dismissed.  It is also Star's burden, not AMS's, to bring an action in the proper forum.

28

1  *Co., Inc.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993).  The burden here is high on AMS, because it is

2  being asked to defend an action in a state where it does no business, and has no contacts.

3  California cannot be said to have any particular interest in this litigation, because neither party is

4  from California, AMS has not directed any of its business activities toward California, and there

5  has been no allegation that any substantial portion of the allegedly infringing activities occurred

6  in California.[15]  There is also no reason to believe that another district where AMS does have a

7  presence could not provide a fair and competent proceeding where Star could obtain relief.

8  **J.**    **Dismissal Is Appropriate, And Star Should Not Be Granted Discovery**

9        Star's request for discovery (Opp. 21-24) should be denied.  This is not a close case where

10  the discovery of some facts may demonstrate jurisdiction.[16]   Star has failed to proffer evidence

11  showing any contacts that AMS has with California and is only seeking a fishing expedition.[17]

12        Star is correct in that the Federal Circuit has indicated that the relevance of a request for

13  jurisdictional discovery is determined using Federal Circuit law.  *Commissariat a l'Energie*

14  *Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005).  However, in

15  cases similar to that here, the Federal Circuit has looked to the relevant regional circuit law to

16  make a determination as to whether it should grant discovery.  For example, in the first case cited

17  by Star, *Commissariat a l'Energie Atomique*, the Federal Circuit looked to *Mellon Bank (East)*

18  *PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217 (3rd Cir. 1992).  In the other case cited by Star,

19  *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275 (Fed. Cir. 2005), the Federal Circuit

20  looked to *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343 (D.C. Cir. 2000).

21        Here, Mr. Jacob's Declaration (D.I. 68) has indicated that there is no discoverable

22

23  [15] Star does argue that "this dispute arises … from use of the Infringing System on trans-Pacific flights to California airspace."  Opp. 21.  But, as discussed above, this vague assertion fails to

24  provide even the most basic assessment of just what part of the AFIRS system infringes the '852 Patent – or how a substantial portion of the infringement occurs in California.

25  [16] Star has already refused to proceed with such discovery under the reasonable parameters offered by AMS - even though AMS agreed to the requested deponent and schedule, and offered

26  to continue the hearing on its Motion to Dismiss.  D.I. 80, Ex. 29, p. 3.

27  [17] Indeed, Star betrays its true intention by stating that "[j]urisdictional discovery is likely to uncover specific locations in the U.S. where AMS has continuous and systematic contacts and is subject to jurisdiction, *if not in this judicial district*."  Opp. 4, *emphasis* added.

28

1   information for almost all of Star's proposed topics; and that there are no "minimum contacts"

2   between AMS and California. The sworn statements are more than enough to confirm the lack of

3   personal jurisdiction over AMS here. *See e.g., Huang v. Ferrero U.S.A., Inc.*, 1999 U.S. Dist.

4   LEXIS 5712 (N.D. Cal., 1999); *Levy v. Norwich Union Ins. Soc'y*, 1998 U.S. Dist. LEXIS 13524,

5   *11 (N.D. Cal., 1998). A court is free to deny discovery where, as here, "it is clear that further

6   discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Laub v.*

7   *United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003).

8          Star's allegations of personal jurisdiction are just that – allegations and conjecture, all

9   unsupported by any credible facts. On the other hand, AMS has provided clear testimony about

10  its lack of contacts with California. This situation squares with *Pebble Beach Co. v. Caddy*, 453

11  F.3d 1151, 1160 (9th Cir. 2006), which holds that when "[a] plaintiff's claim of personal

12  jurisdiction appears to be both attenuated and based on bare allegations in the face of specific

13  denials made by the defendants, the Court need not permit even limited discovery."[18]

14  **III. STAR'S COMPLAINT SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(7)**

15  **A.**   <u>**Star Did Not Follow The Requirements of Fed. R. Civ. P. 19(a)(2)**</u>

16         Star does not dispute: (1) that it has failed to specifically ask this Court to label Mr. Vieira

17  an "involuntary plaintiff;" and (2) that Fed R. Civ P. 19(a)(2)[19] requires it to seek Court order to

18  name Mr. Vieira as an involuntary plaintiff. Thus, Star essentially concedes that it did not follow

19  the required procedure to add Mr. Vieira as an "involuntary plaintiff" in this case.

20         Confusing the issue, Star argues that the parties' filings related to AMS's previous Motion

21  to Dismiss (D.I. 29, 43 & 49) somehow "advised" the Court that Mr. Vieira should be labeled an

22  "involuntary plaintiff," and that the Court found Mr. Vieira to be so in its April 8, 2008 Order

23  _____

24  [18] *See also Boschetto v. Hansing*, 2006 U.S. Dist. LEXIS 50807 (N.D. Cal. 2006) (no discovery
    because there was only speculation of jurisdiction); *Protrade Sports, Inc. v. Nextrade Holdings,*

25  *Inc.*, 2006 U.S. Dist. LEXIS 6631 (N.D. Cal. 2006) (no discovery because plaintiff failed to
    establish any indication that defendant might be subject to personal jurisdiction); and *BenQ Am.*

26  *Corp. v. Forward Elecs. Co.*, 2005 U.S. Dist. LEXIS 38648 (N.D. Cal. 2005) (no discovery
    because plaintiff didn't establish a "reasonable probability" discovery would show jurisdiction).
    [19] "(2) Joinder by Court Order. If a person has not been joined as required, the court must order

27  that the person be made a party. A person who refuses to join as a plaintiff may be made either a
    defendant or, in a proper case, an involuntary plaintiff." Fed R. Civ P. 19.

28

1   (D.I. 60). Opp. 8, 9. This is hardly the case. In granting AMS's prior Motion to Dismiss, the

2   Court agreed with AMS that Star lacked standing and did not have "all substantial rights" in the

3   '852 Patent to bring an action. In its Opposition, Star actually argued that Messrs. Vieira and

4   Kapadia <u>did not have to be added to this case</u> (D.I. 43 at 16) – opposite to what it argues here.

5   Further, in order to join a party as an involuntary plaintiff, Star must show that the party:

6   (1) is beyond the jurisdiction of the Court (and thus cannot be joined under Rule 19(a)(1)); (2) has

7   refused to join the lawsuit; and (3) owes some kind of duty or obligation to allow plaintiff to use

8   his name in the action. See Fed. R. Civ. P. 19(a)(2); *Caprio v. Wilson*, 513 F.2d 837, 840 (9th

9   Cir. Cal. 1975); and *Sheldon v. West Bend Equipment Corp.*, 718 F.2d 603, 606 (3d Cir. 1983).

10  Star showed none of these factors in its previous filings. Not once in its Opposition to AMS's

11  previous Motion to Dismiss (D.I. 43) did Star specify that Mr. Vieira refused to take part in Star's

12  lawsuit against AMS. Star only said that Mr. Vieira "authorized" Star to sue (D.I. 43 at 16), but

13  that is mere attorney argument.[20] Star also failed to allege that Mr. Vieira was beyond the

14  jurisdiction of this Court.[21] <u>Star has never argued that Mr. Vieira is outside this Court's</u>

15  <u>jurisdiction</u>. Lastly, Star failed to allege that Mr. Vieira somehow owed a duty to Star such that

16  he should be named an "involuntary plaintiff." Under *Independent Wireless*,[22] such a situation

17  will only occur when the licensee has an "exclusive license" to the patent. Star has not shown

18  that it has an "exclusive license" to the patent, and the Court did not so hold in its April 8 Order.[23]

19  Each of these factors should have been addressed by Star in a Motion to add Vieira as an

20  "involuntary plaintiff." Star chose not to do so. Neither the Court's April 8, 2008 Order, nor

21

22  [20] Further, the "evidence" cited by Star to show that Mr. Vieira "authorized" Star to sue fails to
    support its argument. The letter was related to the Canadian Action, and was not in response to
    Star's purported request for a release (*see* D.I. 49 at 6 for a more detailed explanation). Star also

23  cites new communications (D.I. 84, Ex. 51) between its counsel and Mr. Vieira's counsel as
    supportive of its position. These are also irrelevant, because the cited communications all took

24  place <u>after April 8, 2008</u>, and could not have been part of the original motion papers.
    [21] In fact, Star has not even alleged this to be so in the current Opposition.

25  [22] *Independent Wireless Telegraph Co. v. Radio Corp. of Am.*, 269 U.S. 459, 472 (1926).
    [23] To be an exclusive licensee for standing purposes, a party must have received, not only the

26  right to practice the invention within a given territory, but also the patentee's express or implied
    promise that others shall be excluded from practicing the invention within that territory as well."

27  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1552 (Fed. Cir. 1995). Star has not shown that it has
    such an "exclusive license."

28

1    Rule 19(a)(2), are vague.  The Court's Order indicated that Star requested "an opportunity to join

2    the inventors … [and the] Court finds it appropriate to afford plaintiff such opportunity."  D.I. 60

3    at 4:14-16.  That is all that was given – <u>an opportunity</u> to join the inventors.  Star did not avail

4    itself of that opportunity, and should not now get a do-over.[24]

5    **B.    The Procedure in _Independent Wireless_ Is Irrelevant to Rule 19(a)(2)**

6        Star cites _Independent Wireless_ for the proposition that it followed Rule 19(a)(2)

7    correctly.  Opp. 9-10.  But _Independent Wireless_ was decided in 1926, and <u>Rule 19 was not</u>

8    <u>adopted until 1937</u>.  It is therefore difficult to understand how _Independent Wireless_ can illustrate

9    anything regarding the proper procedure under Rule 19.

10       In contrast, the Federal Circuit has, several times, specified that it is the Court that orders

11   the finding of an involuntary plaintiff.  _See e.g., Ferguson Beauregard/Logic Controls v. Mega_

12   _Sys., LLC_, 350 F.3d 1327, 1336 (Fed. Cir. 2003) (specifying that a party was joined and deemed

13   an "involuntary plaintiff" by the court); _Prima Tek II, L.L.C. v. A-Roo Co._, 222 F.3d 1372, 1376

14   (Fed. Cir. 2000) (specifying that "the district court ordered Prima Tek I joined as an involuntary

15   plaintiff"); and _Robinson v. Heilman_, 563 F.2d 1304, 1305 (9th Cir. 1977) (where a party was

16   "joined by court order as an involuntary plaintiff").  Star has cited <u>no contrary authority</u>.

17   **C.    The Holding of _Independent Wireless_ Is Inapplicable Here**

18       Star has alleged: (1) that Mr. Vieira should be joined to this action as an "involuntary

19   plaintiff" in view of _Independent Wireless_ because he owes "an ongoing duty" to Star; and (2)

20   that the "ongoing duty" is unaffected by the Canadian Action where Mr. Vieira has alleged that

21   Star's license has been revoked at lease since March 6, 2007.  Opp. 10.  Star is incorrect.

22       If Star's license has been revoked, Mr. Vieira would owe no duty to Star to join in its

23   Second Amended Complaint, even under _Independent Wireless_.  Star's Second Amended

24

25   [24] Star's Second Amended Complaint should be dismissed with prejudice.  _See, e.g., Sladek v._
     _Bell Sys. Mgmt. Pension Plan_, 880 F.2d 972 (7th Cir., 1988) ("dismissal with prejudice should
26   ordinarily result only after the court has ordered the party joined and the plaintiff has failed to do
     so."), and _Joint Mktg. Int'l v. L&N Sales & Mktg._, 2006 U.S. Dist. LEXIS 48017 (E.D.N.Y.,
27   2006) (holding that the case would be dismissed with prejudice if the plaintiff licensee failed to
     join the patent owner by a date certain).

28

1    Complaint fails to plead in any manner how Star has complied with 35 U.S.C. § 287(a) so that it

2    would be entitled to damages prior to the filing date of this litigation - September 19, 2007.[25]

3    But, if Star's License has been revoked, Star itself admits that it would only be entitled to

4    damages until March 6, 2007 (see, e.g., Opp. 10).  Thus, if Star's license has been revoked, its

5    complaint is asking only for damages (and injunctive relief) that it is <u>not entitled to</u>, and Mr.

6    Vieira would have no duty to join in a lawsuit for damages (and injunctive relief) Star cannot

7    obtain.[26]  The two aged District Court cases cited by Star (*Water Technologies Corp. v. Calco,*

8    *Ltd.*, 576 F.Supp. 767, 773 (N.D. Ill. 1983) and *Goldhaft v. Moorhouse*, 306 F.Supp. 533, 536

9    (D.Minn. 1696)) are inapplicable here because each deals with suits for past damages by ex-

10   licensees, not suits for present damages by ex-licensees - as is the case here.

11   **D.    <u>If Star's License Has Been Revoked, This Case Cannot Proceed</u>**

12          Despite Star's arguments to the contrary, if Star's License Agreement has been revoked,

13   Star cannot be maintained as a party to the Second Amended Complaint, for the reasons discussed

14   above.  The only properly named plaintiff would be Mr. Kapadia – who is unable to force Mr.

15   Vieira to join this action, because the Federal Circuit has explicitly held that "Rule 19 does not

16   permit the involuntary joinder of a patent co-owner in an infringement suit brought by another co-

17   owner."  *See Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998).

18          Thus, <u>if the Canadian Court determines the License Agreement is no longer operative,</u>

19   <u>neither Star nor Mr. Kapadia could force Mr. Vieira to join this suit, and it could not proceed</u>.  A

20   determination whether the License Agreement is in effect is therefore crucial.

21   **E.    <u>A Dismissal or Stay of This Action By The Court's Inherent Powers Is Appropriate</u>**

22          In view of the uncertainty regarding the Canadian Action, this Court should dismiss, or in

23   the alternative stay, the instant action until the parties' rights to the '852 Patent are decided.  The

24

25   [25] Because Star has indicated that it "offers its 'TERRASTAR' on-board aircraft monitoring
     system" for sale (Opp. 2), it must "give notice to the public that the same is patented, either by
26   fixing thereon the word 'patent' or the abbreviation 'pat.', together with the number of the
     patent," otherwise, "damages may be recovered only for infringement occurring after such notice.
27   Filing of an action for infringement shall constitute such notice."  35 U.S.C. § 287.
     [26] Star has never bothered to explain why it believes Mr. Viera's license revocation was invalid.
28

1    Court is free to dismiss or stay the action under its inherent power to "control the disposition of

2    the cases on its docket with the economy of time and effort for itself, for counsel, and for

3    litigants." *Landis v. North Am, Co.*, 299 U.S. 248, 254 (1936).[27]

4         Star does not appear to disagree that this Court may dismiss or stay this case under its

5    inherent power. Star instead argues that the Court cannot dismiss or stay this case under the

6    *Colorado River* doctrine.[28] Opp. 12-19. But, the *Colorado River* doctrine is an alternative

7    standard to stay cases, and does not govern the Court's inherent power to control its own docket.

8    Star likely focuses on that doctrine because it cannot disagree that the Federal Circuit has

9    approved of District Courts dismissing infringement actions when there is uncertainty as to

10   whether the action could properly be brought. *See L.E.A. Dynatech, Inc. v. Allina*, 49 F.3d 1527

11   (Fed. Cir. 1995) (holding that the district court did not abuse its discretion when it dismissed,

12   without prejudice, the claims in a patent suit because the underlying patent claims had been

13   rejected in a reissue application) and *Intermedics Infusaid, Inc. v. Regents of University of

14   Minnesota*, 804 F.2d 129 (Fed. Cir. 1986) (approving of a stay in a patent action until a state court

15   ownership dispute (of the patent-in-suit) between the parties was finalized).

16        Nor can Star disagree with the propriety of District Courts' staying proceedings while

17   parties' rights are determined in other tribunals. *See Gen-Probe, Inc. v. Amoco Corp.*, 1996 U.S.

18   Dist. LEXIS 5393 (S.D. Cal., 1996) (granting a stay of an infringement suit in favor of a state

19   court litigation determining ownership of the patent); and *Santrade, Ltd. v. General Elec. Co.*,

20   1990 U.S. Dist. LEXIS 19260, *4-5 (E.D.N.C., 1990) (holding that a stay was appropriate

21   because the state action was filed first, a disposition in the state action could end the federal

22   action, and there was no prejudice to the plaintiffs).

23        Here, Star argues that these cases are inapplicable because they deal with "parties

24   potentially lacking patent ownership."[29] Star's argument is incorrect. These cases apply here

25   _____

26   [27] *See also Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir. Cal. 1979).
     [28] *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

27   [29] Star also argues that the Canadian Action might not be completed for 24 months as a reason for
     not dismissing or staying this case. Opp. 15. But, the Canadian Action is still highly likely to be
     completed before this litigation, as the 26(f) Conference has not yet been held in this case.

28

1    because they deal with whether the party asserting the patent in the Federal Court has the right to

2    assert it, in view of a parallel state court proceeding.  That is precisely the issue here.  If the

3    Canadian Court finds that Star's License has been revoked, it cannot proceed here.  Thus, it is

4    irrelevant that the Canadian Court is not determining the "ownership" of the '852 Patent.

5    **F.      A Dismissal or Stay Under The *Colorado River* Doctrine Is Appropriate**

6          Star spends many pages of its Opposition decrying AMS's citation of the ability of this

7    Court, underlined, to dismiss or stay these proceedings under the *Colorado River* abstention

8    doctrine.  Several District Courts have found it appropriate to stay patent cases in view of ongoing

9    actions in other fora involving the ownership of the patents-in-suit.  *See Summa Four v. AT&T*

10   *Wireless Servs.*, 994 F. Supp. 575 (D. Del. 1998), *Applera Corp. v. Illumina, Inc.*, 282 F. Supp.

11   2d 1120 (N.D. Cal. 2003), *One Up, Inc. v. Webcraft Technologies, Inc.*, 1989 U.S. Dist. LEXIS

12   11313 (N.D. Ill., 1989) and *Pirkle v. Ogontz Controls Co.*, 1987 U.S. Dist. LEXIS 10555 (E.D.

13   Pa., 1987).  Star's disagreement with these cases seems to be focused on its misguided belief that

14   this case may proceed even if the Canadian Court decides that its License has been revoked.

15                               **IV.      CONCLUSION**

16         In view of the foregoing, AMS respectfully requests that this Court dismiss the current

17   action under one or more of: (1) Fed. R. Civ. P. 12(b)(2) because this Court cannot reasonably be

18   said to have personal jurisdiction over AMS; (2) Fed. R. Civ. P. 12(b)(7) because Star has failed

19   to join the owners of the '852 Patent according to Court Order; and (3) this Court's inherent

20   powers to control its docket because the existence of Star's license to the '852 Patent (and thus

21   the possibility of this action continuing) is currently being litigated in Canada.

22   Dated:  June 6, 2008                  KEVIN C. McCANN
                                           ROBERT M. MASTERS
23                                         TIMOTHY P. CREMEN
                                           BHASKAR KAKARLA
24                                         PAUL, HASTINGS, JANOFSKY & WALKER LLP

25

26                                         By:_____/s/ Kevin C. McCann_____
                                                          Kevin C. McCann

27                                         Attorneys for Defendant
                                           AEROMECHANICAL SERVICES LTD.
28   LEGAL_US_E # 79595005