Kevin C. McCann (SB# 120874)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
Email: kevinmccann@paulhastings.com

Robert M. Masters (admitted *pro hac vice*)
Timothy P. Cremen (admitted *pro hac vice*)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th St., N.W.
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
Email: robertmasters@paulhastings.com
Email: timothycremen@paulhastings.com

Attorneys for Defendant
AEROMECHANICAL SERVICES LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

STAR NAVIGATION SYSTEMS GROUP LTD.,

Plaintiff,

v.

AEROMECHANICAL SERVICES LTD.,

Defendant.

CASE NO. C 07-4820 (MMC)

**AEROMECHANICAL SERVICES LTD.'S SUPPLEMENTAL REPLY TO STAR NAVIGATION SYSTEMS GROUP LTD.'S SUPPLEMENTAL OPPOSITION TO AEROMECHANICAL SERVICES LTD.'S MOTION TO DISMISS**

Date: August 22, 2008
Time: 9:00 AM
Place: Courtroom 7, 19th Floor
Honorable: Maxine M. Chesney

## I. INTRODUCTION

Responding to the June 20, 2008 Order (D.I. 86), Star has failed to meet its burden of showing: (1) that Mr. Vieira should be joined as an "involuntary plaintiff;" or (2) that this Court has personal jurisdiction over AMS. Star's Complaint should therefore be dismissed.

## II. MR. VIEIRA CANNOT BE NAMED AN "INVOLUNTARY PLAINTIFF"

Finding that a patent owner cannot be joined as an involuntary plaintiff "in the absence of a showing that, *inter alia*, the patent owner is 'beyond the reach of process[]'"[1] (D.I. 86 at 2), the Court requested that Star "set forth why, given Vieira's apparent refusal to agree to be added as a plaintiff, Star should not be required to name Vieira as a defendant and to thereafter make him a party by service of process." *Id*. Star did not answer the Court's question.

### 1. Star Has Failed to Show That Mr. Vieira Is "Beyond The Reach of Process"

Star has not shown that Mr. Vieira is "beyond the reach of process." Star alleges that Mr. Vieira resides in Ontario, Canada, but that alone does not place Mr. Vieira beyond the reach of this Court. Defendant AMS is likewise Canadian, and yet Star served AMS. Moreover, the Federal Rules provide several avenues for service for those residing in a foreign country. *See* Fed. R. Civ. P. 4(f).[2] Star has not shown that it even attempted service on Mr. Vieira, but instead cites a number of "excuses" why it need not. Failing to show why Mr. Vieira is not susceptible to service, Star has not met its burden necessary to name Mr. Vieira an "involuntary plaintiff."

### 2. Star Has Failed to Show That Mr. Vieira Is Beyond This Court's Jurisdiction

Star's argument that it should not be required even to <u>attempt</u> service on Mr. Vieira because this Court allegedly lacks personal jurisdiction over him, or that such attempts would be futile, (Supp. Opp. at 2, 3) is unsupported by fact. It suggests that Star does not want Mr. Vieira as an active party to this suit for fear that he may side with AMS - by showing that Star does not have the legal rights to the '852 patent, and that AMS does not infringe.

Star cites nothing, and certainly presents no credible facts, to show Mr. Vieira's <u>current</u>

---

[1] Citing *Independent Wireless Telegraph Co. v. Radio Corp.*, 269 U.S. 459, 473 (1926).
[2] The U.S. State Department website explains how Canadian citizens may be served. Cremen Dec., Ex. A.

residence, employment or activities.[3] Star offers mere conjecture as to whether Mr. Vieira is or is not subject to personal jurisdiction in California, which is an absolute pre-requisite to being deemed an involuntary plaintiff.

Star's argument based on the allegation that Mr. Vieira has refused to join this action as a plaintiff (Supp. Opp. at 2, 3) is irrelevant to whether this Court has personal jurisdiction over him. Mr. Vieira's alleged refusal to join as a plaintiff does not address the issue of whether he has the necessary contacts with California to be served as a defendant. Rather, Mr. Vieira's refusal to join, if true, is likely because Mr. Vieira believes that Star no longer has any rights to the patent, or the right to bring a lawsuit based on his patent, and he knows that AMS's system is so far removed from his patent that there could not be a case of infringement.

On the other hand, Star's feeble attempts to contact Mr. Vieira are grounded in self-interest; trying to keep him as far away from this action as possible. Star does not want Mr. Vieira to be an active participant in this case, because Mr. Vieira has an on-going lawsuit against Star in Canada. Star likely fears that, if Mr. Vieira is served as a defendant, he may take the opportunity to cross-claim to challenge Star's assertion of the '852 Patent. Although Star does not want Mr. Vieira in this case, his presence is absolutely required because he is a co-owner of the patent.

Star relies on *JTG of Nashville, Inc. v. Rhythm Band, Inc.*, 693 F. Supp. 623, 628 (M.D. Tenn. 1988) for the proposition that an individual that is not amenable to personal jurisdiction and is not subject to service of process should be named an involuntary plaintiff. Supp. Opp. at 3. However, the holding of *JTG* supports AMS's position. In *JTG*, the court held that the non-party Japanese licensor, Zen-On, should not be named an involuntary plaintiff because there was no evidence that Zen-On would present jurisdictional problems, and because Zen-On was amenable to service through the Hague Convention. *Id*. That is precisely the case here: Star has presented no credible evidence that Mr. Vieira cannot be served and is not subject to jurisdiction.

---

[3] Star cites a five year old Declaration and a fifteen month old pleading in an attempt to "show" Mr. Vieira's location. Supp. Opp. at 2. There is no evidence that Star attempted to determine Mr. Vieira's current location, current employment, or current activities.

**3. Star Has Failed to Show That Mr. Vieira Has A Duty To Join Star's Lawsuit**

Beyond any response to the two questions posed by the Court, Star again presents the argument that, "as one of the co-inventors of the '852 Patent, Mr. Vieira has a duty to lend his name to the present lawsuit" in view of *Independent Wireless*. Supp. Opp. at 2. This argument is incorrect. Mr. Vieira only owes such a duty to Star **if** Star is or was an exclusive licensee of the patent during the period of time pleaded in the complaint in which Star seeks damages. According to Mr. Vieira, Star's rights in the patent expired at least by March 6, 2007 – well before this case was filed on Sept. 19, 2007. As Star's complaint seeks only damages occurring after its filing (for the reasons explained in AMS's Reply (D.I. 85 at 12)), Mr. Vieira would have no duty to lend his name to this action.[4]

Mr. Vieira's revocation of Star's license to the '852 Patent is now being fully adjudicated in a Canadian court, and the outcome of that action will dictate the proper and necessary parties to this action. Thus, in the event this Court does not grant AMS's Motion to Dismiss, AMS seeks to stay this action pending the outcome of the Canadian court proceeding.

## III. STAR HAS NOT SHOWN THE NEED FOR JURISDICTIONAL DISCOVERY

To answer the Court's second question, Star must demonstrate that this Court has specific personal jurisdiction over AMS – by showing that its claims of infringement arise from AMS's actions in California.[5]

Despite having filed this case almost one year ago, Star has yet to identify one instance in which AMS has had any contact with the State of California, let alone contact with the forum on matters related to anything in the Complaint. Instead, Star looks to the activities of others in an attempt to shoehorn AMS into the personal jurisdiction of this Court. Star complains that it needs discovery about jurisdiction, but that would be proper only upon a showing by Star that AMS had some activity within California. That is not the case here. Star's failure to come forward with credible evidence relating to jurisdictional issues is not because AMS is hiding facts (or that such

---

[4] This point is undisputed by Star – which is telling.

[5] *Pennington Seed, Inc. v. Produce Exchange No. 299*, 457 F. 3d 1334, 1344 (Fed. Cir. 2006).

facts "are closely guarded and wholly within the control of AMS" as Star contends, Opp. at pp. 4-5) but because AMS has no contacts with the state of California that would subject it to personal jurisdiction. In this situation, this Court is free to deny discovery.[6]

**1. Star Has Not Tied Any AMS Action in California to Its Claims**

Star has never tied any of AMS's actions – relating to the claims of the patent in suit or otherwise – to California. Aloha's flights into or out of California with an AFIRS system on-board are not disputed. But, Aloha was domiciled in Hawaii and that is where AMS and Aloha conducted business - not California. The direction of Aloha's flight patterns does not subject AMS to the jurisdiction of a California court.

Further, AMS has demonstrated that "[j]ust because AFIRS units may communicate in California is irrelevant to a specific jurisdiction analysis unless Star also shows that the communications in question are related to this action." D.I. 85 at 4. The Court apparently agrees,[7] (D.I. 86 at 2), and thus asked Star to "demonstrate how any of the claims alleged herein arise out of or relate to the activities as to which discovery is sought." *Id*. Star did not.

In its Complaint, Star alleges that AMS (via its AFIRS system) is directly infringing, inducing infringement of, and contributing to the infringement of claim 23 of the '852 Patent. D.I. 61, ¶¶ 12-14. In its Supplemental Opposition, Star seeks to answer the Court's question by reproducing claim 23, highlighting four small portions of the claim, and alleging that AFIRS systems "transmitted data from California." Supp. Opp. at 5. However, Star's argument provides no new information. Star has not explained how the alleged transmissions from the AFIRS units relate to the claimed "monitored data" of claim 23. Nor, has Star bothered to explain how the "base station" or remaining seven functions of claim 23's "system" relate to the AFIRS unit.[8]

---

[6] *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (holding that when "[a] plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery.) *Also see* AMS's Reply, D.I. 85 at 9-10 and Jacobs Declaration, D.I. 68.

[7] The Court stated "in the absence of a showing that Star's claims arise out of or relate to the activities as to which Star seeks discovery … discovery would not be warranted."

[8] Claim 23 specifies that the "on-vehicle component" has four separate functions (*i.e.*, monitoring, comparing, storing and transmitting data), and that the "base station" has four additional functions (*i.e.*, comparing, storing, transmitting, and formulating data). Of these eight functions, Star

(continued)

Further, Star needs no discovery on the matters it alleges with respect to claim 23. AMS has already indicated that AFIRS systems may have entered California under Aloha's control,[9] and may have transmitted information while there. Rather than seek more discovery on what it already knows, Star needs to – but does not – explain how a third party's (*i.e.*, Aloha's) actions in California can provide the basis for personal jurisdiction over AMS, in view of the Federal Circuit's holding to the contrary in *Red Wing Shoe*.[10] No amount of discovery as to transmitted data will change the fact that it was Aloha, not AMS, that was in control of Aloha's planes.

**2. Star's Repetitive Arguments Are Unsupported and Irrelevant**

In addition to Aloha, Star has referred to alleged contacts with Raytheon and Meggitt and other unknown companies. However, Star has not shown, despite the Court's specific request, how these alleged contacts with Raytheon or Meggitt relate to the claims of the complaint or activities in California. Moreover, all of AMS's contacts with Raytheon and Meggitt have occurred outside of California. *See*, *e.g.*, D.I. 68, ¶¶ 47, 48.

Star's other arguments are no more supportive of its position. Although Star conveniently ignores it, AMS has repeatedly shown that neither it, nor any of its subsidiaries, has conducted business, sales, marketing, service, etc. in California. See D.I. 68, ¶¶ 3; 6-21. Further discovery will not change these facts, and Star has presented no evidence that shows the Jacobs Declaration to be inaccurate. Lastly, AMS's "future business" is irrelevant. *See* AMS's Reply, D.I. 85 at 6, 7.

**3. Star's Proposed Discovery Is Overly Broad and Burdensome**

Star's requested discovery is anything but of the "limited" nature Star suggests. Supp. Opp. at 4. Star seeks wide ranging and far reaching discovery[11] of three separate individuals on fourteen distinct topics. The topics are overly broad and burdensome inasmuch as they seek

---

(continued)
argues that the AFIRS system performs **one**. This hardly clarifies the matter.

[9] Prior to Aloha declaring bankruptcy and ceasing flights to California in April 2008.

[10] *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998), which specifies that "doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]."

[11] See D.I. 88-2, p. 10-13.

information surrounding all of AMS's activity including that outside of California (*see, e.g.*, Reqs. 1, 9-11 and 13), or have already been addressed by AMS as being non-existent.[12]

The Court requested AMS to "address Star's proposed schedule for jurisdictional discovery." D.I. 86 at 3, fn 1. AMS does not believe that Star's complicated schedule is warranted.[13] If the Court determines that jurisdictional discovery is needed, AMS proposes, one deposition of a corporate witness about AMS's actions in California, limited to four hours. AMS also proposes: (A) Star will have 14 days to conduct its deposition; (B) Star will then have 7 days to file a five-page supplemental opposition based only upon facts discovered during the deposition; (C) AMS will then have 7 days to file a five-page supplemental reply; and (D) the Court will then set a hearing date as soon as practicable.[14]

## IV. CONCLUSION

In view of the above, AMS requests that this Court grant AMS's Motion to Dismiss.

Dated: August 1, 2008

KEVIN C. McCANN
ROBERT M. MASTERS
TIMOTHY P. CREMEN
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ Kevin C. McCann
Kevin C. McCann

Attorneys for Defendant
AEROMECHANICAL SERVICES LTD.

---

[12] For example, for Reqs. 7 & 9, Star has cited no evidence that AMS has conducted FAA or other testing in California, and Mr. Jacobs has testified that no such testing occurred. See, e.g., D.I. 68 ¶¶ 19, 28. For Reqs. 4-6, 8 & 10-14, Star has cited no evidence that AMS has a presence, or has conducted sales, service, support or marketing activities there, and Mr. Jacobs has testified that neither AMS, nor its subsidiaries, have done so. See, e.g., D.I. 68 ¶¶ 1-21, 27, 29 and 43-48.

[13] That Star would need multiple rounds of discovery requests, depositions, and third party depositions to determine a simple jurisdictional issue, demonstrates Star is more interested in fishing than resolving any jurisdictional dispute.

[14] AMS proposes that, if necessary, the Initial Scheduling Conference be continued pending the Court's resolution of AMS's Motion to Dismiss, and if necessary its Motion to Stay.